UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JEFFREY COHEN, on behalf of himself
individually, and on behalf of all similarly
situated employees,

          Plaintiff,

   v.

GERSON LEHRMAN GROUP, INC.

          Defendant.

-------------------------------------------------------------X

No. 09 Civ. 4352 (PKC)

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY CERTIFICATION PURSUANT TO THE FAIR LABOR STANDARDS ACT, FOR COURT-FACILITATED NOTICE TO SIMILARLY SITUATED PERSONS AND FOR EXPEDITED DISCOVERY**

          Douglas H. Wigdor
          Gregory N. Filosa
          THOMPSON WIGDOR & GILLY LLP
          85 Fifth Avenue
          New York, NY 10003
          (212) 257-6800
          (212) 257-6845

          Counsel for Plaintiff and the Class

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT............................................................................................................................2

    I.  PLAINTIFF'S ARGUMENTS RELATED TO THE APPLICATION OF THE ADMINISTRATIVE EXEMPTION ARE PREMATURE AT THE CONDITIONAL CERTIFICATION STAGE........................................................2

    II.  DEFENDANT'S DECLARATIONS ACTUALLY ESTABLISH THAT PLAINTIFF AND THE PROPOSED CLASS ARE SIMILARLY SITUATED ...6

    III.  PLAINTIFF IS NOT REQUIRED TO PRODUCE EVIDENCE THAT OTHER RESEARCH ASSOCIATES WISH TO PARTICIPATE IN THIS ACTION BECAUSE THIS WILL BE DETERMINED BY THE OPT-IN PROCESS .........9

CONCLUSION.......................................................................................................................11

## TABLE OF AUTHORITIES

*Braunstein v. Eastern Photographic Laboratories, Inc.*,
    600 F.2d 335 (2d Cir. 1978)..................................................................................10

*Cuzco v. Orion Builders, Inc.*,
    477 F. Supp. 2d 628 (S.D.N.Y. 2007)....................................................................10

*Davis v. Abercrombie & Fitch Co.*,
    No. 08 Civ. 1859 (PKC), 2008 U.S. Dist. LEXIS 86577 (S.D.N.Y. Oct. 23, 2008)........2, 8

*Diaz v. Electronics Boutique of America, Inc.*,
    No 04 Civ. 840, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005)..................4

*Francis v. A&E Stores, Inc.*,
    No. 06 Civ. 1638, 2008 U.S. Dist. LEXIS 83369 (S.D.N.Y. Oct. 16, 2008)................4

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007)...........................................................................5-6

*King v. West Corp.*,
    No. 04 Civ. 318, 2006 U.S. Dist. LEXIS 3926 (D. Neb. Jan. 13, 2006)..................3-4

*Lynch v. United Services Automobile Association*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007).............................................................2, 5, 9

*Malloy v. Richard Fleischman & Associates*,
    No. 09 Civ. 322, 2009 U.S. Dist. LEXIS 51790 (S.D.N.Y. June 3, 2009)..............5, 6

*Marcus v. American Contract Bridge League*,
    254 F.R.D. 44 (D. Conn. 2008).............................................................................4, 9

*Mike v. Safeco Insurance Co. of America*,
    274 F. Supp. 2d 216 (D. Conn. 2003)........................................................................4

*Morisky v. Public Serv. Electric & Gas. Co.*,
    111 F. Supp. 2d 493 (D.N.J. 2000)............................................................................3

*Neary v. Metropolitan Property & Casualty Insurance Co.*,
    517 F. Supp. 2d 606 (D. Conn. 2007)....................................................................2, 3

*Pefanis v. Westway Diner, Inc.*,
    No. 08 Civ. 002, 2008 U.S. Dist. LEXIS 81082 (S.D.N.Y. Oct. 8, 2008)..............9, 10

*Wombles v. Title Max of Alabama, Inc.*,
    No. 03 Civ. 1158, 2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005)............3-4

## **PRELIMINARY STATEMENT**

Plaintiff Jeffrey Cohen ("Mr. Cohen" or "Plaintiff") respectfully submits this reply memorandum in further support of his motion for conditional certification of a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). In its opposition, rather than addressing the appropriate conditional certification standard, Defendant Gerson Lehrman Group, Inc. ("Gerson Lehrman," "GLG" or "Defendant") spends the majority of its brief prematurely arguing the merits of the administrative exemption, which is more properly presented in a motion to decertify a FLSA collective action. Thus, Defendant's attempt to characterize such argument as addressing the "similarly-situated" requirement of conditional certification should be rejected.

Given the lenient standard for conditional certification, it is not surprising that Defendant adopts the rote argument that conditional certification would be inappropriate because a determination of whether Plaintiff and the proposed members of the FLSA collective action will require a "highly individualized, fact intensive" analysis. This argument, however, is inconsistent with well established Second Circuit case law regarding conditional certification and should be rejected. Further, upon close examination of the declarations submitted by Defendant, all but one of which have been submitted by a current Gerson Lehrman employee, it is clear that the nature of the job duties performed by those current employees (the "Declarant RAs") are, in fact, very similar to the job duties described by Plaintiff and Rachel Hoffheimer in their respective affidavits supporting conditional certification, thus establishing the required factual nexus between the respective claims of Plaintiff and the class. Accordingly, contrary to Defendant's arguments, the Court should conditionally certify a collective action and then determine in a single proceeding whether the job duties of the collective group meet the

requirements of the administrative exemption or establish that the Research Associate position was, as Defendant concedes it is now, a non-exempt position.

## ARGUMENT

### I. PLAINTIFF'S ARGUMENTS RELATED TO THE APPLICATION OF THE ADMINISTRATIVE EXEMPTION ARE PREMATURE AT THE CONDITIONAL CERTIFICATION STAGE

Rather than address the proper conditional certification standard, Defendant spends the majority of its brief arguing the merits of the administrative exemption (*see* Defendant's Memorandum of Law in Opposition ("Def. Mem.") at 6-19), despite the clear inapplicability of this analysis to the conditional certification issue before the Court on this motion. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("[A] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."). Further, this Court has previously rejected the argument that conditional certification is inappropriate because the alleged applicability of the administrative exemption would require an individualized factual inquiry:

> The Court reiterates that it is only conditionally certifying this collective action. After discovery has taken place and other [potential plaintiffs] have been given a chance to opt-in, if it appears that the plaintiffs, including those who have opted-in, have such different job duties that resolving the merits "would require a mini-trial as to the nature and type of each [potential plaintiff's] duties as well as the different ways in which each [potential plaintiff] performs those duties," then the Court may conclude that the plaintiffs are not, in fact, similarly situated.

*Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859 (PKC), 2008 U.S. Dist. LEXIS 86577, *26 (S.D.N.Y. Oct. 23, 2008).

Indeed, when Defendant's counsel raised this same argument in *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606 (D. Conn. 2007), that court rejected the argument out of hand, noting that "[t]o hold to the contrary would preclude certification of a collective action in any FLSA case where the defendant was asserting an administrative exemption defense." *Id.* at 621-

2

22. As in *Neary*, Plaintiff here alleges that he and all potential class members were injured by the same Gerson Lehrman policy – *i.e.*, the designation of the Research Associate position as exempt from the FLSA's overtime requirements – which alone "is sufficient to meet the lenient first-tier collective action standard." *Id.* at 621.

Additionally, the cases cited by Defendant to support its argument against conditional certification are unavailing as they are either plainly distinguishable or contrary to the weight of authority in the Second Circuit. For example, Defendant relies on *Morisky v. Public Serv. Elec. & Gas. Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000), as a case in which a court denied conditional certification because the plaintiffs in that case, which at that time consisted of 141 opt-in plaintiffs, could not show that they were "similarly-situated." (*see* Def. Mem. at 5, 20, 21). While Defendant correctly cites the holding in *Morisky*, Defendant fails to recognize, or intentionally disregards, that the court in *Morisky* expressly applied the more stringent, decertification standard not applicable to this motion. In that case, the court noted:

> It is clearly beyond the first tier of the above [two stage] analysis, as over 100 potential plaintiffs have already opted into this lawsuit . . . [and] discovery was to have been completed . . . well before the present motion was filed. It is appropriate, therefore, for the Court to apply a stricter standard in its analysis of the question before it, and in doing so, finds that plaintiffs have not met their burden.

*Id.* at 498. Thus, *Morisky* is factually and legally inapposite and provides no guidance in regard to the instant motion.

Similarly, in both *Wombles v. Title Max of Ala., Inc.*, No. 03 Civ. 1158, 2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005), and *King v. West Corp.*, No. 04 Civ. 318, 2006 U.S. Dist. LEXIS 3926 (D. Neb. Jan. 13, 2006), the courts had the benefit of a fully developed record following extensive discovery, a fact which is not remotely present here. *See Wombles*, 2005 U.S. Dist. LEXIS 34733 at *13 n.3 ("Because the parties conducted extensive discovery on the

3

issue of collective action certification, it is appropriate for the court to carefully consider the submissions of the parties with respect to the collective action allegations."); *King*, 2005 U.S. Dist. LEXIS 34733 at *39 ("Discovery is now complete, or nearing completion, . . . [and t]he pending motions therefore relate to the second step in the [FLSA] § 216 certification process."). As such, each of these cases is inapplicable here.

Further, *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216 (D. Conn. 2003) is distinguishable as the plaintiff in that case expressly disavowed the job description for his position and claimed that, despite the fact that his job description called for some administrative functions, he spent the majority of his time performing non-administrative functions. *Id.* at 221. Thus, the court in *Mike* found conditional certification inappropriate based on this unique factual circumstance. *Id.* In contrast, Plaintiff does not disavow the Research Associate job description, but instead challenges Defendant's misclassification of these job duties as exempt under the administrative exemption. *See* Compl. at ¶¶ 16-18, 37; *see also Marcus v. Am. Contract Bridge League*, 254 F.R.D. 44, 48-49 (D. Conn. 2008) (distinguishing *Mike* because plaintiffs did not dispute the job description at issue, finding that, despite defendants' evidence of additional job duties, plaintiffs and the class shared the same baseline responsibilities).

Finally, Defendant relies on the questionably decided case of *Diaz v. Elec. Boutique of Am., Inc.*, No 04 Civ. 840, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005). Although the *Diaz* case did involve a denial of conditional certification because the court believed that the responsibilities of the plaintiff and the potential class members differed so much as to require a highly fact specific and individualized analysis inappropriate for collective treatment, courts within this district have found this case to be against the weight of authority in the Second Circuit. *See Francis v. A&E Stores, Inc.*, No. 06 Civ. 1638, 2008 U.S. Dist. LEXIS 83369, *12

n.3 (S.D.N.Y. Oct. 16, 2008) (noting that *Diaz* and other cases "denying conditional certification where fact-specific inquiry might be required, seem to be against the weight of authority in undertaking that analysis at the first stage of the certification process, rather than evaluating at the decertification stage whether the need for individual analysis makes a collective action appropriate").

In arguing that conditional certification requires a highly intensive, fact specific analysis, Defendant asks the Court to weigh its self-serving declarations[1] against the declarations of Plaintiff and Ms. Hoffheimer to decide the merits underlying this action. Such a course of action is inappropriate at the conditional certification stage. *Lynch*, 491 F. Supp. 2d at 368-69 ("[A]t this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."). As Judge McMahon recently noted: "Defendants' arguments that the affected employees are exempt rather than non-exempt because of their special qualifications and the non-industry standard aspects of their work are not properly made at this juncture, where there has been virtually no discovery." *Malloy v. Richard Fleischman & Assocs.*, No. 09 Civ. 322, 2009 U.S. Dist. LEXIS 51790, *9 (S.D.N.Y. June 3, 2009). Judge McMahon also rejected the related, and equally premature, argument that the collective action members were not similarly situated because they were "uniquely situated *vis a vis* each other," relying on her decision in *Iglesias-Mendoza*:

> Plaintiffs have easily made the modest factual showing that is required of them at this preliminary stage: they were subject to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class. Whether plaintiffs' evidence will suffice to survive a motion for summary

---

[1] While Defendant was careful to include language suggesting the voluntariness of each declaration that it drafted for the Declarant RAs and submitted with its opposition papers, all but one of these declarations notably were provided by current employees of Defendant who, absent a court-approved notice and opportunity to opt into the case, are unlikely to decline their employer's request for assistance opposing their motion. Thus, these declarations must be realistically viewed in that context.

5

judgment or to carry their burden at trial will become apparent in due time and in light of full discovery. For the moment, the factual variations defendants rely on do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA.

*Id.* at *10 (citing *Iglesias-Mendoza*, 239 F.R.D. at 368). Thus, Defendant's attempts to create variations in the job responsibilities of Plaintiff and the members of the proposed collective action have no bearing on the conditional certification analysis and should be rejected.

II. **DEFENDANT'S DECLARATIONS ACTUALLY ESTABLISH THAT PLAINTIFF AND THE PROPOSED CLASS ARE SIMILARLY SITUATED**

Despite Defendant's advocacy of a more stringent standard at the conditional certification stage than the law allows (*see* Def. Mem. at 4-6, 19-21), Plaintiff's Complaint and supporting affidavits, amply demonstrate that Plaintiff has made the required showing for conditional certification. The declarations submitted by Defendant only reinforce this conclusion. Contrary to Defendant's attempts to create material inconsistencies where none exist, the primary job duties described by Plaintiff and Ms. Hoffheimer are similar to those of the Declarant RAs in all material respects.

Both Plaintiff and Ms. Hoffheimer state that the primary duty of a Research Associate "was to serve as a liaison between the Company's clients and the Company's network of subject matter experts." (*See* Affidavit of Jeffrey Cohen ("Cohen Aff.") ¶ 4; Affidavit of Rachel Hoffheimer ("Hoffheimer Aff.") ¶ 3). While the Declarant RAs provide further elaboration, inspection reveals that their declarations are consistent with Plaintiff's and Ms. Hoffheimer's affidavits in their characterization of the job duties of a Research Associate.[2] (*See* Arsan Decl. ¶ 7 ("[M]ost of my time was spent working on projects for clients, and matching their needs to experts either in or out of GLG's network."); Ball Decl. ¶ 9 ("This work included refining my client's research projects into something more concrete and manageable, and then drafting a

---

[2] The declaration of the Declarant RAs are individually cited herein as "_____ Decl."

6

concise description of that project."); Bi Decl. ¶ 15 ("With respect to my work for clients on specific projects, about 60% of my duties include responding directly to clients requests for research assistance."); Bond Decl. ¶ 8 ("My primary, and most important, duty as an RA was to interface with clients daily in order to both address their immediate research needs and to grow and maintain new and existing client relationships."); Buell Decl. ¶ 9 ("[M]y duties included responding directly to client requests for research assistance."); Haverstick Decl. ¶ 17 ("Facilitating clients' research projects as an RA required me, on a daily basis and throughout the day, to evaluate multiple options and then . . . select the best possible course of action to recommend to the client."); Hogan Decl. ¶ 15 (same); Mata Decl. ¶ 6 ("One of my primary duties as an RA was assisting members of my team and my clients on specific research projects."); Powers Decl. ¶ 12 ("My primary duty as an RA included: working closely with GLG clients, executing on research requests, and serving as a thought partner and trusted advisor."); Stenbeck Decl. ¶ 8 ("[M]y duties included responding directly to client requests for research assistance.").) Thus, these descriptions are not materially inconsistent and Defendant's attempt to characterize them as such does not square with what they actually say.

  Plaintiff, Hoffheimer and the Declarant RAs also cited the same compliance function that they performed as a Research Associate. (*Compare* Cohen Aff. ¶ 5 and Hoffheimer Aff. ¶ 4 *with* Arsan Decl. ¶¶ 8-9; Atias Decl. ¶¶ 18-20; Ball Decl. ¶¶ 18-20; Bi Decl. ¶¶ 19-20; Bond Decl. ¶¶ 20-21; Buell Decl. ¶¶ 14-15; Haverstick Decl. ¶¶ 12-14; Hogan Decl. ¶¶ 18-20; Kerbel Decl. ¶ 11; Mata Decl. ¶¶ 18-19; Powers Decl. ¶¶ 21-22; Stenback Decl. ¶¶ 21-22.) Plaintiff, Hoffheimer and the Declarant RAs likewise testified that they all were expected to solicit new business from existing clients to expand the services that Gerson Lehrman provided to its existing clients. (*Compare* Cohen Aff. ¶ 6 and Hoffheimer Aff. ¶ 5 *with* Atias Decl. ¶ 7; Ball

7

Decl. ¶ 14; Bi Decl. ¶ 7; Bond Decl. ¶ 9; Buell Decl. ¶ 8; Haverstick Decl. ¶ 15; Hogan Decl. ¶ 9; Kerbel Decl. ¶ 12; Mata Decl. ¶ 9; Powers Decl. ¶ 12; Stenback Decl. ¶ 7.) Like Plaintiff and Hoffheimer, moreover, many of the Declarant RAs were required to host educational events and conferences for the Defendant's clients. (*Compare* Cohen Aff, ¶ 7 and Hoffheimer Aff. ¶ 6 *with* Arsan Decl. ¶ 11; Atias Decl. ¶ 7; Bi Decl. ¶ 6; Haverstick Decl. ¶ 18; Kerbel Decl. ¶ 14.)

Thus, despite Defendant's attempts to characterize the job responsibilities of its Research Associates as divergent depending on a particular employee's office location, prior work experience/academic background, and industry team (*see* Def. Mem. at 17-19), that is not what the evidence from Plaintiff, Ms. Hoffheimer and the Declarant RAs in fact shows. Rather, their job responsibilities, viewed without Defendant's characterization, demonstrate that they are very similar in all material respects. Finally, it is undisputed that Defendant did not compensate Plaintiff, Hoffheimer or any of the Declarant RAs for any hours worked in excess of 40 in a given week, establishing that they were all subjected to Gerson Lehrman's common wage and hour policy of denying them overtime pay. (*See* Cohen Aff. ¶ 9, Hoffheimer Aff. ¶ 8; Arsan Decl. ¶ 18; Atias Decl. ¶ 28; Ball Decl. ¶ 29; Bi Decl. ¶ 26; Bond Decl. ¶ 27; Buell Decl. ¶ 23; Haverstick Decl. ¶ 19; Hogan Decl. ¶ 31; Kerbel Decl. ¶ 18; Mata Decl. ¶ 25; Powers Decl. ¶ 31; Stenback Decl. ¶ 28.)

As this Court has previously noted, at the initial notice stage, "Plaintiffs need only make a modest factual showing that they and the other putative class actions members were victims of a common policy or plan that violated the law. This may be satisfied with substantial allegations of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's FLSA violation." *Davis*, 2008 U.S. Dist. LEXIS 86577 at *27 (citations omitted). Thus, the affidavits of Plaintiff and Ms. Hoffheimer, along with those of the Declarant RAs –

8

which include Research Associates from various Gerson Lehrman offices and industry practice groups – establish a substantial factual nexus between the claims of Plaintiff and the claims of the potential opt-in plaintiffs, with respect to Defendant's failure to compensate them for any hours worked in excess of 40 in a given week, sufficient to warrant conditional certification. *See Marcus*, 254 F.R.D. at 49 ("While the defendants put forth some evidence that potential class members may possess additional job duties to those of the plaintiffs . . . it appears from the affidavits that all [potential class members] share the same baseline responsibilities."). The Court, therefore, should grant conditional certification in this case.

### III.   PLAINTIFF IS NOT REQUIRED TO PRODUCE EVIDENCE THAT OTHER RESEARCH ASSOCIATES WISH TO PARTICIPATE IN THIS ACTION BECAUSE THIS WILL BE DETERMINED BY THE OPT-IN PROCESS.

Defendant's last-ditch argument that certification is only appropriate where there is evidence that other employees wish to participate in the action equally misses the mark. As with Defendant's other arguments, this contention is contrary to the well established case law from within this district. Defendant cites to Judge McMahon's decision in *Lynch* as supporting this supposed "requirement," merely because Judge McMahon noted the fact that other employees had opted in already as one factor, among many others, supporting conditional certification. *See Lynch*, 491 F. Supp. 2d at 371. Yet no requirement exists in *Lynch* or any other cases within the Second Circuit that precertification opt-ins are necessary to obtain conditional certification. Defendant's reliance on various decisions outside of this circuit is misplaced in light of the established authority from within the Southern District holding that Plaintiff need not show that potential plaintiffs have actually opted-in. *See Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002, 2008 U.S. Dist. LEXIS 81082, *3-4 (S.D.N.Y. Oct. 8, 2008) ("Given the broad remedial purpose of the FLSA, which should be given a liberal construction, FLSA plaintiffs are not required to

show that putative class members of the collective action are interested in the lawsuit in order to obtain authorization for notice of the collective action to be sent to potential plaintiffs.") (citations omitted); *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007) ("Plaintiff is not required to indicate specifically how many potential opt-in plaintiffs may join the suit, nor must an FLSA plaintiff join with other potential plaintiffs at the time a suit is filed in order for a representative action to be precertified.").

As Judge Cote appropriately recognized in *Pefanis*: "The fact that no such employee has joined the action does not make notice inappropriate. Current employees may hesitate to join a lawsuit against their employer for many reasons, such as fear of retaliation." *Pefanis*, 2008 U.S. Dist. LEXIS 81082 at *3-4. This appears to be particularly true in the instant matter, where 11 of the 12 declarations disclaiming any interest in participating in this action were obtained from current employees of Defendant, some signed within three weeks of the filing of the Complaint and most signed before Defendant filed its Answer.[3] What is certain is that none of these employees was given the opportunity to freely elect whether to join in this action after receiving the benefit of a Court-approved notice explaining their right to do so under the FLSA free from the threat of retaliation. Furthermore, as the numerous declarations that Defendant submits makes clear, there is a group of individuals similarly situated to Plaintiff that should be eligible to join this lawsuit, which is sufficient to permit this Court to proceed as a representative action under the FLSA. *See Cuzco*, 477 F. Supp. 2d at 633-34. Conditional certification is, therefore, appropriate.

---

[3] Similarly, it is now readily apparent that, on May 26, 2009, when Defendant requested that the Court grant Defendant an extension of time to respond to the Complaint – which Defendant then used to file a baseless motion to dismiss Plaintiff's state law claim – and then subsequently refused to agree to toll the statute of limitations for any opt-in plaintiffs during the pendency of that motion, Defendant was in the process of obtaining self-serving declarations from its current employees. Such tactics cannot be said to be consistent with the "broad remedial purpose of the [FLSA]" (*see Braunstein*, 600 F.2d 335, 336 (2d Cir. 1978)) and should not be condoned here.

## CONCLUSION

For the reasons set forth above and in Plaintiff's initial memorandum of law, Plaintiff respectfully requests that this Court grant Plaintiff's request for (i) preliminary certification of the FLSA claims as a collective action; (ii) issuance of a Court-authorized notice of the FLSA claims to the potential opt-in plaintiffs; and (iii) expedited discovery of the names and contact information for all individuals employed by Defendant as a Research Associate during the past three years.

Dated: New York, New York  
July 13, 2009

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By:  /s/   Douglas H. Wigdor

Douglas H. Wigdor  
Gregory N. Filosa

85 Fifth Avenue  
New York, NY 10003  
Tel. (212) 257-6800  
Fax. (212) 257-6845

COUNSEL FOR PLAINTIFF AND THE CLASS