IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY COHEN, on behalf of himself and on behalf of all similarly situated employees,<br><br>                  Plaintiff,<br><br>v.<br><br>GERSON LEHRMAN GROUP, INC.,<br>                  Defendant. | Civil Action No.<br>09-CV-04352 (PKC) |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

Andrew J. Schaffran
Leni D. Battaglia
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963.5001 (fax)

Counsel for Defendant
Gerson Lehrman Group, Inc.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND FACTS .................................................................................................. 2

ARGUMENT ..................................................................................................................... 2

I. COHEN MUST MEET A VERY HIGH STANDARD ON A MOTION TO DISMISS GLG'S COUNTERCLAIMS EVEN BEFORE DISCOVERY ....................... 2

II. GLG'S COUNTERCLAIMS ARE COMPULSORY BECAUSE THEY ARISE OUT OF THE SAME TRANSACTION OR OCCURRENCE THAT IS THE SUBJECT MATTER OF COHEN'S CLAIM ................................................................. 3

III. COHEN CANNOT DISPUTE THAT GLG ADEQUATELY PLED CAUSES OF ACTION FOR CONVERSION AND TRESPASS TO CHATTELS ............................... 4

IV. GLG HAS ADEQUATELY PLED A CAUSE OF ACTION UNDER THE COMPUTER FRAUD AND ABUSE ACT .................................................................. 5

    A. GLG Has Sufficiently Pled Its Satisfaction Of the Jurisdiction Threshold ........... 5

    B. GLG Has Sufficiently Stated A Claim Under CFAA § 1030(a)(5)(A) ................. 8

    C. GLG Sufficiently Stated A Claim Under Other Sections Of The CFAA .............. 9

IV. CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) ................................................................................. 3

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007) ................................................................................. 2, 7

Calyon v. Mizuho Sec. USA, Inc., No. 07 Civ. 2241,
   2007 WL 2618658 (S.D.N.Y. Sept. 5, 2007) ............................................ 10

Diamond Power Int'l, Inc. v. Davidson, No. 04-CV-0019,
   2007 WL 2904119 (N.D. Ga. Oct. 1, 2007) .............................................. 10

EF Cultural Travel BV v. Explorica, Inc.,
   274 F.3d 577 (1st Cir. 2001) .................................................................. 8, 10

Exxon Mobil Corp. v. Allapattah Servs., Inc.,
   545 U.S. 546 (2005) ..................................................................................... 4

Int'l Airport Ctrs., LLC v. Citrin,
   440 F.3d 418 (7th Cir. 2006) ....................................................................... 9

Jones v. Ford Motor Credit Co.,
   358 F.3d 205 (2d Cir. 2004) ........................................................................ 3

Lasco Foods, Inc. vs. Hall & Shaw Sales, Mktg., & Consulting, LLC,
   600 F. Supp. 2d 1045 (E.D. Mo. 2009) ....................................................... 6

Levitt v. Bear Sterns & Co.,
   340 F.3d 94 (2d Cir. 2003) .......................................................................... 2

Modis, Inc. v. Bardelli,
   531 F. Supp. 2d 314 (D. Conn. 2008) ................................................ 5, 6, 10

Pacific Aerospace & Electronics, Inc. v. Taylor,
   295 F. Supp. 2d 1188 (E.D. Wash. 2003) .................................................... 7

Panther Partners Inc. v. Ikanos Commc'n, Inc., No. 08-2298-cv,
   2009 WL 2959883 (2d Cir. Sept. 17, 2009) ............................................ 2, 7

United States v. Middleton,
   231 F.3d 1207 (9th Cir. 2000) ..................................................................... 5

Wagner v. Edisonlearning, Inc., No. 09 Civ. 831,
   2009 WL 1055728 (S.D.N.Y. Apr. 17, 2009) ............................................. 2

## FEDERAL STATUTES

18 U.S.C. § 1030 ............................................................................................................. 1

18 U.S.C. § 1030(a)(2) ................................................................................................. 5, 9

18 U.S.C. § 1030(a)(4) ................................................................................................... 5

18 U.S.C. § 1030(a)(5)(A) ........................................................................................... 8, 9

18 U.S.C. § 1030(e)(8) ................................................................................................... 7

28 U.S.C. § 1367(a) ....................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 2, 8, 10

Fed. R. Civ. P. 8 ............................................................................................................ 2

Fed. R. Civ. P. 13(a)(1) ................................................................................................. 3

Defendant Gerson Lehrman Group ("GLG"), by and through its attorneys, Morgan, Lewis & Bockius LLP, respectfully submits this Memorandum of Law in opposition to the Motion of Plaintiff Jeffrey Cohen ("Cohen") to Dismiss Defendant's Counterclaims.

## PRELIMINARY STATEMENT

Cohen admitted at his deposition that, on the eve of resigning from GLG and while planning to file this action, he intentionally performed a "mass deletion" of all the files on both a network drive and the hard drive of the computer he used at GLG, with the specific objective of preventing GLG from having access to those materials, many of which related to his job duties and thus would have undermined Cohen's claims and supported GLG's defenses. Cohen Dep. at 87:14-117:8.[1] Based on these admissions, GLG filed three Counterclaims against Cohen for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and common law theories of conversion and trespass to chattels. In his Motion to Dismiss, Cohen does not even attempt to challenge (because he cannot) these fundamental facts.

Cohen's only challenge to GLG's common law claims is his speculation that GLG ultimately recovered documents from the hard drive and, therefore, GLG had no losses. In reality, the hard drive was entirely unrecoverable, so Cohen is simply wrong. In any event, this supposed fact dispute could not be resolved on a 12(b)(6) motion.

Cohen's primary challenge to GLG's CFAA claim is that GLG should be held to an artificially-inflated pleading standard that apparently would require GLG to plead (prior to discovery) a detailed financial accounting of all of its losses caused by his misconduct. Rule 8 does not require such pleading, and GLG's factual allegations as to its losses are more than adequate to satisfy the requirements of notice pleading. In any event, GLG has filed an affidavit herewith that further details its damages and losses resulting from Cohen's "mass deletion." If Cohen seeks to dispute the economic value of GLG's extensive efforts to respond to the "mass

---

[1] The portions of the transcript of the deposition of Jeffrey Cohen, dated August 28, 2009 ("Cohen Dep."), cited herein are attached to the Declaration of Leni D. Battaglia ("Battaglia Decl.") as Exhibit ("Ex.") A.

deletion" to challenge that GLG has incurred expenses exceeding the CFAA's jurisdictional limit, that issue cannot be resolved at this stage.

## BACKGROUND FACTS

GLG refers the Court to the fifty-six (56) allegations that comprise its counterclaims in its Amended Answer, Defenses and Counterclaims ("Counterclaims") (Docket No. 52), as well as Cohen's sworn testimony filed herewith.

## ARGUMENT

### I. COHEN MUST MEET A VERY HIGH BURDEN ON A MOTION TO DISMISS GLG'S COUNTERCLAIMS EVEN BEFORE DISCOVERY.

It is well-established that a Rule 12(b)(6) motion to dismiss should be granted only where the moving party is able to show that there are not "'enough facts to state a claim to relief that is plausible on its face.'" Panther Partners Inc. v. Ikanos Commc'n, Inc., No. 08-2298, 2009 WL 2959883, at *1 (2d Cir. Sept. 17, 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). The Court's task is "merely to assess the legal feasibility of [GLG's Counterclaims], not to assay the weight of the evidence which might be offered in support thereof." Levitt v. Bear Sterns & Co., 340 F.3d 94, 101 (2d Cir. 2003). Thus, Federal Rule 8 merely requires "[that plaintiffs] nudge[ ] their claims across the line from conceivable to plausible [by] alleging enough fact[s] to raise a reasonable expectation that discovery will reveal evidence to prove the claim." Id. The detailed factual allegations of GLG's Counterclaims, *most of which already were confirmed by Cohen's sworn testimony* and also are supported by GLG's own investigation and the investigation of a forensic expert, are more than sufficient to satisfy this "reasonable expectation" standard.[2] Far from alleging "bare assertions . . . [which] amount to nothing more than a formulaic recitation of the elements" of the respective causes of action,

---

[2] In fact, GLG's counterclaims easily satisfy Cohen's counsel's own articulation of the Federal Rule 12(b)(6) standard. See Memorandum of Law in Opposition to Motion to Dismiss, at 2-3, in Wagner v. Edisonlearning, Inc., No. 09 Civ. 831 (S.D.N.Y. Mar. 23, 2009), the relevant portion of which is attached as Ex. B to the Battaglia Decl.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 (2009), GLG has provided eight pages of specific allegations.

## II. GLG'S COUNTERCLAIMS ARE COMPULSORY BECAUSE THEY ARISE OUT OF THE SAME TRANSACTION OR OCCURRENCE THAT IS THE SUBJECT MATTER OF COHEN'S CLAIM.

GLG's Counterclaims fall squarely within the definition and purpose of compulsory counterclaims under well-established law. Rule 13(a)(1) defines a compulsory counterclaim as a claim that "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Plaintiff's Memorandum of Law ("Pl's Mem.") at 7. This standard is met when "there is a 'logical relationship' between the counterclaim and the main claim." Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004).

No new party is named in the Counterclaims, and the facts underlying Cohen's "mass deletion" are logically connected to the underlying claims asserted by Cohen. This is not a situation in which GLG is pursuing counterclaims against Cohen for, as an example, allegedly stealing a piece of artwork from the office, which would have nothing to do with his entitlement to overtime that is the subject of Cohen's own claims. Rather, GLG's claims pertain to documents and data deleted by Cohen that included his work papers. Cohen Dep. at 87:14-117:8. Thus, the claims relate directly to the duties that Cohen performed at GLG, which is fundamental to GLG's defense to his overtime claims based on the administrative exemption to federal and state overtime requirements. Indeed, a material portion of the harm suffered by GLG as a result of the "mass deletion" is that it is now impaired in its defense of Cohen's claims. Moreover, Cohen concedes that the Counterclaims are directly related to his underlying claims by acknowledging that they bear on the adequacy prong of the class certification requirements under Federal Rule 23. Pl's Mem. at 8. In sum, Cohen's claims and GLG's Counterclaims are "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Jones, 358 F.3d at 209 (quotations omitted).[3]

---

[3] In any event, the Court properly could exercise permissive jurisdiction over these claims. Cohen

3

## III. COHEN CANNOT DISPUTE THAT GLG ADEQUATELY PLED CAUSES OF ACTION FOR CONVERSION AND TRESPASS TO CHATTELS.[4]

The facts are perfectly clear – Cohen admits that he deliberately destroyed GLG's property, including evidence in this case, for the purpose of preventing GLG from having access to documents and data that he deleted. See supra at 1 (citing Cohen's sworn testimony). Implicitly conceding that GLG adequately pled the other elements of its common law claims, Cohen asserts only that GLG did not actually lose any property because it recovered all of the files that he deleted. At a minimum, whether GLG was able to recover all of the deleted electronic files creates a fact dispute that precludes dismissal on a 12(b)(6) motion.

In any event, Cohen's assertion – which GLG has corrected before in correspondence that Cohen now simply ignores – is objectively false. Because none exists, Cohen cites to no evidence to support his incorrect speculation that "[he] was unsuccessful in his attempts to permanently delete [the electronic files] from his computer." Pl's Mem. at 14-15.

In reality, although GLG was able at its expense to recover some of the electronic documents that Cohen attempted to destroy on GLG's network drive to which he had access (some of which were then used at Cohen's deposition and are attached to Cohen's brief), *it was unable to recover any of the documents that Cohen admits he destroyed on the hard drive of the computer that he used at GLG*. GLG specifically pled that it could not fully restore the hard drive and network drive (Counterclaims ¶ 36), and has explained to Cohen that this is primarily because it could not restore the hard drive at all. See Letter from Michael J. Puma to Gregory Filosa, dated September 4, 2009, attached as Ex. C to the Battaglia Decl. As GLG previously

---

provides no facts to support his speculative assertion that doing so "will unduly delay the completion of discovery." GLG has already deposed Cohen regarding his mass deletion and completed its own fact investigation. If Cohen wishes to depose a GLG witness regarding GLG's damages and losses, GLG is prepared to produce a witness as soon as necessary. *(Notably, Cohen moved to dismiss but not to stay discovery, and yet he has not sought any discovery on the Counterclaims despite his supposed concerns with delay.)*

[4] As conceded by Cohen, "Defendant's CFAA claim provides an independent basis of subject matter jurisdiction." Pl's Mem. at 8. Yet, even if the Court were to dismiss the federal CFAA claim, the Court properly would exercise supplemental jurisdiction over its state law conversion and trespass to chattels claims pursuant to 28 U.S.C. § 1367(a) since (as discussed above) these claims "derive from a common nucleus of operative fact" as Cohen's claims of original jurisdiction such that they form part of the same "case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 580 (2005).

4

explained to Cohen's counsel, the documents attached to Cohen's brief and used at his deposition were recovered from the network drive, not the hard drive. See Declaration of David Wolff ("Wolff Decl."), filed herewith, at ¶¶ 5-7. GLG and its forensic computer expert were able to recover from the hard drive only a list of "shortcuts" to some of the documents that previously on Cohen's hard drive, but they could not access any of the actual documents. Wolff Decl. at ¶¶ 5-7. Because Cohen challenged only this one element of GLG's common law claims, GLG has sufficiently pled a cause of action for trespass to chattels and conversion.

## IV. GLG HAS ADEQUATELY PLED A CAUSE OF ACTION UNDER THE COMPUTER FRAUD AND ABUSE ACT.

### A. GLG Has Sufficiently Pled Its Satisfaction Of The Jurisdictional Threshold.

The CFAA provides a civil cause of action for employers (like GLG) to recover against employees (like Cohen) who destroy business information on their way out the door. See 18 U.S.C. §§ 1030(a)(2), (a)(4), (a)(5), & (c). In order to meet the jurisdictional threshold for a CFAA claim, GLG ultimately "must allege facts which establish that it has suffered a loss in excess of $5,000 [ ] in responding to [Cohen's] alleged violation of the CFAA." Pl's Mem. at 10-11. "'[T]he costs of responding to [Cohen's] offense' are recoverable regardless of whether there is an interruption in service, and federal courts have sustained actions based on <u>allegations of costs to investigate and take remedial steps</u> in response to a defendant's misappropriation of data." Modis, Inc. v. Bardelli, 531 F. Supp. 2d 314, 320 (D. Conn. 2008) (cited by Cohen) (emphasis added). Cohen admits that such costs are recoverable under the CFAA. Pl's Mem. at 14. Moreover, the costs of responding to an offense include the cost of using one's own employees (not just external experts) to respond to, investigate, and diagnose a violation. United States v. Middleton, 231 F.3d 1207, 1213-14 (9th Cir. 2000) (observing that "[t]here is no reason to believe Congress intended the element of 'damage' to depend on a victim's choice whether to use hourly employees, outside contractors, or salaried employees").

Cohen argues that GLG failed to sufficiently plead facts establishing the $5,000 jurisdictional threshold apparently because it has not provided a detailed financial accounting of expenses incurred in responding to Cohen's mass deletion and the total amounts of each category

of expense. Not surprisingly, Cohen does not point to a Complaint in any CFAA action with that level of specificity. This is because Rule 8 does not require such an accounting, and Cohen certainly has not identified any caselaw requiring it. To the contrary, Cohen cites certain cases ruling <u>on summary judgment</u> (thus after discovery into the specific facts supporting the alleged $5,000 loss) that plaintiffs failed to satisfy the jurisdictional threshold. Pl's Mem. at 15.

The decision heavily relied upon by Cohen to support his artificial pleading standard is readily distinguishable. In <u>Modis, Inc. v. Bardelli</u>, the court held required the plaintiff to amend its complaint (rather than dismissing the complaint, as Cohen requests here)[5] because the court was unable to even determine what, if any, relief the plaintiff was seeking, and whether such relief was permissible under the CFAA. 531 F. Supp. 2d 314, 320 (D. Conn. 2008). The plaintiff had pled one simplistic, vague, unquantifiable, and future allegation of loss relating to the misappropriation of trade secrets and confidential information. See <u>Modis</u>, No. 3:07-cv-1638 (D. Conn. Nov. 7, 2007) (Complaint at ¶ 39) ("Modis stands to suffer, and will continue to suffer, irreparable harm for which there is no adequate remedy at law. Modis' loss is presently impossible to quantify. Modis is threatened with the loss of client relationships, loss of candidates for placement, loss of good will, and loss of Modis' confidential information.").

In contrast to the plaintiff in Modis, and consistent with the notice pleading requirements of Federal Rule 8, GLG stated detailed factual allegations supporting the jurisdictional threshold:

> ➢ GLG "incurred significant costs in investigating and seeking to address the intentional damage caused by Cohen's 'mass deletion,' including, without limitation, the use of both its own employees and forensic computer experts to assess the damage done by Cohen's 'mass deletion,' and to attempt to fully recover or restore the hard drive and network drive and all of the e-mail messages and electronic communications, documents and files previously stored there to their condition prior to Cohen's 'mass deletion.'" Counterclaims ¶ 35.

---

[5] Assuming, *arguendo*, that the Court concludes that GLG must amplify its claim of jurisdictional loss with additional factual allegations, GLG should be entitled to amend its Counterclaims. See, e.g., <u>Modis</u>, 531 F. Supp. 2d at 320 (granting plaintiff the opportunity to amend the allegations of its CFAA claim "so as to amplify the grounds for its asserted right to relief"); <u>Lasco Foods, Inc. vs. Hall and Shaw Sales, Mktg, & Consulting, LLC</u>, 600 F. Supp. 2d 1045, 1054 (E.D. Miss. 2009) (same).

> GLG "has not been able to fully recover or restore the hard drive and network drive and all of the e-mail messages and electronic communications, documents and files." Counterclaims ¶ 36.

> As a result, GLG "incurred losses in terms of lost revenue, costs incurred, and other consequential damages incurred because of the interruption in GLG's business operations related to the damage to its protected computer." Counterclaims ¶ 38.

> GLG's "losses incurred . . . are in excess of $5,000 within a one-year period." Counterclaims ¶ 39.

> "[T]he damage caused by Cohen includes, inter alia, impairment to the integrity and availability of data, program(s), system(s), and/or information." Counterclaims ¶ 46.

> "Cohen's conduct injured GLG's protected computer, operations, business, and confidential information, and caused a loss to GLG in excess of $5,000.00 within a one-year period." Counterclaims ¶ 47.

> "GLG's loss from the intentional damage caused by Cohen includes the cost of responding to the offense; conducting a damage assessment; attempting to restore the data, program, system, and/or information to its condition prior to the offense; impairment of its ability to defend Cohen's claims in this lawsuit; costs incurred; and other consequential damages." Counterclaims ¶ 48.

These expenses fall squarely with the CFAA's definition of damage or loss. See 18 U.S.C. § 1030(e)(8), & (e)(11). See also Pacific Aerospace & Electronics, Inc. v. Taylor, 295 F. Supp. 2d 1188, 1194-97 (E.D. Wash. June 20, 2003) (discussing history of the CFAA, its increasing use in cases involving former employees, and the broad view of what qualifies as damage for purposes of the CFAA). Thus, based on these specific allegations, GLG has met its burden by alleging "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting its claims. Panther Partners Inc., 2009 WL 2959883, at *1 (quoting Twombly, 550 U.S. at 556, 570 (internal citations omitted)).

Even if Federal Rule 8 required GLG to provide more details as to this one requirement for a CFAA claim, which it does not, GLG submits herewith the declaration of its Senior Security Engineer further elaborating on the damages and losses that GLG suffered and for which it is seeking recovery. The declaration confirms that substantial resources that GLG committed to investigating and seeking to correct the mass deletion, including the use of both its

own employees and forensic computer experts to assess the damage done by Cohen and to attempt to fully recover or restore the files on the hard drive and network drive so that they could be used in GLG's business and for this litigation. Wolff Decl. at ¶¶ 2-13.[6] To the extent that Cohen disputes how to properly value the costs of those efforts to GLG and the extent of its losses as a result of the unrecoverable destruction of most of the deleted files, those factual disputes preclude the resolution of GLG's claim by a 12(b)(6) motion.[7]

### B. GLG Has Sufficiently Stated A Claim Under CFAA § 1030(a)(5)(A).

Section 1030(a)(5)(A) makes it a violation of the CFAA where an employee (such as Cohen) knowingly causes "the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A). In a meager attempt to escape clear liability, Cohen does not dispute that he performed a "mass deletion" (which he acknowledged under oath) but rather contends again that his efforts were unsuccessful. As discussed above, this contention is simply false. See supra at 4-5.

Cohen also seems to suggest that he could somehow avoid liability by deleting GLG's files on his own, rather than using a commercial "wiping" program. As an initial matter, Cohen testified that he could not remember how he deleted the files (Cohen Dep. at 90:18-19), and GLG expects to present evidence (expert or otherwise) demonstrating that Cohen did in fact use a commercial "wiping" program. At a minimum, then, this apparent factual dispute precludes resolution of GLG's CFAA claim on a 12(b)(6) motion.

---

[6] This declaration represents part of a GLG's ongoing efforts to respond to Cohen's CFAA violation, and is not exhaustive as GLG's investigation, damage assessment, and attempts to restore the electronic files are ongoing and future response costs may be incurred. In addition, GLG may also incur additional preventative response costs. EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 584, n.17 (1st Cir. 2001).

[7] Cohen's discussion (Pl's Mem. at 10-14) regarding a claim for lost revenue under the CFAA – and whether a party has met the additional statutory requirement of alleging an interruption in service – is irrelevant to the Court's analysis here because any lost revenue for GLG is unnecessary to satisfy the jurisdictional threshold. Thus, the Court need not determine whether GLG has sufficiently pled lost revenue resulting from an interruption in service. GLG submits, however, that its allegations are sufficient under the notice pleading standards of Federal Rule 8 to state a claim for lost revenue.

In any event, whether Cohen performed the deletion himself or with the assistance of an individual and/or specialized erasure software, the distinction is irrelevant – Congress intended the CFAA to protect against both these types of "transmissions." Int'l Airport Ctrs., LLC v. Citrin, 440 F.3d 418, 420 (7th Cir. 2006) ("Congress was concerned with both types of attack: attacks by virus and worm writers, on the one hand, which come mainly from the outside, and attacks by disgruntled programmers who decide to trash the employer's data system on the way out."). Moreover, GLG cannot fairly be expected to know the precise nature of the "transmission" at this stage. See id. at 419 ("[M]aybe IAC doesn't know [how the transmission occurred]-maybe all it knows is that when it got the computer back, the files in it had been erased. But we don't see what difference the precise mode of transmission can make.").

Cohen's arguments also fail for the additional, independent reason that he cannot avoid liability simply by claiming that he did not use a commercial "program" to delete the files. To the contrary, the plain language of Section 1030(a)(5)(A) applies to a "command" (i.e. DELETE) in addition to the use of a "program." As indicated by Judge Posner in the case heavily relied upon by Cohen, "pressing a delete or erase key" may be stretching the CFAA too far ***only where such a transmission or command "does not affect the data sought to be deleted."*** Id. Such a failed deletion may not constitute a "transmission" under the CFAA because "[s]uch files are easily recoverable." Id. Here, on the other hand, Cohen cannot dispute that GLG – even with expert assistance – was entirely unable to recover the contents of his hard drive. See supra at 4-5. Where electronic files have been deleted in such a manner so as "to prevent their recovery," a "transmission" in violation of Section 1030(a)(5)(A)(i) has occurred. Citrin, 440 F.3d at 419. Indeed, Cohen effectively concedes this point in his brief. Pl's Mem. at 21 (discussing other cases where courts have found the permanent deletion of computer files to constitute a "transmission" in violation of the CFAA).

B. **GLG Sufficiently Stated Claims Under Other Sections Of The CFAA.**

For all the foregoing reasons with respect to Section 1030(a)(5)(A) of the CFAA, the Court need not reach any alternative bases for recovery in order to deny the Motion to Dismiss,

9

but GLG pled viable claims under other subsections of the CFAA as well. See, e.g., 18 U.S.C. §§ 1030(a)(2), (a)(5), & (g). Cohen has not cited to any binding authority precluding those claims, and courts are divided on the required showing for unauthorized access or conduct that exceeds authorized access. See, e.g., Modis, 531 F. Supp.2d at 319 ("At present, courts are split as to what circumstances give rise to access without authorization or access that exceeds authorization. . . . At this time, the Court need not resolve this conflict of authority. . . .") (citing Diamond Power Intern., Inc. v. Davidson, 2007 WL 2904119, *13-14 (N.D. Ga. 2007) (collecting cases)); Citrin, 440 F.3d at 420-21 (observing that employee's misconduct as to confidential information violated his duty of loyalty, thus "terminating his agency relationship . . . and with it his authority to access the laptop"); EF Cultural Travel BV, 274 F.3d at 582-84 (same); Calyon v. Mizuho Sec. USA, Inc., 07-CV-2241, 2007 WL 2618658, at *1 (S.D.N.Y. 2007) (same). Here, Plaintiff admits that his access to a computer was "for purposes of performing the job duties and responsibilities of his employment" (Pl's Mem. at 4), which duties/responsibilities certainly did not include destroying GLG's electronic records. Moreover, this Court has held, in denying a motion to dismiss an employer's CFAA claims against its former employees, that "the plain language of the statute seems to contemplate that, whatever else, 'without access' and 'exceeds authorized access' would include an employee who is accessing documents on a computer system which that employee had to know was in contravention of the wishes and interests of the employer." Calyon, 2007 WL 2618658, at *1. Perhaps Cohen plans to contend in this case, in direct contravention to his prior deposition testimony (Cohen Dep. at 97:20-109:14), that it somehow was consistent with the "wishes and interests" of GLG for him to perform a mass deletion. If so, at a minimum, that position creates a fact dispute precluding a successful 12(b)(6) motion.

## CONCLUSION

For all of the above reasons, GLG respectfully requests that the Court deny Cohen's premature Motion to Dismiss its Counterclaims.

Dated: October 30, 2009
    New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By _____
    Andrew J. Schaffran (AS-1236)
    Leni D. Battaglia (LB-4704)
101 Park Avenue
New York, NY 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma (MP-5573)
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963-5001 (fax)

# CERTIFICATE OF SERVICE

I, Leni D. Battaglia, hereby certify that on this 30th day of October, 2009, Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims, together with the Declaration of Leni Battaglia and Exhibits A-C thereto, and the Declaration of David Wolff, was filed electronically, is available for viewing and downloading from the ECF system, and also was served by hand delivery upon:

> Douglas H. Wigdor, Esq.
> Gregory N. Filosa, Esq.
> Thompson Wigdor & Gilly LLP
> 85 Fifth Avenue, Fifth Floor
> New York, New York 10003
>
> Counsel for Plaintiff Jeffrey Cohen

_____
Leni D. Battaglia

DB1/63826875.5