# DECLARATION OF DAVID WOLFF

1. My name is David Wolff, and I am the Senior Security Engineer at GLG.

2. On or around June 15, 2009, I attempted to recover the data from the hard drive ("C Drive") of the computer that had been used by a former employee named Jeff Cohen ("Cohen").

3. After our Helpdesk personnel devoted time to identifying the correct computer, I copied the data on the C Drive to an external drive to preserve the integrity of the data on the C Drive and then reviewed the results.

4. From my review, I determined that all of the documents and other files on the C Drive had been deleted and that any remaining data on the C Drive was unintelligible.

5. In an attempt to recover the deleted files, I then downloaded various data recovery tools (e.g., Ontrack, Win Undelete, and Recover) and ran each program in different configurations on the C Drive. That process, which was unsuccessful in recovering any intelligible files, took approximately 4 days.

6. On or about June 25, 2009, still unable to restore the data on the C Drive, I engaged the assistance of an outside vendor with more advanced data recovery tools. Working with a GLG project manager, I contacted Fios, a firm that specializes in forensic examinations, and had several conversations about the data recovery project. Before sending the C Drive to Fios, I made a full backup image of the C Drive.

7. Despite using advanced data recovery tools, Fios reported in follow-up teleconferences that they were unable to recover any useable data from the C Drive. Fios personnel concluded that the C Drive had been deleted by someone likely using specialized data destruction software.

8. GLG paid Fios thousands of dollars for its work attempting to recover data from the C Drive.

9. I also attempted to restore data on a network server that had been used by Cohen ("H Drive"), which was now empty. I sought to restore the H Drive from a back-up tape for a date shortly

1

before Cohen's departure from GLG. The Server team then had to put in an order with our off-site storage facility, Iron Mountain, to retrieve and deliver the backup tape. Iron Mountain charged for those services.

10. Iron Mountain delivered the tape the next day, and we began the restoration. During the restore onto our active server it became apparent that an additional back-up tape was required. Once Iron Mountain located and delivered the additional tape, we completed the restore. This entire process took several days to complete and multiple GLG employees were involved.

11. Restoring the H Drive meant that we could view the H Drive as it existed as of the date of the back-up, but we could not see any files deleted prior to the running of the back-up. Thus, we next requested a restore of the H Drive from an even earlier date. Once again, we requested the relevant tapes from Iron Mountain and, upon their delivery, several employees worked to restore the H Drive.

12. While it is difficult to say with certainty the number of hours that I personally spent on the above-described process, my best estimate is at least a dozen hours over the course of many different days.

13. Additionally, other GLG employees, including HelpDesk personnel, the Server team and a GLG project manager spent many hours working on this data recovery project at my direction.

14. This declaration is based on my personal knowledge and I could competently testify to these facts if called as a witness.

15. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing information is true and correct.

Dated: October 30, 2009

David Wolff