**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x

JEFFREY COHEN, on behalf of himself     :
individually, and on behalf of all similarly     :
situated employees,     :

    :

                Plaintiffs,     :        No. 09 Civ. 4352 (PKC)

    :

           v.     :

    :

GERSON LEHRMAN GROUP, INC.,     :

    :

              Defendant.     :

    :

------------------------------------------------------------- x

<br>

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF DAVID TEMPLE'S MOTION FOR ATTORNEYS' FEES AND COSTS

<br>

THOMPSON WIGDOR & GILLY LLP

Douglas H. Wigdor
Gregory N. Filosa
85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 3

ARGUMENT ............................................................................................................ 5

I.   PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND
     COSTS ........................................................................................................... 5

     A.  THE ATTORNEYS' FEES REQUESTED HEREIN ARE SUBSTANTIALLY
         RELATED TO PLAINTIFF'S SUCCESSFUL CLAIM ...................................... 6

     B.  THERE IS NO REQUIREMENT THAT AN AWARD OF ATTORNEY'S FEES
         PURSUANT TO THE FLSA BE PROPORTIONAL TO THE AWARD OF
         DAMAGES .............................................................................................. 8

     C.  THE SIGNIFICANT DISPARITY BETWEEN THE FEES REQUEST HEREIN AND
         THE AMOUNT OF PLAINTIFF'S JUDGMENT WAS CAUSED, IN SUBSTANTIAL
         PART, BY DEFENDANT'S DEFENSE STRATEGIES ...................................... 11

II.  THE REASONABLE HOURLY RATE ........................................................ 13

     A.  A "REASONABLE PAYING CLIENT" WOULD PAY THE ATTORNEYS' FEES
         REQUESTED BY PLAINTIFF'S COUNSEL IN THIS CASE .......................... 14

         1.  Customary Hourly Rates ..................................................... 15

         2.  Expertise Of Plaintiff's Counsel And Skill Required To
             Prosecute The Case .............................................................. 17

         3.  Time, Labor And Resources Required To Prosecute The Case ............. 18

         4.  The Novelty And Difficulty Of The Issues ............................ 18

         5.  The Results Obtained ........................................................... 19

         6.  Prevailing Rates In The Southern District Of New York .................... 19

         7.  The Preclusion Of Other Employment ................................ 21

         8.  Anticipated Returns Of This Representation ......................... 22

i

III.   THE TOTAL HOURS REQUESTED ARE REASONABLE AND DOCUMENT WITH SPECIFICITY .......................................................................................... 22

     A.   CONTEMPORANEOUS DOCUMENTATION ............................................. 22

     B.   THE NUMBER OF HOURS ARE REASONABLE ....................................... 23

IV.   PLAINTIFF IS ENTITLED TO COSTS ............................................................. 24

CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*In re AOL Time Warner Shareholder Derivative Litigation,*
No. 02 Civ. 6302, 2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Nov. 9, 2009) ......................19

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,*
522 F.3d 182 (2d Cir. 2007)...........................................................................*passim*

*Arnone v. CA, Inc.,*
No. 08 Civ. 4458 (SAS), 2009 U.S. Dist. LEXIS 17080 (S.D.N.Y. Mar. 6, 2009).............16

*Auscape v. National Geographic Society,*
No. 02 Civ. 6441 (LAK), 2003 U.S. Dist. LEXIS 13846 (S.D.N.Y. Aug. 8, 2003) ...........23

*Ayres v. 127 Restaurant Corp.,*
No. 96 Civ. 1255 (DC), 1999 U.S. Dist. LEXIS 7935 (S.D.N.Y May 21, 1999)................10

*Banyai v. Mazur,*
No. 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007).............7

*Barfield v. New York City Health & Hospitals Corp.,*
No. 05 Civ. 6319 (JSR), 2006 U.S. Dist. LEXIS 56711 (S.D.N.Y. Aug. 11, 2006) ...........10

*Blanchard v. Bergeron,*
489 U.S. 87 (1989)......................................................................................14, 16

*Bonner v. Guccione,*
No. 94 Civ. 7735 (DLC), 1997 U.S. Dist. LEXIS 11382 (S.D.N.Y. Aug. 6, 1997).............20

*Chan v. Sung Ye Tung Corp.,*
No. 03 Civ. 6048 (GEL), 2007 U.S. Dist. LEXIS 33883 (S.D.N.Y. May 7, 2007) .............10

*Cho v. Koam Medical Services, P.C.,*
524 F. Supp. 2d 202 (E.D.N.Y. 2007) ....................................................9, 10, 11

*City of Burlington v. Dague,*
505 U.S. 557 (1992)............................................................................................16

*City of Riverside,*
477 U.S. 561 (1986)..............................................................................................9

*Cohen v. Gerson Lehrman Group, Inc.,*
686 F. Supp. 2d 317 (S.D.N.Y. 2010).............................................................3, 7

*Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*,
    246 F.3d 142 (2d Cir. 2001)................................................................16

*Cruz v. Henry Modell & Co.*,
    No. 04 Civ. 1450 (AKT), 2008 U.S. Dist. LEXIS 25339 (E.D.N.Y. Mar. 31, 2008) .........18

*Cruz v. Local Union NO. 3 of the IBEW*,
    34 F.3d 1148 (2d Cir. 1994).................................................................22

*David v. Sullivan*,
    777 F. Supp. 212 (E.D.N.Y. 1991) .......................................................23

*Davis v. J.P. Morgan Chase & Co.*,
    587 F.3d 529 (2d Cir. 2009)................................................................19

*De Los Santos v. Just Wood Furniture, Inc.*,
    Nos. 05 Civ. 9369 (WWE), 06 Civ. 5749 (WWE), 2010 U.S. Dist. LEXIS 15463
    (S.D.N.Y. Feb. 2, 2010) ............................................................10, 11

*Fegley v. Higgins*,
    19 F.3d 1126 (6th Cir. 1994) ..............................................................10

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998)................................................................23

*Gonzalez v. Bratton*,
    147 F. Supp. 2d 180 (S.D.N.Y. 2001)...................................................11

*Grochowski v. Ajet Construction Corp.*,
    No. 97 Civ. 6269 (NRB), 2002 U.S. Dist. LEXIS 5031 (S.D.N.Y. Mar. 27, 2002)............11

*Gusman v. Unisys Corp.*,
    986 F.2d 1146 (7th Cir. 1992) .............................................................16

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..............................................................5, 6, 13

*Imbeault v. Rick's Cabaret International Inc.*,
    No. 08 Civ. 5458 (GEL), 2009 U.S. Dist. LEXIS 71562
    (S.D.N.Y. Aug. 13, 2009) .......................................................5, 6, 13, 24

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
    No. 03 Civ. 1548 (GBD), 2008 U.S. Dist. LEXIS 82085 (S.D.N.Y. Oct. 17, 2008) ..........23

*Jin v. Pacific Buffet House, Inc.*,
    No. 06 Civ. 579 (VVP), 2010 U.S. Dist. LEXIS 63608 (E.D.N.Y. June 25, 2010).............12

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...............................................................................14, 16, 17

*Kahlil v. Original Old Homestead Restaurant, Inc.*,
    657 F. Supp. 2d 470 (S.D.N.Y. 2009)..............................................5, 9, 12, 19, 24

*Kassim v. City of Schenectady*,
    415 F.3d 246 (2d Cir. 2006)..........................................................................9, 12

*Kuper v. Empire Blue Cross and Blue Shield*,
    No. 99 Civ. 1190 (JSG), 2003 WL 23350111 (S.D.N.Y. Dec 18, 2003) ............................21

*Kuzma v. IRS*,
    821 F.2d 930 (2d Cir. 1987).........................................................................24

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998)......................................................................6, 24

*Lochren v. County of Suffolk*,
    344 Fed. Appx. 706 (2d Cir. 2009) .................................................................15

*Lyte v. Sara Lee Corp,.* ...............................................................................................5
    950 F.2d 101 (2d Cir.1991)

*Maher v. Gagne*,
    448 U.S. 122 (1980)...............................................................................5, 19

*Marchisotto v. City of New York*,
    No. 05 Civ. 2699 (RLE), 2009 U.S. Dist. LEXIS 64662 (S.D.N.Y. July 27, 2009) ...........16

*Marfia v. T.C. Ziraat Bankasi*,
    903 F. Supp. 463 (S.D.N.Y. 1995) ................................................................21

*In re Marsh ERISA Litigation*,
    No. 04 Civ. 8157, 2010 U.S. Dist. LEXIS 8325 (S.D.N.Y. Jan. 29, 2010)........................19

*Matthews v. City of New York*,
    No. 01 Civ. 2739 (CPS), 2003 U.S. Dist. LEXIS 16334 (E.D.N.Y. Aug. 22, 2003) ............7

*Morgenstern v. County of Nassau*,
    No. 04 Civ. 58 (ARL), 2009 U.S. Dist. LEXIS 116602 (E.D.N.Y. Dec. 15, 2009)............24

*Morin v. Modern Continental Construction Co.*,
    No. 07 Civ. 4815 (JFB), 2009 U.S. Dist. LEXIS 72525 (E.D.N.Y. July 1, 2009) ..............22

*In re Novartis Wage and Hour Litigation*,
No. 09 Civ. 0437, 2010 U.S. App. LEXIS 13708 (2d Cir. July 6, 2010) ............................19

*Perdue v. Kenny A.*,
130 S. Ct. 1662 (2010) ...................................................................................................17

*Putnam Leasing Co. v. Fields*,
No. 05 Civ. 141 (RML), 2007 U.S. Dist. LEXIS 58794 (E.D.N.Y. June 27, 2007) ...........22

*Quaratino v. Tiffany & Co.*,
166 F.3d 422 (2d Cir. 1999)............................................................................................21

*Reisick v. Universal Communities of Miami, Inc.*,
591 F.3d 101 (2d Cir. 2010)............................................................................................19

*Robinson v. City of New York*,
No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981 (S.D.N.Y. Sept. 29, 2009)...........20

*Rodriguez ex rel. Kelly v. McLoughlin*,
84 F. Supp. 2d 417 (S.D.N.Y. 1999)................................................................................21

*Rozell v. Ross-Holst*,
576 F. Supp. 2d 527 (S.D.N.Y. 2008)........................................................................16, 20

*Samborski v. Linear Abatement Corp.*,
No. 96 Civ. 1405 (DC), 1999 U.S. Dist. LEXIS 14571 (S.D.N.Y. Sep. 2, 1999)...............12

*Saunders v. City of New York*,
No. 07 Civ. 830 (SAS), 2009 U.S. Dist. LEXIS 115366 (S.D.N.Y. Dec. 9, 2009)...............9

*Silberblatt v. Morgan Stanley*,
No. 05 Civ. 7569 (PKC), 2007 U.S. Dist. LEXIS 85895 (S.D.N.Y. Nov. 19, 2007)...........20

*Skold v. America International Group*,
No. 96 Civ. 7137 (HB), 1999 U.S. Dist. LEXIS 9209 (S.D.N.Y. June 18, 1999)...............20

*Steinberg v. Nationwide Mutual Insurance Co.*,
612 F. Supp. 2d 219 (E.D.N.Y. 2009) .............................................................................20

*Tancredi v. Metropolitan Life Insurance Co.*,
378 F.3d 220 (2d Cir. 2004)..............................................................................................1

*Texas State Teachers Association v. Garland Independent School District*,
489 U.S. 782 (1989).........................................................................................................5

*Tlacoapa v. Carregal*,
    386 F. Supp. 2d 362 (S.D.N.Y. 2005)......................................................................23

## STATUTES AND OTHER AUTHORITIES

42 U.S.C. § 1988...........................................................................................................9, 10

29 U.S.C. § 216(b)..........................................................................................................5, 24

18 U.S.C. § 1030, Computer Fraud and Abuse Act ("CFAA") ........................................3

## PRELIMINARY STATEMENT

Plaintiff David Temple ("Plaintiff" or "Mr. Temple") respectfully submits this memorandum of law in support of his request that the Court order Defendant Gerson Lehrman Group, Inc. ("Defendant" or "Gerson Lehrman") to fairly and fully compensate Plaintiff's attorneys, Thompson Wigdor & Gilly LLP ("TWG" or "Plaintiff's Counsel"), for all of the reasonable time and costs expended in this matter from its inception on or about May 5, 2009 through Defendant's service of the Federal Rule of Civil Procedure 68 Offer of Judgment ("Rule 68 Offer"), as well as the present motion.[1]

There is no question that Plaintiff, by accepting Defendant's Rule 68 Offer, is a prevailing party in this matter and, pursuant to the Fair Labor Standards Act ("FLSA"), is entitled to an award of attorneys' fees and costs based on a common core of facts and related theory. While Defendant will argue that Plaintiff's request for fees and costs should be reduced in light of the disparity between his award of damages and the requested fees, the Supreme Court and Second Circuit have specifically rejected any proportionality requirement. Notwithstanding this, and in recognition of those concerns raised in the Court's August 25, 2010 Order, the instant motion does not seek fees and costs related to the following:

---

[1]       As the Court is aware, Plaintiff initially filed this motion on August 16, 2010 without first requesting a pre-motion conference pursuant to Your Honor's Individual Practices. In light of the compulsory language of Fed. R. Civ. P. 54(d) which requires that, "[u]nless a statute or a court order provides otherwise, the motion [for attorneys' fees] must . . . be filed no later than 14 days after the entry of judgment," Plaintiff did not believe that Your Honor's pre-motion conference requirement applied to such motion. *See also Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 227-28 (2d Cir. 2004) (holding that "absent a statute or order of the court such as a local rule, the district court was required to find 'excusable neglect' under Rule 6(b)(2) to extend the time to move for attorneys' fees after the expiration of Rule 54's fourteen-day deadline"). Given this strict time limit regarding the timing for filing Plaintiff's Motion following the Court's entry of judgment on August 2, 2010 (and the absence of any Order extending this time period or tolling this deadline pending a pre-motion conference), Plaintiff reasonably concluded that he was required to file his motion by August 16, 2010, without first requesting a pre-motion conference. In any event, Your Honor has subsequently waived the pre-motion conference requirement and we sincerely apologize to the Court for apparently running afoul of the Court's individual rules.

- Plaintiff Jeffrey Cohen's ("Plaintiff Cohen") opposition to the counterclaims asserted by Defendant; [2]

- Plaintiff Cohen's opposition to Defendant's motion to dismiss and/or strike Plaintiff Cohen's New York Labor Law ("NYLL") claim; [3]

- Plaintiff Cohen's unsuccessful application to stay the deadline for potential opt-in plaintiffs' consent forms;

- Discovery regarding the claims of Opt-In Plaintiffs Matthew Ronen ("Plaintiff Ronen") and Ashleigh Baldwin ("Plaintiff Baldwin"); and

- Plaintiff's August 16, 2010 motion for attorneys' fees which has now been withdrawn and replaced with the instant motion, as well as other fees incurred following Defendant's service of the Rule 68 Offer.

Although not raised in Defendant's August 23, 2010 letter, out of an abundance of caution and in recognition of the Court's August 24, 2010 Order, we are also removing time entries for deposition subpoenas that were ultimately quashed by the Court, as well as supplemental document requests that were served, then withdrawn when the Court subsequently limited discovery to Plaintiff Cohen. Accordingly, and for the reasons discussed more fully below, Plaintiff requests that the Court award reasonable attorneys' fees based on the following calculation:

|  | Hourly rate | No. Hours | Sub-total |
|---|---|---|---|
| Douglas H. Wigdor (partner) | $750.00 | 100.30 | $75,225.00 |
| Scott B. Gilly (partner) | $750.00 | 27.90 | $20,925.00 |
| Gregory N. Filosa (associate) | $500.00 | 541.60 | $270,800.00 |
| Jennifer L. Bartle (associate) | $450.00 | 57.20 | $25,740.00 |
| Paralegals | $180.00 | 51.00 | $9,180.00 |
|  |  | **Total** | **$401,870.00** |

---

[2]     While Plaintiff does not seek recovery of costs and fees related to the counterclaims asserted against Plaintiff Cohen, Plaintiff's Counsel remains confident that these counterclaims will ultimately be shown to be an act of retaliation against Plaintiff Cohen for having pursued his FLSA claims on behalf of himself and all those similarly situated to him (including Plaintiff) and that the counterclaims were designed to deter individuals such as Plaintiff from opting into this action.

[3]     In light of the release signed by Plaintiff upon the termination of his employment with Defendant that Defendant attached to its August 23, 2010, which Defendant had not provided to Plaintiff prior to such date, Plaintiff withdraws his request for an award of attorneys' fees related to Plaintiff Cohen's opposition to the motion to dismiss and/or strike Plaintiff's NYLL claim.

Finally, Plaintiff is also entitled to recovery of taxable and discretionary costs pursuant to the federal and local rules as well as the express terms of Defendant's Rule 68 Offer to Plaintiff.

## STATEMENT OF FACTS

Plaintiff Cohen was employed by Defendant as a Research Associate from April 2007 through December 2008 and filed the instant Complaint alleging that Defendant violated the FLSA and the NYLL, when it failed to compensate Plaintiff Cohen and similarly-situated Research Associates (who include Mr. Temple) for all hours worked in excess of 40 hours per week prior to December 31, 2008. (*See* Complaint, attached to the Wigdor Decl. as Exhibit A). In response to Plaintiff Cohen's Complaint – and in a patent effort to unnecessarily delay the litigation of the NYLL class claims – Defendant moved to dismiss Plaintiff Cohen's Complaint raising a number of recycled arguments that had been uniformly rejected by the courts that have considered them and were properly rejected by this Court. *See Cohen v. Gerson Lehrman Group, Inc.*, 686 F. Supp. 2d 317 (S.D.N.Y. 2010). At the same time Defendant moved to dismiss the NYLL claims, Plaintiff Cohen moved to conditionally certify a collective action pursuant to § 16(b) of the FLSA, which was granted by the Court in the same January 6, 2010 Order. *See Id.* In retaliation for filing the Complaint, and in a calculated attempt to dissuade other similarly-situated current and former Research Associates from joining the underlying FLSA collective action, Defendant asserted counterclaims against Plaintiff Cohen for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, as well as state law claims of conversion and trespass to chattels, which Plaintiff Cohen then moved to dismiss. (*See* Defendant's Answer and Counterclaims, attached to the Wigdor Decl. as Exhibit B).

On January 6, 2010, the Court issued an Order (i) denying Defendant's motion to dismiss and/or strike Plaintiff's NYLL and FLSA claims, (ii) granting Plaintiff Cohen's motion for preliminary certification of a collective action, and (iii) denying Plaintiff Cohen's motion to dismiss Defendant's counterclaims.  On February 9, 2010, pursuant to the Court's January 6, 2010 Order, a notice was sent out to each individual that was employed by Defendant as a Research Associate prior to December 31, 2008 advising them of their rights to join the underlying FLSA collective action.  Prior to the 60-day deadline, Plaintiff Temple – as well Plaintiffs Ronen Baldwin – filed notices consenting to join this FLSA action.

On July 16, 2010, Defendant served Plaintiff and Plaintiff Baldwin with Offers of Judgment pursuant to Rule 68.  With respect to Plaintiff, the Rule 68 Offer served by Defendant offered to "allow entry of judgment against [Defendant] in favor of Plaintiff David Temple, in the sum of Ten Thousand and Five Hundred dollars and no cents ($10,500), plus reasonable attorney's fees and other costs incurred up to the date this offer of judgment is served that might be recoverable by Plaintiff against Defendant in this action."  (*See* Rule 68 Offer of Judgment to Plaintiff, attached to the Wigdor Decl. as Exhibit F).  The Rule 68 Offer to Plaintiff provided he had fourteen days to accept Defendant's offer.  On July 30, 2010, Plaintiff provided Defendant with notice of his acceptance of Defendant's Rule 68 Offer.  (*See* Notice of Acceptance of Rule 68 Offer of Judgment to David Temple, attached to the Wigdor Decl. as Exhibit G.)  On August 2, 2010, the Court entered judgment in favor of Plaintiff.  (*See* August 2, 2010 Judgment, attached to the Wigdor Decl. as Exhibit H).  Plaintiff now submits this memorandum of law in support of his request for attorneys' fees.

**ARGUMENT**

I.   **PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiff, by accepting Defendant's Rule 68 Offer, is a prevailing party in this action, and pursuant to § 216 of the FLSA, is entitled to an award of reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b) ("[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). A plaintiff is a "prevailing party for purposes of the FLSA and NYLL 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Kahlil v. Original Old Homestead Rest., Inc.,* 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Similarly, "to qualify as a prevailing party, a plaintiff must demonstrate a change in the legal relationship between itself and the defendant arising from the resolution of the lawsuit." *Khalil,* 657 F. Supp. 2d at 474 (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792)).

Plaintiff's acceptance of Defendant's Rule 68 Offer is sufficient to establish his status as a prevailing party. *See Khalil,* 657 F. Supp. 2d at 474 ("Where, as here, plaintiffs obtained a favorable settlement, they are entitled to an award of attorneys' fees: 'the fact that plaintiff prevailed through a settlement rather than through litigation does not weaken plaintiff's claim to fees.'") (citing *Maher v. Gagne,* 448 U.S. 122, 129 (1980); *see also Imbeault v. Rick's Cabaret Int'l Inc.,* No. 08 Civ. 5458 (GEL), 2009 U.S. Dist. LEXIS 71562, *3 (S.D.N.Y. Aug. 13, 2009) ("[Defendant] does not challenge that [plaintiff], through the acceptance of its Rule 68 Offer of Judgment, has prevailed and is entitled to a fee award.") (citing *Lyte v. Sara Lee Corp.,* 950 F.2d 101, 103-04 (2d Cir. 1991). Moreover, Defendant's Rule 68 Offer of Judgment, on its face, provides for "reasonable attorney's fees and other costs incurred up to the date this offer of

5

judgment is served." (Wigdor Decl., Ex. F). Accordingly, Plaintiff is a prevailing party pursuant

to the FLSA and is entitled to an award of reasonable attorneys' fees and costs.

### A.   THE ATTORNEYS' FEES REQUESTED HEREIN ARE SUBSTANTIALLY RELATED TO PLAINTIFF'S SUCCESSFUL CLAIM

While Defendant will argue that Plaintiff seeks to recover fees unrelated to his successful

claim, such argument fails in light of the simple fact that Plaintiff's claims are inextricably

intertwined with Plaintiff Cohen's claims.  Indeed, because most of the fees and costs incurred in

pursuing Plaintiff Cohen's claims cannot be divorced and were for the benefit of Plaintiff

Temple's claim, they are recoverable by Plaintiff as a result of his status as a prevailing party.

Additionally, Plaintiff has carefully separated out and reduced the fees requested herein to

exclude those which arguably did not benefit him directly and, thus, did not contribute to his

status as a prevailing party.

Where a plaintiff has prevailed on some (but not all) of his claims, "the most important

question in determining a reasonable fee award is whether the failed claim was intertwined with

the claims on which he succeeded."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir.

1998).  As the Second Circuit explained, "if the plaintiff won substantial relief, and all of his

claims for relief 'involved a common core of facts' or were 'based on related legal theories,' so

that 'much of counsel's time was devoted generally to the litigation as a whole, making it

difficult to divide the hours expended on a claim-by-claim basis,' there should be a fee award for

all time reasonably expended."  *Id.* (citing *Hensley*, 461 U.S. at 435).  In the context of an FLSA

case, the claims of the named plaintiff share a "common core of facts" with and are based on "a

related legal theory" as those of similarly-situated individuals such that the individual and class

and/or collective claims are substantially related for purposes of determining what fees are

recoverable as part of an award of attorneys' fees. *See Imbeault*, 2009 U.S. Dist. LEXIS 71562

at *18 (plaintiff's "individual claims and the claims of the putative class and collective action shared a common core of facts and were based on a related legal theory"); *Banyai v. Mazur,* No. 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 25272 at *20 (S.D.N.Y. Mar. 30, 2007) (finding it "impractical to attempt to dissect the time undertaken by Class Counsel . . . [which] benefited the Class not only in the claims against the Settling Defendants but also in the claims against the . . . no[n] [] settling defendant.").

While Defendant will no doubt attempt to portray many of the fees and costs sought by the instant motion as attributable solely to Plaintiff Cohen, and not to Plaintiff, this is simply not the case as Plaintiff's ultimate entitlement to relief was based on his ability to establish that he was similarly-situated to Plaintiff Cohen.  Indeed, as the Court noted when it granted Plaintiff Cohen's motion for preliminary certification, the success of any of the opt-in plaintiffs' FLSA claims is contingent on establishing that, based on a fully developed record and under a more stringent standard, he or she was similarly situated to Plaintiff Cohen with respect to their collective FLSA claims.  *Cohen,* 686 F. Supp.2d at 326.  Thus, Plaintiff's entitlement to relief was based upon the discovery conducted into Plaintiff Cohen's individual FLSA claim and, thus, their respective claims are inextricably intertwined such that the costs and fees attributable to Plaintiff's Cohen's individual claims can be awarded to Plaintiff as a prevailing party.[4]

Further, Plaintiff Cohen's individual FLSA claim required a significant amount of discovery into the duties and responsibilities of the Research Associate position generally, all of

---

[4]    Defendant will likely cite *Matthews v. City of New York*, No. 01 Civ. 2739 (CPS), 2003 U.S. Dist. LEXIS 16334 (E.D.N.Y. Aug. 22, 2003), for the proposition that, at most, Plaintiff is entitled to a pro rata (or 1/49th) share of the fees and costs related to the motion for preliminary certification of a collective action. *Matthews*, however, is distinguishable as the plaintiff in that case sought to recover attorneys' fees related to responding to defendant's motion to disqualify plaintiff's counsel in that case as well as eight other cases (including three class actions). *Id.* at *2-4. Further, the court reduced the attorneys' fees related to such motion on a pro rata basis according to the number of clients actually represented by plaintiff's counsel (31) and not the number of potential clients, which is the improper measure that Defendant seeks to use here to reduce Plaintiff's award of attorneys fees, rather than the 3 who opted in and are represented by Plaintiff's Counsel.

which were directly related to Plaintiff's claim as well and was relied upon by Plaintiff in the prosecution of his claims against Defendant. Similarly, the time that Plaintiff's counsel spent preparing for and attending conferences related to Defendant's premature motion for summary judgment relating to Plaintiff Cohen's individual claims are substantially related to Plaintiff's claims as it was Defendant's clear intent to attempt to sever Plaintiff Cohen's claims from those of the potential opt-ins prior to Court-authorized notice being provided. Thus, Plaintiff received substantial benefit from these activities despite not yet having opted into this litigation. In fact, had Defendants been permitted to file the motion for summary judgment and had it been granted, Plaintiff Temple would not have had the ability to opt-in and accept an offer of judgment.

Finally, much of the discovery that was conducted into Plaintiff Cohen's claims was necessitated by Defendant's litigation strategy which sought to attempt to complete discovery on Plaintiff Cohen's individual claims and preemptively move for summary judgment before the Court had issued a decision on Plaintiff's motion for preliminary certification. Thus, the fees and expenses related to discovery and litigation of Plaintiff Cohen's FLSA claim benefited Plaintiff's status as a prevailing party, which could not have happened without such efforts by Plaintiff Cohen, and Plaintiff is entitled to recovery of such fees in light of his acceptance of the Rule 68 Offer.

**B.    THERE IS NO REQUIREMENT THAT AN AWARD OF ATTORNEYS' FEES PURSUANT TO THE FLSA BE PROPORTIONAL TO THE AWARD OF DAMAGES**

Defendant will no doubt highlight the disparity between the attorneys' fees requested herein and the amount of damages awarded to Plaintiff by way of his acceptance of the Rule 68 Offer.[5] There is no requirement that, however, there be a proportional relationship between the

---

[5]    In its August 23, 2010 correspondence to the Court, Defendant noted that the amount of the accepted Rule 68 Offer was significantly less than the computation of damages disclosed in Plaintiffs' Rule 26(a) Disclosures. This computation was based on his entire employment with Defendant, which turned out to be inaccurate because

fees requested and the recovery obtained.  In fact, the attempt to impose such a requirement has

been rejected consistently by this Circuit. *See, e.g., Kahlil,* 657 F. Supp. 2d at 478 (citing

*Kassim v. City of Schenectady,* 415 F.3d 246, 254 (2d Cir. 2006) ("we have repeatedly rejected

the notion that a fee may be reduced merely because the fee would be disproportionate to the

financial interest at stake in the litigation")); *Saunders v. City of New York,* No. 07 Civ. 830

(SAS), 2009 U.S. Dist. LEXIS 115366 (S.D.N.Y. Dec. 9, 2009) ("There is, however, no rule

requiring proportionality between the amount of fees requested and the damages recovered.");

*Cho v. Koam Med. Servs., P.C.,* 524 F. Supp. 2d 202, 211 (E.D.N.Y. 2007) ("there is no per se

"proportionality" rule between the damages award to a successful plaintiff and the amount of

attorneys' fees available") (citing *City of Riverside,* 477 U.S. at 578).

    As the Supreme Court has held, a *per se* rule regarding proportionality between the

amount of the fee award and the damages is inconsistent with the public policy reasons

underlying the attorneys' fees provision:

> A rule of proportionality would make it difficult, if not impossible, for individuals
> with meritorious civil rights claims but relatively small potential damages to
> obtain redress from the courts. This is totally inconsistent with Congress' purpose
> in enacting [42 U.S.C.] § 1988. Congress recognized that private-sector fee
> arrangements were inadequate to ensure sufficiently vigorous enforcement of civil
> rights. In order to ensure that lawyers would be willing to represent persons with
> legitimate civil rights grievances, Congress determined that it would be necessary
> to compensate lawyers for all time reasonably expended on a case.

*City of Riverside,* 477 U.S. at 578, (1986); *see also Kassim,* 415 F.3d at 252 ("[42 U.S.C.]

§ 1988 was enacted in part to secure legal representation for plaintiffs whose

constitutional injury was too small, in terms of expected monetary recovery, to create an

---

Plaintiff's employment in the Research Associate position terminated in or around March 2008, when Plaintiff was
transferred to the position of Product Associate (which is not at issue in the present litigation) and remained
employed throughout the remainder of his employment with Defendant. Thus, Plaintiff recognizes that this
computation was inaccurate, yet as stated in Plaintiffs' Rule 26(a) disclosure, Plaintiff had not had the benefit of full
discovery at the time that such disclosure was made and had not yet amended such disclosures to reflect this
subsequently discovered information.

incentive for attorneys to take the case under conventional fee arrangements.").[6]

Similarly, as the Sixth Circuit has held with respect to the FLSA:

> The purpose of the FLSA attorney fees provision is "to insure effective access to
> the judicial process by providing attorney fees for prevailing plaintiffs with wage
> and hour grievances."  Courts should not place an undue emphasis on the amount
> of the plaintiff's recovery because an award of attorney fees here "encourages the
> vindication of congressionally identified policies and rights."  Indeed, we have
> "upheld substantial awards of attorney's fees even though a plaintiff recovered
> only nominal damages."

*Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (internal citations omitted); *see also De

Los Santos v. Just Wood Furniture, Inc.*, Nos. 05 Civ. 9369 (WWE), No. 06 Civ. 5749 (WWE),

2010 U.S. Dist. LEXIS 15463, *11 (S.D.N.Y. Feb. 2, 2010) ("the district court should not reduce

a fee award because the requested fees dwarfs the plaintiff's recovery . . . such a reduction, the

Court of Appeals stated, would 'subvert the statute's goal of opening the court to all who have

meritorious civil rights claims") (internal citations omitted); *Chan v. Sung Ye Tung Corp.*, No. 03

Civ. 6048 (GEL), 2007 U.S. Dist. LEXIS 33883, *18 (S.D.N.Y. May 7, 2007) ("Although the

award is greater than the damages actually recovered by plaintiffs, that fact illustrates the

wisdom of a fee-shifting statute that accounts for and rewards pro bono representation, because

unprofitability is a significant disincentive for most attorneys to take cases like this one").

Consistent with the foregoing, courts routinely award attorneys fees in FLSA cases that

far exceed the damages recovered.  *See, e.g., Barfield v. New York City Health & Hosps. Corp.*,

No. 05 Civ. 6319 (JSR), 2006 U.S. Dist. LEXIS 56711 (S.D.N.Y. Aug. 11, 2006) (in FLSA

action, court awarded attorneys fees and costs of <u>more than 30 times</u> the damages award), *aff'd,*

---

[6]     While the Supreme Court's decision in *Riverside* was based on the fee award provision of 42 U.S.C. §
1988, courts within this Circuit routinely apply this rationale to FLSA cases.  *See, e.g., Ayres v. 127 Restaurant
Corp.*, No. 96 Civ. 1255 (DC), 1999 U.S. Dist. LEXIS 7935, *3-4 (S.D.N.Y. May 21, 1999) ("the law on attorneys'
fees is no different in FLSA cases than it is in employment discrimination cases, and . . . many of the policy
considerations are the same"); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 211 n.6 (E.D.N.Y. 2007) (noting
that the purpose of the FLSA attorneys' fees provision is the same as 42 U.S.C. § 1988).

537 F.3d 132 (2d Cir. 2008); *De Los Santos v. Just Wood Furniture, Inc.*, 2010 U.S. Dist. LEXIS

15463 (court awarded $159,153.89 in fees and costs following judgment of $30,884); *Cho*, 524

F. Supp. 2d at 202 (attorneys' fees and costs award of $120,727.46 following judgment of

$23,454.14); *Grochowski v. Ajet Constr. Corp.*, No. 97 Civ. 6269 (NRB), 2002 U.S. Dist. LEXIS

5031 (S.D.N.Y. Mar. 27, 2002) (court awarded $97,207.50 in fees and costs following judgment

of approximately $26,000). Thus, the fact that the attorneys' fees requested by the instant

motion exceed the amount of damages recovered by Plaintiff is insufficient to warrant a

reduction in the amount of the fees ultimately awarded to Plaintiff as a prevailing party.

### C. THE SIGNIFICANT DISPARITY BETWEEN THE FEES REQUESTED HEREIN AND THE AMOUNT OF PLAINTIFF'S JUDGMENT WAS CAUSED, IN SUBSTANTIAL PART, BY DEFENDANT'S DEFENSE STRATEGIES

While Defendant will no doubt object to the disparity between the fees requested herein

and the amount of damages awarded to Plaintiff, there is no escaping the fact that Defendant's

litigation tactics (and refusal to engage in good faith settlement discussions despite the Court's

repeated recommendation to do so)[7] unnecessarily increased the attorneys fees associated with

this matter which are thus recoverable by Plaintiff. As noted in *Gonzalez v. Bratton*, 147 F.

Supp. 2d 180 (S.D.N.Y. 2001), the time spent prosecuting a litigation may be "a direct function

of the forcefulness and chosen strategies of the defense." *Id.* at 211. Indeed, the Second Circuit

has recognized that, "in litigating a matter, an attorney is in part reacting to forces beyond the

attorney's control, particularly the conduct of opposing counsel and of the court. If the attorney

is compelled to defend against frivolous motions and to make motions to compel compliance

---

[7]     Indeed, while Plaintiff's Counsel attempted to engage Defendant in good faith mediation discussions (as
suggested by Your Honor both at the outset of the litigation and following preliminary certification this past
January), Defendant utterly refused to engage in mediation unless the Plaintiffs agreed to certain unreasonable and
unsupported conditions which would have substantially devalued the Plaintiffs' claims.

with routine discovery demands . . . the hours required to litigate even a simple matter can

expand enormously." *Kassim*, 415 F.3d at 252.

In the context of FLSA cases, courts routinely consider the defendant's litigation tactics

in assessing the reasonableness of an attorneys' fee application. *See, e.g., Samborski v. Linear

Abatement Corp.*, No. 96 Civ. 1405 (DC), 1999 U.S. Dist. LEXIS 14571, *5 (S.D.N.Y. Sep. 2,

1999) ("[A]lthough the fees requested are high in comparison to the recovery, defendants

defended the case in such a fashion as to require plaintiffs to engage in extensive work . . .

[including] a largely unsuccessful motion to dismiss, requiring plaintiffs to respond."); *Khalil*,

657 F. Supp. 2d at 478 (finding that "the simple disproportion between a plaintiff's recovery and

the fee applied is not a proper basis for a reduction . . . where, as here, opposing counsel wages a

tenacious defense which expands the time required to pursue even straightforward claims"); *Jin

v. Pacific Buffet House, Inc.*, No. 06 Civ. 579 (VVP), 2010 U.S. Dist. LEXIS 63608, * 14-15

(E.D.N.Y. June 25, 2010) ("the vexatious posture adopted by the defendant . . . both during

discovery and afterwards, was a significant factor in causing the plaintiff's attorneys to expend

somewhat more time in prosecuting their client's case then would normally be necessary").

In the present case, Defendant unnecessarily increased the time and resources that

Plaintiff's Counsel was required to expend in litigating the Plaintiffs' claims, by among other

things:

- filing a motion to dismiss and/or strike portions of Plaintiff Cohen's Complaint
  that raised arguments that had been routinely rejected by courts within this district
  in an attempt to delay the preliminary certification of a collective action and sever
  Plaintiff Cohen's claims from that of Plaintiff and the potential opt-in plaintiffs;[8]

---

[8]     As noted above, the present motion does not seek recovery of the costs and fees related to opposing
Defendant's motion to strike and/or dismiss Plaintiff's NYLL claims.

- asserting counterclaims against Plaintiff Cohen, the cost of which will dwarf any potential recovery by Defendant;[9]

- opposing Plaintiff Cohen's request to schedule depositions of certain employees of Defendant regarding both his and the opt-in Plaintiffs' FLSA claims;

- prematurely seeking to move for summary judgment on Plaintiff Cohen's individual claims in an unsuccessful attempt to sever his claims from those of the potential opt-ins prior to the Court rendering a decision on the motion for preliminary certification; and

- providing inaccurate and/or misleading information regarding the contact information for the potential opt-in plaintiffs which required the Plaintiffs to seek the intervention of the Court to correct.

Thus, the fact that Plaintiff's request for attorneys' fees considerably exceeds the amount recovered by Plaintiff Temple is not reflective of the reasonableness of the fees requested herein and actually weighs in favor of an increased award.

## II.    THE REASONABLE HOURLY RATE

In determining a "reasonable" fee, the "most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Imbeault*, 2009 U.S. Dist. LEXIS 71562 at *2-3 (citing *Hensley*, 461 U.S. at 433 (1983)).  In determining what is a "reasonable fee," the Second Circuit has held that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2007).

In making this determination, the Second Circuit held that it was incumbent upon the district court to "step[] into the shoes of the reasonable, paying client," and "bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the

---

[9]        As noted above, the present motion does not seek recovery of the costs and fees related to opposing Defendant's counterclaims; however, Defendant's decision to pursue such claims (which Defendant itself calculates as amounting to $7,207.13) is consistent with its defense strategy of driving up the litigation costs of this matter as well as its intent to retaliate against Plaintiff Cohen for pursuing such claims against Defendant.

reasonableness of attorneys' fees in setting a reasonable hourly rate." *Id.* at 184, 190 (emphasis

in original).  Among those factors cited by the Second Circuit are:

> [T]he complexity and difficulty of the case, the available expertise and capacity of
> the client's other counsel (if any), the resources required to prosecute the case
> effectively (taking account of the resources being marshaled on the other side but
> not endorsing scorched earth tactics), the timing demands of the case, whether the
> attorney had an interest (independent of that of his client) in achieving the ends of
> the litigation or initiated the representation himself, whether the attorney was
> initially acting *pro bono* (such that a client might be aware that the attorney
> expected low or non-existent remuneration), and other returns (such as reputation,
> etc.) the attorney expected from the representation.

*Arbor Hill*, 522 F.3d at 184.

The Second Circuit further identified the frequently cited "*Johnson* factors" as relevant.

*Id.* at 117-18 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),

*abrogated on other grounds, by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989)).  These

include the following 12 case-specific factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions;
> (3) the level of skill required to perform the legal service properly; (4) the
> preclusion of employment by the attorney due to acceptance of the case; (5) the
> attorney's customary hourly rate; (6) whether the fee is fixed or contingent;
> (7) the time limitations imposed by the client or the circumstances; (8) the amount
> involved in the case and the results obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12) awards in similar
> cases.

*Arbor Hill*, 522 F.3d at 187, n.3 (citing *Johnson*, 488 F.2d at 717-19).  Applying the *Arbor Hill*

standard in this case, the Court should grant the attorneys' fees requested by Plaintiff's Counsel.

### A.  A "REASONABLE PAYING CLIENT" WOULD PAY THE ATTORNEYS' FEES REQUESTED BY PLAINTIFF'S COUNSEL IN THIS CASE

In light of the substantial time and resources expended by Plaintiff's Counsel in this case,

it is clear that Plaintiff benefited greatly from having skilled counsel with significant litigation

experience and expertise in labor law prosecuting Plaintiff's claims.  Because Plaintiff's Counsel

litigated this case on a contingency basis, without any guarantee of recovery, the nearly 700

hours of attorney time expended on this case were hours that the firm's attorneys necessarily

were unavailable to work on other, billable matters for which TWG would have been guaranteed

to receive payment of its fees.

A reasonable paying client in Plaintiff's shoes, therefore, would certainly pay the fees

requested by Plaintiff's Counsel in this case (assuming the financial wherewithal to do so). [10]   *Cf.*

*Lochren v. County of Suffolk*, 344 Fed. Appx. 706, 709 (2d Cir. 2009) ("Current rates, rather than

historical rates, should be applied in order to compensate for the delay in payment."). Moreover,

based on the factors cited in *Arbor Hill* and other factors considered within the Second Circuit,

the attorneys' fees requested by Plaintiff's Counsel are reasonable and supported by the case law.

Because the requested hourly rates are what a reasonable client would (and, in fact, does) pay

Plaintiff's Counsel when working on a billable hourly basis.

### 1.    Customary Hourly Rates

By emphasizing the "reasonable paying client" in *Arbor Hill*, the Second Circuit elevated

the importance of counsel's customary hourly rate, as compared to the now abandoned lodestar

fee calculation, in determining the appropriate billing rate for a fee award. *See Arbor Hill*, 522

F.3d at 184. Indeed, the Second Circuit explicitly criticized certain trends in the case law that

were "untethered" from the free market and emphasized that it is market rates that a reasonable

fee is meant to approximate. *Id.* The customary hourly rate is a well-recognized basis for

determining market rates and was specifically embraced as a relevant consideration in *Arbor*

---

[10]       While Defendant argues in its August 25, 2010 correspondence that "[i]t is ludicrous to suggest . . . that a
reasonable paying client would willingly pay over $560,000 in fees and expenses to recover a settlement amount of
only $10,500" (*see* Def. August 25, 2010 Correspondence, attached as Exhibit I to the Wigdor Decl.), as explained
at section I.C *infra*, this is exactly why Congress enacted the attorneys' fees provision of the FLSA.  Additionally,
Defendant's position neglects the fact that Defendant has no doubt paid its counsel hundreds of thousands, if not
millions, of dollars to defend this matter only to be in substantially the same position as it was at the outset of this
litigation.

*Hill*. *Id.* at 186-87, n.3 (citing *Johnson*, 488 F.2d at 717-19); *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) ("The first such factor is the range of rates that plaintiff's counsel actually charge their clients.  This is obviously strong evidence of what the market will bear."); *Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("The actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded."); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150-51 (7th Cir. 1992) ("[T]he best measure of the cost of an attorney's time is what that attorney could earn from paying clients. . . .  A judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community."); *Marchisotto v. City of New York*, No. 05 Civ. 2699 (RLE), 2009 U.S. Dist. LEXIS 64662, at *17-19 (S.D.N.Y. July 27, 2009) (awarding attorneys' fees in amount of customary hourly rates); *Arnone v. CA, Inc.*, No. 08 Civ. 4458 (SAS), 2009 U.S. Dist. LEXIS 17080, at *10-11 (S.D.N.Y. Mar. 6, 2009) (same).

Calculating this rate for a hybrid FLSA collective action and NYLL class action such as this, however, is more difficult, as the majority of these cases are handled on a contingency basis.  As such, the underlying "hourly rate" for contingency matters varies widely, depending upon the length of time a case lasts, the amount of work expended and the ultimate result achieved.  Given these varying components, courts have recognized the need to prevent contingency arrangements from unfairly affecting the ultimate fee award, including avoidance of either upward or downward effects.[11]

---

[11]     *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (contingency factor cannot lead to upward adjustment of lodestar); *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (contingent fee arrangement does not impose automatic ceiling on award of attorneys' fees; to hold otherwise would be inconsistent with statute, its policy and purpose).

For these reasons, for the calculation of the proposed fee award in this case, Plaintiff's Counsel proposes billing rates at the same level as the customary rates actually paid by TWG clients who are billed on an hourly basis. *See Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010) ("[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.") (emphasis in original). TWG represents numerous clients in this District who pay hourly billable rates at the same level as those requested here. (*See* Wigdor Decl. ¶ 9). Thus, the proposed hourly rates are consistent with those that reasonable paying clients would pay Plaintiff's Counsel.

### 2. Expertise Of Plaintiff's Counsel And Skill Required To Prosecute The Case

In addition to the customary hourly rates established above, another major factor in support of the requested fee award is the "experience, reputation, and ability of the attorneys" working on the case. *See Arbor Hill,* 522 F.3d at 186-87, n.3 (citing *Johnson,* 488 F.2d at 717-19). As outlined in the Wigdor Declaration, Plaintiff's Counsel has significant experience in labor and employment matters and Mr. Wigdor has been recognized as one of the nation's leading labor and employment lawyers. (*See* Wigdor Decl., ¶ 40). Plaintiff's Counsel also has an exceptional record of success in the courtroom. (*Id.* at ¶¶ 35-36). By way of example only, Mr. Wigdor obtained a $7.5 million verdict in a disability discrimination case against Wal-Mart in the Eastern District of New York, a $7.5 million verdict in a sexual harassment/retaliation case in the Southern District and a $2.25 million dollar verdict in a violation of due process claim in the Eastern District, as well as several other victories for his clients in other employment cases, both in court and in arbitration. (*See* Wigdor Decl., ¶ 35).

As further demonstrated in the Wigdor Declaration, all of the lawyers and paralegals who worked on Plaintiff's litigation are highly capable and skilled professionals who easily command -- and receive -- the requested hourly rates in the legal market. (*See id.* ¶¶ 42-53). The skill and abilities of Plaintiff's trial counsel, as well as the other attorneys and staff at TWG, were a crucial and necessary factor in the success achieved on behalf of Plaintiff Temple in this matter.

### 3. Time, Labor And Resources Required To Prosecute The Case

As reflected in the 34 pages of contemporaneous time and billing records annexed to the Wigdor Declaration as Exhibit D, and as discussed at section I.D *infra*, the successful prosecution of Plaintiff's claim necessarily demanded an incredible commitment of attorney and paralegal hours, which was unnecessarily increased by Defendant's aggressive litigation strategy. (*See* Wigdor Decl., Ex.D.) Additionally, discovery into Plaintiff Cohen's individual claims (which shared a "common core of facts" and were based on a "related legal theory) required substantial time and expense on the part of Plaintiff's Counsel as Defendant produced more than 371,000 pages of e-mail communications and over 4,500 pages of other documents relevant to this matter, as well as depositions of Plaintiff Cohen's supervisor and a Rule 30(b)(6) witness identified by Defendant.

### 4. The Novelty And Difficulty Of The Issues

The Court should also consider the novelty and difficulty of the issues that Plaintiff's Counsel has had to litigate as a precursor to obtaining a successful verdict on behalf of Plaintiff Temple. *See, e.g., Cruz v. Henry Modell & Co.*, No. 04 Civ. 1450 (AKT), 2008 U.S. Dist. LEXIS 25339, at *30-31 (E.D.N.Y. Mar. 31, 2008) (awarding higher attorneys' fees based on complexity of issues in case). Here, based upon the above summary of only some of the issues litigated in this case, there is no question that this case posed numerous legal and factual

difficulties in litigating Plaintiff's claim.  Defendant's position that Plaintiff and the other

similarly-situated Research Associates were exempt from the overtime requirements of the

FLSA and NYLL under the "administrative" exemption separates this case from the typical

FLSA case, as this is a particularly complex issue that has been the subject of a number of recent

Second Circuit decisions, which have attempted to outline the contours of the administrative

exemption.  *See, e.g., In re Novartis Wage and Hour Litigation*, No. 09 Civ. 0437, 2010 U.S.

App. LEXIS 13708, (2d Cir. July 6, 2010); *Reisick v. Universal Communs. of Miami, Inc.*, 591

F.3d 101 (2d Cir. 2010); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009).

### 5.   The Results Obtained

There is no question that Plaintiff achieved a favorable result in this matter.  The fact that

this favorable outcome was the result of a settlement as opposed to through litigation does not

affect Plaintiff's status as a prevailing party entitled to an award of attorneys' fees pursuant to the

FLSA.  *See Khalil*, 657 F. Supp. 2d at 474 ("the fact that plaintiff prevailed through a settlement

rather than litigation does not weaken plaintiff's claim to fees") (citing *Maher v. Gagne*, 448

U.S. 122, 129 (1980).  Thus, there can be no dispute that Plaintiff's Counsel obtained a

successful result for Plaintiff in this matter.

### 6.   Prevailing Rates In The Southern District Of New York

The hourly rates that Plaintiff seeks to recover are reasonable compared to those charged

by lawyers of like skill, experience and reputation practicing in the Southern District of New

York.  *See, e.g., In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (CM),

2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Nov. 9, 2009) (accepting hourly rates ranging from

$90 to $250 for paralegals, from $175 to $550 for associates and other non-partner level

attorneys and from $300 to $850 for partners, as within range of those commanded in the

Southern District); *In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (CM), 2010 U.S. Dist. LEXIS 8325 (S.D.N.Y. Jan. 29, 2010) (awarding fees equal to 33.3% of settlement fund, where percentage award reflected billing rates from $125 for administrative personnel to $775 for senior lawyers); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (awarding prevailing attorneys billing rates of $585 to $790 for partners and $270 to $500 for associates).

Moreover, Plaintiff's Counsel's proposed billing rates are consistent with the market, particularly when prior awards are adjusted to reflect the overall increases in attorneys' hourly rates over time. *See, e.g.*, *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981, at *13 (S.D.N.Y. Sept. 29, 2009) ("A review of precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time.") (citations omitted); *Rozell*, 576 F. Supp. 2d at 546 (S.D.N.Y. 2008) (two years ago, awarding partner rates of $600 per hour for her experience in employment law); *Silberblatt v. Morgan Stanley*, No. 05 Civ. 7569 (PKC), 2007 U.S. Dist. LEXIS 85895, at *20-22 (S.D.N.Y. Nov. 19, 2007) (three years ago, approving reasonable hourly rate of $675 per hour for partners at an eight-attorney boutique firm, and noting court's history of approving fees in the $400-$555 per hour range); *Skold v. Am. Int'l Group*, No. 96 Civ. 7137 (HB), 1999 U.S. Dist. LEXIS 9209, at *21, 23 (S.D.N.Y. June 18, 1999), *aff'd*, 205 F.3d 1324 (2d Cir. 2000) (10 years ago, awarding $400 for partner overseeing employment discrimination litigation); *Bonner v. Guccione*, No. 94 Civ. 7735 (DLC), 1997 U.S. Dist. LEXIS 11382, at *23 (S.D.N.Y. Aug. 6, 1997), *vacated on other grounds*, 178 F.3d 581 (2d Cir. 1999) (13 years ago, noting partner rate of $400-$425 per hour in a sexual harassment and

discrimination case); *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 421 (S.D.N.Y. 1999) (11 years ago, awarding $425 for partner on civil rights case).

Finally, Plaintiff's Counsel has a nationally recognized employment litigation practice and reputation meriting hourly rates commensurate with those of employment law firms with established defense practices. *See Kuper v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 1190 (JSG)(MHD), 2003 WL 23350111, at *10 (S.D.N.Y. Dec 18, 2003) (seven years ago, noting that "hourly rates in excess of $400.00 are not limited to big firms"). This is so because "[i]t would be incongruous to limit Plaintiff's Counsel in these cases to an hourly rate of $200 or less when Defendant's counsel, in defending the same cases, are commanding rates of up to $400 an hour (or more) for partners." *Marfia v. T.C. Ziraat Bankasi*, 903 F. Supp. 463, 476 (S.D.N.Y. 1995), *rev'd on other grounds*, 100 F.3d 243 (2d Cir. 1996).

### 7.    The Preclusion Of Other Employment By Acceptance Of This Case

As *Arbor Hill* recognized, a time-consuming, extensively litigated matter not only draws significant resources from a firm, but can also deprive counsel of other income-producing opportunities. *See Arbor Hill*, 522 F.3d at 182. In the instant case, as the accompanying billing records demonstrate, TWG has spent nearly 700 attorney hours litigating the claims and defenses asserted in this lawsuit. This is obviously a substantial amount of time that could have otherwise been devoted to serving other, hourly paying clients.[12] Given the magnitude of the time and effort expended on this case, it is evident that TWG's representation of Plaintiff warrants a substantial fee award, best approximated by the rates requested by Plaintiff here. Indeed, this representation unquestionably precluded TWG from other employment, including hourly billable

---

[12]    As noted as section II.C *supra*, it is this cost-benefit analysis which would lead an attorney to otherwise decline to represent a plaintiff in an wage claim that the fee shifting provision of the FLSA is meant to address. *See, e.g., Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) (explaining that "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation").

matters with no risk of non-recovery, which is another compelling factor in support of the fees requested.

### 8.    Anticipated Returns Of This Representation

As previously noted, Plaintiff's Counsel accepted this representation on a contingency fee basis and thereby assumed the risk that the prosecution of this action would yield no return at all. As noted in the Wigdor Declaration, the lawyers at TWG possessed substantial salient experience in the field of wage and hour law prior to this lawsuit.  As such, the non-monetary remuneration that TWG, and its attorneys, has obtained by virtue of this lawsuit is *de minimis*. Rather, the only anticipated return from this representation has been the possibility of collecting a contingency fee and in making the instant fee application.  As Plaintiff's Counsel did not seek out this representation or expect to obtain any return from this representation from other sources, a paying client seeking to retain TWG in this matter would have been charged fees in excess of the billable rates requested herein.

## III.    THE TOTAL HOURS REQUESTED ARE REASONABLE AND DOCUMENTED WITH SPECIFICITY

### A.    CONTEMPORANEOUS DOCUMENTATION

To demonstrate its entitlement to fees, a party must submit "contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed."  *Morin v. Modern Cont'l Constr. Co.*, No. 07 Civ. 4815 (JFB)(WDW), 2009 U.S. Dist. LEXIS 72525, at *8 (E.D.N.Y. July 1, 2009) (citing *Cruz v. Local Union NO. 3 of the IBEW*, 34 F.3d 1148, 1160-61 (2d Cir. 1994)). Courts have consistently acknowledged, however, that there is no requirement that the party seeking attorneys' fees present extensive documentation "record[ing] in great detail how each minute of his time was expended."  *Putnam Leasing Co. v. Fields*, No. 05 Civ. 141 (RML), 2007

U.S. Dist. LEXIS 58794, at *12 (E.D.N.Y. June 27, 2007). Rather, the time records provided by the prevailing party need only provide sufficient detail to permit the court to accurately determine the reasonableness of the attorneys' fee application. *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548 (GBD)(AJP), 2008 U.S. Dist. LEXIS 82085, at *19-20 (S.D.N.Y. Oct. 17, 2008).

In the instant case, Plaintiff has furnished the Court with the detailed computerized time records contemporaneously recorded by the attorneys and paralegals who have provided legal services in connection with this litigation. (*See* Wigdor Decl., Ex. D). Accordingly, Plaintiff has satisfied the requirements for documenting the reasonable hours expended on this litigation. *See, e.g., Auscape v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441 (LAK)(HBP), 2003 U.S. Dist. LEXIS 13846, at *11 (S.D.N.Y. Aug. 8, 2003) ("[Plaintiff] has submitted a printout from what appears to be its counsels' billing software which contains all the required information. Such a submission clearly meets the evidentiary threshold for the recovery of attorneys' fees."); *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records . . . suffice to permit recovery of attorneys' fees").

## B. THE NUMBER OF HOURS ARE REASONABLE

To determine the number of hours that are properly compensable, the Court should initially consider the amount of time reasonably spent on each category of tasks, as documented by the contemporaneous time records of Plaintiff's Counsel. *See Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). While Plaintiff Temple did not opt into this case until after the Complaint was filed and the collective action was conditionally certified, he would not have been successful in obtaining

settlement without the many hours invested by Plaintiff's Counsel in filing the Complaint, opposing Defendant's motion to dismiss and/or strike Plaintiff Cohen's Complaint, conducting discovery in Plaintiff Cohen's claims and petitioning for class certification.  Therefore, it would not be unfeasible to separate out the time undertaken by counsel purely on Plaintiff's case.  *See Imbeault*, 2009 U.S. Dist. LEXIS 71562 at *18-19 ("because the reasonably-pursued class- and collective- action claims were substantially related to the claims on which [plaintiff] prevailed, the time spent in pursuit of certification will be included in the fee award.").  Furthermore, as noted in section II.D above, given the substantial resources required to prosecute this case in response to Defendant's sustained and aggressive defense of these claims, the total hours billed are reasonable.

## IV.      PLAINTIFF IS ENTITLED TO COSTS

In addition to attorneys' fees, "the FLSA also provides for a defendant's payment of the costs of the action."  *Imbeault*, 2009 U.S. Dist. LEXIS 71562 at *31 (citing 29 U.S.C. § 216(b)).  These costs include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *Id.* at *31-32 (citing *LeBlanc*, 143 F.3d at 763; *Khalil*, 657 F. Supp. 2d at 478.  The costs requested herein represent those out of pocket costs that TWG ordinarily charges to its clients and amount to $19,393.32.  (*See* Wigdor Decl., ¶ 8; Ex. E).  Thus, Plaintiff's request that Defendant be ordered to pay Plaintiff's costs in pursuing this action.  *See, e.g.*, *LeBlanc-Sternberg*, 143 F.3d at 763 (reversing district court order denying plaintiff's costs for "duplicating, postage, telephone, computerized legal research and other office expenses"); *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988"); *Morgenstern v. County of Nassau*, No. 04-58 (ARL), 2009 U.S. Dist. LEXIS 116602, at *35

(E.D.N.Y. Dec. 15, 2009) ("expenses related to travel, transportation and meals are now routinely recoverable as costs").

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and enter an Order against Defendant: (1) awarding Plaintiff's attorneys' fees in the amount of $401,870.00; (2) awarding costs in the amount of $19,393.32; and (3) granting such other and further relief as the Court deems proper.

Dated: September 2, 2010
      New York, New York

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By:    Douglas H. Wigdor
       Gregory N. Filosa

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845

*Counsel for Plaintiffs*