**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JEFFREY COHEN, on behalf of himself and on behalf of all similarly situated employees, | |
| Plaintiff, | Civ. No. 09-CV-04352 (PKC) |
| v. | **ORAL ARGUMENT REQUESTED** |
| GERSON LEHRMAN GROUP, INC., | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO OPT-IN PLAINTIFF
TEMPLE'S SECOND MOTION FOR ATTORNEYS' FEES AND COSTS**

MORGAN, LEWIS & BOCKIUS LLP
Andrew J. Schaffran (AS-1236)
Leni D. Battaglia (LB-4704)
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma (MP-5573)
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963-5001 (fax)

Counsel for Defendant
    Gerson Lehrman Group, Inc.

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................... 1

II.   ARGUMENT ................................................................................................... 3

    A.    Temple Ignores The Court's August 2 Judgment and August 24 Order By Requesting Fees and Costs For Work Unrelated To His Individual Claim .................... 3

        1.    Virtually All of the Fees and Costs Sought Are For Work That Was Limited to Plaintiff Cohen's Individual Claims ..................................... 4

        2.    The Motion Still Seeks Fees and Costs For Work That Temple Concedes Should Have Been Excluded From the Motion Because It Admittedly Related Only To Plaintiff Cohen .......................................... 6

        3.    Temple Cannot Recover Fees Associated With Plaintiff Cohen's Claims By Asserting That He Is "Similarly Situated" to Plaintiff Cohen ....................... 7

    B.    The Motion Seeks Fees and Costs That Are Unreasonable ........................................... 10

        1.    Applicable Legal Standard ..................................................................... 10

        2.    GLG's Litigation Strategies Did Not Unnecessarily Increase The Fees In This Action, As The Motion Suggests................................................. 11

        3.    Temple's Requested Fee Is Not Reasonable In Light of the Results Obtained............................................................................................... 14

        4.    The Hourly Rates Quoted By Plaintiff's Counsel as "Customary Rates" Are Not Reliable ................................................................................... 16

        5.    The Hourly Rates Requested Are Not the "Prevailing Rates" of Firms of Similar Size in Similar Actions in This Court ..................................... 18

        6.    "Preclusion of Other Employment" And "Anticipated Returns Of The Litigation" Do Not Support Temple's Demands ................................. 20

        7.    Temple Could Have Submitted a More Reasonable Application For His Pro Rata (1/49th) Share Of Fees For Work Purportedly Done On Behalf of All 49 Members of the Putative Collective Action, But He Chose Not To Do So ........................................................................................... 21

    C.    Nearly All Of The Costs Sought By The Motion Are Improper .................................. 22

III.  CONCLUSION................................................................................................. 23

# TABLE OF AUTHORITIES

**Page**

Arbor Hill Concerned Citizens Neighborhood Associate v.
County of Albany, 522 F.3d 182 (2d Cir. 2008) ..........................................................................18

Ashkinazi v. Sapir,
No. 02 Civ. 2 (RCC)(MHO), 2005 WL 1123732, at *3 (S.D.N.Y. May 10, 2005) ......................18

Bailey v. County of Georgetown,
94 F.3d 152 (4th Cir. 1996) ..........................................................................................................14

Banyai v. Mazur,
No. 00cv9806, 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007) ....................................10

Blackmon v. Brookshire Grocery Co.,
835 F.2d 1135 (5th Cir. 1988) ..........................................................................................13, 19, 20

Brady v. Wal-Mart,
455 F. Supp. 2d 157 (E.D.N.Y. 2006) .....................................................................................19, 20

Cano v. Four M Food Corp.,
No. 08-CV-3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) .....................................................8

Cash v. Conn Appliances, Inc.,
2 F. Supp. 2d 884 (E.D. Tex. 1997).............................................................................................14

Chambless v. Masters, Mates & Pilots Pension Plan,
885 F.2d 1053 (2d Cir. 1989) ........................................................................................................16

Clements v. Serco, Inc.,
530 F.3d 1224 (10th Cir. 2008) ...................................................................................................13

Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.,
246 F.3d 142 (2d Cir. 2001) ..........................................................................................................17

Donovan v. Maxwell Products, Inc.,
No. 82-901-Civ, 1983 WL 2055 (M.D. Fla. July 6, 1983)............................................................14

Dufrene v. Browning-Ferris, Inc.,
994 F. Supp. 748 (E.D. La. 1998),
aff'd, 207 F.3d 264 (5th Cir.), cert. denied, 531 U.S. 825 (2000)................................................14

Green v. City of New York,
No. CV 05-429, 2009 WL 3088419 (E.D.N.Y. Feb. 13, 2009)....................................................10

## TABLE OF AUTHORITIES
(continued)

**Page**

Griffin v. Wake County,
142 F.3d 712 (4th Cir. 1998) ....................................................................................13

Imbeault v. Rick's Cabaret Int'l, Inc.,
No. 08 Civ. 5458 (GEL), 2009 U.S. Dist. LEXIS 71562
(S.D.N.Y. Aug. 13, 2009)..........................................................................................9

Kahlil v. Original Old Homestead Restaurant, Inc.,
657 F. Supp. 2d 470 (S.D.N.Y. 2009) ..........................................................15, 18, 19

Lavin-McEleney v. Marist College,
No. 96CV4081, 1999 WL 33500070 (S.D.N.Y. Sept. 28, 1999) .................................17

Marisol A. ex rel. Forbes v. Giuliani,
111 F. Supp. 2d 381 (S.D.N.Y. 2000) ...............................................................18, 19

Martin v. Tango's Restaurant, Inc.,
969 F.2d 1319 (1st Cir. 1992)..................................................................................14

Matthews v. City of New York,
CV- 01-2739 (CPS), 2003 U.S. Dist. LEXIS 16334 (E.D.N.Y. Aug. 22, 2003)...........................21

Morgenstern v. County of Nassau,
No. CV 04-58 (ARL), 2009 WL 5103158 (E.D.N.Y. Dec. 15, 2009) ...................................18, 20

Moses v. NYC Transit Authority,
No. 01-4280, 2003 WL 22939122 (S.D.N.Y. Dec. 12, 2003)......................................19

Peres v. Radioshack Corp.,
No. 02 C 7884, 2005 U.S. Dist. LEXIS 33420 (N.D. Ill. Dec. 14, 2005) .....................14

Powell v. Carey International, Inc.,
547 F. Supp. 2d 1281 (S.D. Fla. 2008) ....................................................................15

Reiter v. MTA of New York,
No. 01 Civ. 2762, 2007 WL 2775144 (S.D.N.Y. Sept. 25, 2007)................................19

Rozell v. Ross-Holst,
576 F. Supp. 2d 527 (S.D.N.Y. 2008) .................................................................17, 18

Saunders v. The Salvation Army,
No. 06 Civ. 2980, 2007 WL 927529, at 3 (S.D.N.Y Mar. 27, 2007))..........................19

**TABLE OF AUTHORITIES**
(continued)

**Page**

Torres v. Bacardi Global Brands Promotions, Inc.,
482 F. Supp. 2d 1379 (S.D. Fla. 2007) ........................................................................18

Torres v. City of New York,
No. 07 Civ. 3473, 2008 WL 419306 (S.D.N.Y. Feb. 14, 2008) ..................................19

Tuck v. Methanex Management, Inc.,
No. 3-04-CV-1720N, 2006 U.S. Dist. LEXIS 13751 (N.D. Tex. Mar. 29, 2006) ........14

Tumulty v. FederalEx Ground Package System Inc.,
No. C-04-1425P, 2005 U.S. Dist. LEXIS 25997 (W.D. Wash. Aug. 16, 2005) ...........14

Urnikis-Negro v. American Family Property Services,
No. 08-3117, ---F.3d---, 2010 WL 3024880 (7th Cir. Aug 4, 2010) ............................13

Valerio v. Putnam Associates, Inc.,
173 F.3d 35 (1st Cir. 1999) ...........................................................................................13

Wise v. Kelly,
620 F. Supp. 2d 435 (S.D.N.Y. 2008) ...........................................................................17

Wong v. Hunda Glass Corp.,
No. 09 Civ. 4402(RLE), 2010 WL 3452417 (S.D.N.Y. Sept. 1, 2010)..............15, 16, 18

## I.   <u>PRELIMINARY STATEMENT</u>

After receiving the Court's August 24, 2010 Order (the "August 24 Order")[1] concerning his initial motion for Attorney's Fees and Costs, Opt-in Plaintiff Temple ("Temple") withdrew his motion and filed a new/second Motion for Attorneys' Fees and Costs (the "Motion").  However, the Motion is largely unchanged, and, like the first Motion, is without basis in fact or in law and clearly unreasonable and vexatious.[2]  Tellingly, Temple's "revised" Motion largely disregards the guidance provided by the Court in its August 24 Order, which correctly observed that the initial motion "does not provide a cogent explanation of why moving plaintiffs . . . are entitled to any attorneys' fees whatsoever," let alone an "adequate explanation of how [the fees and costs requested] constitute[] a reasonable award to Mr. Temple in relation to a money judgment of $10,500, with no injunctive relief or ancillary relief."

Temple's Motion seeks, without sufficient explanation, nearly **<u>$400,000</u>** in fees and **<u>$20,000</u>** in costs based on a recovery of only **<u>$10,500</u>** shortly after he opted into this case and before the parties had conducted any depositions, produced any documents, or engaged in any motion practice as to his individual claim.  Like his initial motion, this Motion disregards the content of the Judgment entered by the Court on August 2, 2010 (the "August 2 Judgment"),[3] and fails to adequately account for Temple's relative lack of success in this matter, as he recovered no injunctive relief and only 10% of the monetary damages that he sought.  Also like the initial motion, the fees and costs included in this Motion are not limited to fees and costs for work relating to Opt-in Plaintiff Temple's individual claim.  To the contrary, the vast majority of these fees and costs are for work relating to Plaintiff Cohen's individual claims.  The requested fees and costs also improperly include (1) fees and costs for work on

---

[1] A copy of the Court's August 24, 2010 Order (the "August 24 Order") is attached as Exhibit ("Ex.") A to the Declaration of Michael J. Puma ("Puma Decl.") filed herewith.

[2] Temple has since reduced his request for fees, as his recent letter to the Court purports to amend the Motion to abandon certain amounts he concedes should not have been requested.  This third request reduced the amount requested from $401,870 to $398,358.  See 9/10/10 Letter from D. Wigdor to Judge Castel (Puma Decl., Ex. B).

[3] A copy of the August 2 Judgment is attached as Ex. C to the Puma Decl.  Temple's original request for fees and costs disingenuously ignored this critical document, likely because it made perfectly clear that the scope of his request was (and

motions where neither Temple nor Plaintiff Cohen was a prevailing party; and (2) fees and costs that squarely fall within the categories of fees and costs that Temple falsely claims to have excluded from his Motion (e.g., fees and costs for discovery related to other Opt-In Plaintiffs, for litigation of the counterclaims against Plaintiff Cohen, and for work related to Plaintiff Cohen's New York Labor Law ("NYLL") class action claim). Finally, the fees requested by the Motion are based on unreasonable hourly rates that exceed the prevailing rates in this Court for attorneys of like experience, skill and qualifications. Thus, like the initial motion, the revised Motion (a) appears to have been presented for an improper purpose, including to harass and needlessly increase the cost of litigation; (b) contains factual contentions, including that of reasonableness, which do not have evidentiary support; and (c) asserts legal positions which are frivolous.[4]

For these reasons, and as more fully explained below, Defendant Gerson Lehrman Group ("GLG") respectfully submits that Temple's request for fees and costs should be denied. Temple had two opportunities – and even a third in light of his letter to the Court amending the Motion – to submit a reasonable application for fees and costs, but he has failed to do so. GLG would not have opposed a reasonably tailored request for fees and costs,[5] but it is not incumbent upon GLG or the Court to parse Temple's counsel's records for him to identify appropriate fees and costs. As Temple and his counsel

---

remains) improper.

[4] As an example of how this Motion has needlessly increased the cost of litigation, Plaintiffs' counsel effectively prevented GLG from settling the claims of one of the two remaining opt-in plaintiffs by insisting that it be paid for its fees and costs for work on Plaintiff Cohen's individual claims as part of any settlement of the opt-in plaintiff's individual claim. See Declaration of Andrew J. Schaffran ("Schaffran Decl."), filed herewith, ¶ 1. TWG refused to even discuss a settlement of its claim for fees and costs relating to Opt-In Plaintiff Baldwin on a basis that would exclude fees and costs for work on Plaintiff Cohen's individual claims (i.e., on a basis that would be limited to fees and costs for work done on her individual claim plus a pro rata (or 1/49th) share of the fees and costs for work done on behalf of all members of the putative collective action), which left GLG in the position of knowing that it would have to defend a motion for excessive fees and costs similar to the instant Motion if it were to settle Opt-In Plaintiff Ashleigh Baldwin's individual claim. See id. ¶ 7.

[5] GLG would not have opposed an appropriately and reasonably tailored request for fees and costs by Opt-In Plaintiff Temple. GLG attempted to resolve this issue by offering to negotiate an appropriate amount of reasonable attorneys' fees and costs properly recoverable by Opt-In Plaintiff Temple based upon the Judgment entered as to him. In response, Plaintiffs' counsel stated: "[W]e are willing to reduce the amount of fees that we are seeking by $50,000 (to reflect the portion of the fees related to Plaintiff's opposition to the counterclaims) to $515,000." At no time did Plaintiffs' counsel revise or reduce this demand. Schaffran Decl. ¶ 6 & Ex. B.

clearly failed or refuse to do this themselves, the Motion should be denied in its entirety.

## II.   <u>ARGUMENT</u>

### A.   <u>Temple Ignores The Court's August 2 Judgment and August 24 Order By Requesting Fees and Costs For Work Unrelated To His Individual Claim.</u>

Just as he did in his first motion, which was withdrawn, Temple's revised Motion seeks an award of fees and costs for work that was unrelated to his individual claim.  Temple did not join this action until February 26, 2010, almost a year after it was filed, and there has been no motion practice since that date and virtually no discovery concerning his individual claim.  Nevertheless, the Motion seeks an award of hundreds of thousands of dollars in fees and costs incurred before Temple joined this action, and virtually all of the fees and costs sought are for work unrelated to his individual claim.  Thus, the Motion ignores the Court's August 2 Judgment and August 24 Order and should be denied.

The August 2 Judgment, which is the basis for the Motion, expressly states that the Court's award of "reasonable attorneys fees and other costs" as part of the Judgment "relates <u>only</u> to Mr. Temple."  Puma Decl., Ex. C (emphasis in original).  Similarly, the Offer of Judgment that was accepted by Temple (and also forms the basis for the Motion) expressly states that the offer was limited, *inter alia*, to "reasonable attorney's fees and other costs incurred up to the date this offer of judgment is served that might be recoverable by [Temple] against Defendant."  <u>See</u> Docket No. 88 (Puma Decl., Ex. C) at 4.  Moreover the Court's August 24 Order correctly observed that the initial motion for fees failed to provide "a cogent explanation of why moving plaintiffs . . . are entitled to any attorneys' fees whatsoever," let alone an "adequate explanation of how [the fees and costs requested] constitute[] a reasonable award to Mr. Temple in relation to a money judgment of $10,500, with no injunctive relief or ancillary relief."  <u>See</u> Docket No. 93 (Puma Decl., Ex. A).

Accordingly, there is no question but that the attorney's fees and costs properly recoverable are

limited to those incurred in prosecuting Temple's individual claim.  However, the vast majority of the fees and costs sought by the Motion relate to discovery and other work related to Plaintiff Cohen's individual claims rather than Temple's individual claim.  Accordingly, the Motion should be denied.

## 1. **Virtually All of the Fees and Costs Sought Are For Work That Was Limited to Plaintiff Cohen's Individual Claims.**

In the August 2 Judgment (Puma Decl., Ex. C), the Court specifically directed that Temple could only recover fees and costs related to his individual claim.  Nevertheless, and despite the clear guidance provided by the Court in the August 24 Order, the overwhelming majority of the fees sought by the Motion are for work relating to Plaintiff Cohen's claims rather than Temple's individual claim. For example, as detailed in the Chart attached as Ex. O to the Puma Decl., over $250,800.00 of the fees sought are for discovery.[6]  See Docket No. 96 (Ex. D to Declaration of Douglas Wigdor ("Wigdor Decl.")).  However, nearly all discovery for which Temple seeks fees took place *before* he joined the litigation in February 2010.  Id.  Moreover, as Temple admits in his Motion (see Memorandum of Law in support of Temple's Motion ("Pl's Mem.") at 2, 6-7), the Court specifically limited that discovery to Plaintiff Cohen's individual claims by its Order dated August 21, 2009.  (Puma Decl., Ex. D).

Virtually all of the fees for discovery sought by the Motion is for work on discovery relating to Plaintiff Cohen rather than Temple.  See Chart of Non-Exhaustive Examples ("Chart 1") (Puma Decl., Ex. E.)[7]  For instance, Temple seeks $34,551 in fees related to Plaintiff Cohen's responses to discovery demands directed only to him, $34,879 in fees related to Plaintiff Cohen's deposition, and $10,700 in fees related to the deposition of Plaintiff Cohen's supervisor.  See id.  He also seeks $23,350 in fees related to reviewing and producing Plaintiff Cohen's personal e-mails, $11,550 in fees related to

---

[6] GLG prepared this Chart (and the others submitted with the Puma Decl.) as resources for the Court's convenience.  The amounts in the charts are not exact, as many of the fee entries submitted in support of the Motion are vague and/or involved "block billing" (i.e., multiple tasks combined in a single fee entry), and it was Temple's burden – not GLG's – to properly identify the fee entries related to his individual claim.

[7] This Chart identifies examples of fees sought by the Motion that are plainly unrelated to Temple's individual claim, but it is not exhaustive, and virtually all of the other fees sought by the Motion are also unrelated to Temple's own claim.

reviewing Plaintiff Cohen's work e-mails produced by GLG, and $1,225 in fees for subpoenas related only to Plaintiff Cohen.  See id.

Almost all of the other fees sought by Temple also have no connection to his own claim.  See Puma Decl., Ex. E.  For example, Temple seeks over $45,000 in fees for opposing GLG's pre-motion letter concerning its proposed motion for summary judgment (see 12/11/09 Letter from A. Schaffran to Judge Castel, attached as Ex. F to the Puma Decl.) even though the proposed motion was limited to only Plaintiff Cohen's individual claims.[8]  Almost $40,000 of those fees was for letter briefing over the admissibility of evidence of a so-called "reclassification" of certain individuals on December 31, 2008 (see 2/1/10 & 2/4/10 Letters from A. Schaffran to Judge Castel, Puma Decl., Exs. I & J.), but there is no dispute that Temple was not re-classified at that time and, in fact, was not even employed as a Research Associate at the time this occurred in December 2008.  Instead, as conceded by Temple in his Motion, "his employment in the Research Associate position terminated in or around March 2008, when [he] was transferred" to another position.  Pl's Mem. at 9 n.5.  Moreover, neither Plaintiff Cohen nor Temple was a prevailing party on that issue, as the Court has not issued any ruling on the issue.[9] Puma Decl. ¶ 14.

In sum, most of the work for which the Motion now seeks fees and costs pertains only to Plaintiff Cohen's individual claims and, therefore, the Motion should be denied.[10]

---

[8] This amount includes both letter briefing and research as to the proposed motion for summary judgment and the related letter briefing and research as to the impact on such a motion, if any, of GLG's business decision to temporarily pay overtime to certain Research Associates.

[9] The Motion includes time entries for work on "class discovery" as to the NYLL class action claim (Wigdor Decl., Ex. D), even though the Motion acknowledges that Temple released his NYLL claim and abandoned his claim for fees on "Plaintiff Cohen's opposition to Defendant's motion to dismiss and/or strike Plaintiff Cohen's [NYLL] claim."  Pl's Mem. at 2.

[10] Thus, Temple's statement in the Motion that he "has carefully separated out and reduced fees requested herein to exclude those which arguably did not benefit him directly" (Pl's Mem. at 6) is just another example of the Motion making factual contentions that are inaccurate, unreasonable and vexatious.

2. **The Motion Still Seeks Fees and Costs For Work That Temple Concedes Should Have Been Excluded From the Motion Because It Admittedly Related Only To Plaintiff Cohen.**

The Motion does not even exclude all of the fees and costs that it purports to have abandoned.

Temple asserts that he is no longer seeking fees and costs for the following tasks, which he states "did not benefit him directly, and thus, did not contribute to his status as a prevailing party":

- "Plaintiff Jeffrey Cohen's . . . opposition to the counterclaims . . .";

- "Plaintiff Cohen's opposition to Defendant's motion to dismiss and/or strike Plaintiff Cohen's New York Labor Law ("NYLL") claim";

- "Plaintiff Cohen's unsuccessful application to stay the deadline for potential opt-in plaintiffs' consent forms";

- "Discovery regarding the claims of Opt-In Plaintiffs Matthew Ronen . . . and Ashleigh Baldwin";

- "Plaintiff's August 16, 2010 motion for attorneys' fees which has now been withdrawn and replaced with the instance motion, as well as other fees incurred following Defendant's service of the Rule 68 offer";

- "[T]ime entries for deposition subpoenas ultimately quashed by the Court";

- "[S]upplemental document requests that were served, then withdrawn when the Court subsequently limited discovery to Plaintiff Cohen"; and

- Research regarding contact information for other potential opt-ins.

Pl's Mem. at 2; Puma Decl., Ex. E.  However, Temple still included time entries concerning these tasks in his Motion.  See Wigdor Decl., Ex. D; Puma Decl., Ex. E.  Indeed, although Temple conceded this fact and reduced his request for fees in his recent letter to the Court which purports to amend the Motion to abandon certain amounts he concedes should not have been requested, there are many other time entries and costs that he missed even this third time around and continues to include in his Motion even though they are for work for which he has abandoned any claim for fees and costs.  See id.  For example, the Motion also continues to seek fees for work relating to (1) the counterclaims against Plaintiff Cohen; and (2) discovery as to Opt-In Plaintiffs Baldwin and Ronen.  See id.

There are likely more examples of supposedly abandoned fees and costs being included in the Motion, but it is not GLG's or the Court's obligation to endeavor to "fix" the Motion for Temple once again. He has had multiple bites at the apple but simply refuses to appropriately limit his request.

### 3. Temple Cannot Recover Fees Associated With Plaintiff Cohen's Claims By Asserting That He Is "Similarly Situated" to Plaintiff Cohen.

Temple attempts to justify his request for fees relating to Plaintiff Cohen's claims – nearly all of the fees sought by the Motion – by claiming that he benefited from the discovery and other work done in prosecuting Plaintiff Cohen's individual claims. See Pl's Mem. at 6. In doing so, the Motion advances several arguments that are inaccurate, misleading, or without basis in law or fact.

For example, Temple contends that "[his] ultimate entitlement to relief was based on his ability to establish that he was similarly-situated to Plaintiff Cohen" (Pl's Mem. at 7) and that his claims and Plaintiff's Cohen's "involved a common core of facts" (Pl's Mem. at 1, 6-8). However, these contentions are not supported by the record facts. First, there has been no final determination that Temple and Plaintiff Cohen are similarly-situated, as the Court's opinion on conditional certification only provisionally certified a collective action subject to a final determination after discovery. See Docket No. 65 at 15, 22-23 ("After discovery, . . . [t]he court determines on a full record, and under a more stringent standard, whether the additional plaintiffs were, in fact similarly situated"). Second, whether or not Temple was entitled to recover damages in this action did not depend upon a finding that he and Plaintiff Cohen were similarly-situated or that his claims and Plaintiff's Cohen's "involved a common core of facts." Rather, Temple's entitlement to recover damages for his claim turned on whether or not, based on the facts and circumstances of his employment, he was exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"). In that regard, the Court specifically advised the parties, at the conference on February 25, 2010, that it was not inclined to allow a motion for summary judgment directed to only Plaintiff Cohen (in contrast to an omnibus motion addressing all claims of all opt-ins) because the outcome of summary judgment on Plaintiff

Cohen's claims would not dispose of the claims of any Opt-In Plaintiffs.  Puma Decl. ¶ 7.  Indeed, in

an FLSA collective action, each opt-in plaintiff becomes a party to the action and prosecutes his own

individual claim that is resolved independently.  See, e.g., Cano v. Four M Food Corp., No. 08-CV-

3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb. 3, 2009).

There is also no support for the Temple's assertion that "the time that Plaintiff's counsel spent

preparing for and attending conferences relating to Defendant's premature motion for summary

judgment relating to Plaintiff Cohen's individual claims are substantially related to Plaintiff [Temple]'s

claims as it was Defendant's clear intent to attempt to sever Plaintiff Cohen's claims from those of the

potential opt-ins prior to Court-authorized notice being provided" (Pl's Mem. at 8).  As Temple

concedes, GLG's proposed motion was related to "Plaintiff Cohen's individual claims," not Temple's

claims.  Pl's Mem. at 13.[11]  In addition, the Court did not deny this motion; the Court simply decided

that the proposed motion for summary judgment should be deferred until after discovery on the opt-in

plaintiffs' claims.  Thus, neither Plaintiff Cohen nor Temple was a prevailing party on the proposed

summary judgment motion.[12]

Temple's contention that "[his] entitlement to relief was based upon the discovery conducted

into Plaintiff Cohen's individual FLSA claim and, thus, their respective claims are inextricably

intertwined such that the costs and fees attributable to Plaintiff Cohen's individual claims can be

awarded to Plaintiff [Temple] as a prevailing party" (Pl's Mem. at 7) is also inaccurate and without

basis in fact or in law.  The same is true of the assertion that "Plaintiff Cohen's individual FLSA claim

required a significant amount of discovery into the duties and responsibilities of the [RA] position

generally . . . and was relied upon by Plaintiff [Temple] in the prosecution of his claims" (Pl's Mem. at

---

[11] GLG's request to file a motion for summary judgment focused on the facts that related specifically to Plaintiff Cohen (e.g., his admissions concerning his own duties and responsibilities in his deposition and in his graduate school applications and self-appraisal performance reviews), and not facts relating to Temple's individual claim.  See Puma Decl., Ex. F.

[12] Thus, Temple's statement that GLG filed a "premature" motion for summary judgment is inaccurate because no such motion has been filed.  Rather, GLG simply made a request for a pre-motion conference (Puma Decl., Ex. E), which was

7-8).  To the contrary, virtually all work during the period of discovery limited to Plaintiff's Cohen's individual claims was specific only to Plaintiff Cohen, including the depositions of Plaintiff Cohen and his supervisor as to Plaintiff Cohen's own duties, the collection and production of tens of thousands of e-mails and other documents pertaining only to Plaintiff Cohen, and the disputes relating to that Cohen-specific production.  In addition, as GLG has maintained throughout this litigation, the duties performed by Research Associates varied from person to person, so evidence of Plaintiff Cohen's duties would have no bearing on any determination as to Temple's duties.  Moreover, Temple's contention that he relied upon Plaintiff Cohen's discovery "in the prosecution of his claims" is at best inaccurate and misleading, as Temple did nothing to prosecute his claims other than sign and file the standardized consent form and serve his own discovery to which GLG never responded because he first accepted the Offer of Judgment.

Temple does not cite any authority that actually supports his novel proposition that, as an opt-in plaintiff, he is entitled to an award of fees and costs for work relating to the original named plaintiff's individual claims.  To the contrary, the cases relied upon by Temple are inapposite because they involve facts that are plainly different from those here.  For instance, Imbeault v. Rick's Cabaret Int'l, Inc., No. 08 Civ. 5458 (GEL), 2009 U.S. Dist. LEXIS 71562, at *1 (S.D.N.Y. Aug. 13, 2009), is distinguishable because it involved a request by the *original named plaintiff* for fees for work done on both her individual claims and on the class and/or collective action claims for which she purported to act as the class representative.  Here, in contrast, Temple is an opt-in plaintiff who joined the case more than a year after it was filed, was never appointed as or even sought to be appointed as a representative party, and never acted in a representative capacity.  Thus, none of the work on Cohen's individual claims or on the class and/or collective action claims in this case was undertaken at Temple's request or on Temple's behalf.  Moreover, the vast majority of the fees and costs sought here

---

appropriate and consistent the law and the Court's rules.

are for work relating to discovery into Plaintiff Cohen's *individual* claims.

Banyai v. Mazur, No. 00cv9806, 2007 U.S. Dist. LEXIS 25272, at * 4 (S.D.N.Y. Mar. 30, 2007), another case relied on by Temple, is also readily distinguishable. Banyai involved an analysis of how to determine a reasonable attorneys' fees to be paid to a Rule 23 certified class after the class had settled some claims against the settling defendants but had not settled other class claims against the non-settling defendants.[13] See id. In this case, unlike Banyai, there is only one defendant and the claims that were settled by defendant were the individual claims of only one opt-in plaintiff.

Temple clearly has not established that he is entitled to fees for work associated with prosecuting Plaintiff Cohen's individual claims. Thus, the Court should follow its previous guidance in the August 2 Judgment and August 24 Order and reject Temple's overbroad demand for fees/costs.

**B.      The Motion Seeks Fees and Costs That Are Unreasonable.**

**1.      Applicable Legal Standard**

The appropriate standard for a Court to apply when ruling on a motion for an award of attorneys' fees is "a presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 185 (2d Cir. 2008) (citations omitted). This standard considers "what a reasonable, paying client would be willing to pay." Id. Here, then, the question is "what a reasonable, paying client would be willing to pay" for the $10,500 recovered by Temple. The reasonableness of the fee appropriately is judged by both the reasonableness of the hourly rate(s) and the reasonableness of the number of hours billed. See id. Courts also consider the size of the firm when setting a fee award, as smaller firms have lower overhead. See Green v. City of New York, No. CV 05-429, 2009 WL 3088419, at *3 (E.D.N.Y. Feb. 13, 2009) (recognizing that "the size and caliber of a firm may also be considered when determining a reasonable hourly rate, 'primarily due to varying overhead costs.'") (internal citations omitted).

---

[13]   In addition, Temple was not a member of the putative Rule 23 class in this action because he did not have or assert a

## 2. GLG's Litigation Strategies Did Not Unnecessarily Increase The Fees In This Action, As The Motion Suggests.

In support of his grossly inflated fee request, the Motion asserts that Temple incurred substantial fees as compared to his relatively small recovery because GLG's litigation tactics "unnecessarily increased the time and resources that Plaintiff's counsel was required to expend in litigating the Plaintiffs' claims." Pl's Mem. at 12. This statement has no basis in fact, as discussed below, and further demonstrates the unreasonable, vexatious and bad faith nature of the Motion. If any actions "unnecessarily increased the attorney's fees" in this action, they were the actions of Plaintiffs and their counsel, who, inter alia, (1) served subpoenas that were quashed by the Court as "needless and abusive" (Docket No. 63) following a letter motion by GLG; (2) created a dispute about the timing of Plaintiff Cohen's deposition, which resulted in letter briefing (e.g., August 24, 2009 Letter from M. Puma to Judge Castel, Puma Decl., Ex. G), only to then elect to produce Plaintiff Cohen on the date requested by GLG; and (3) filed the initial frivolous, unreasonable and vexatious motion for fees only to withdraw it under threat of sanctions by the Court, and then filed the pending and similarly frivolous, unreasonable and vexatious motion (Docket Nos. 89- 98.)

Turning to the Motion's accusations of frivolous and bad faith litigation tactics by GLG, first, the Motion's assertion that GLG made "frivolous motions"[14] (Pl's Mem. at 11) is itself frivolous and completely unfounded because the Court has not determined that any of GLG's motions was frivolous.

Second, Temple's contention that he was forced to make motions to compel compliance with routine discovery demands is inaccurate and misleading. Temple never filed a motion to compel in this action. (See Puma Decl. ¶ 8) Indeed, he settled his claims even before GLG's responses to his discovery requests were due. (See id. at ¶ 9.) In addition, although both GLG and Plaintiff Cohen

---

state law claim, and he never acted or sought to act in a representative capacity.

[14] The Samborski v. Linear Abatement Corp. decision cited by Temple in his Motion as an example of a case where defendant's litigation tactics required plaintiff to engage in extensive work is not pertinent to this Motion because, as admitted by Temple, that case involved a "largely unsuccessful motion to dismiss" (Pl's Mem. at 12). In this case, Temple

filed motions to compel in this action, none related to Temple, and none resulted in a Court Order compelling either party to comply with its discovery obligations.

Third, the Motion cites five supposed examples of how GLG "unnecessarily increased the time and resources that Plaintiff's Counsel was required to expend in litigating" this action (Pl's Mem. at 12-13), but not one of these examples is even remotely relevant to this Motion because they are unrelated to any work on Temple's individual claim.  Indeed, the unreasonable and vexatious nature of the Motion is illustrated by the fact that the first two examples cited by Temple (GLG's motion to dismiss/strike and GLG's counterclaims against Plaintiff Cohen) could not possibly have any bearing on the Motion since Temple abandoned his request for fees for that work (Pl's Mem. at 1-2).[15] Similarly, as discussed above, GLG's submission of a pre-motion letter regarding a proposed summary judgment motion as to Plaintiff Cohen's individual claims was neither unsuccessful nor frivolous (see supra at p.8), and that work is irrelevant to this Motion because the proposed motion related only to Plaintiff Cohen's individual claims (see supra at p.5).

Fourth, with regard to fees associated with Plaintiff Cohen's unsuccessful efforts to schedule additional depositions, those requested depositions all were part of discovery limited only to Plaintiff Cohen's individual claims and, therefore, are not recoverable by Temple.  See supra at p. 3-5.  As the Court has never ruled on the pending letter briefing as to whether the remaining depositions are appropriate (Puma Decl. ¶ 16 & Ex. K), Temple has no credible basis for asserting that GLG's objections to the depositions were frivolous, or that he was a prevailing party on that issue.

Fifth, the Motion's claim that GLG unnecessarily caused him to incur additional legal fees by giving him "inaccurate and misleading . . . contact information for the potential opt-in plaintiffs" is not

---

disclaims any right to fees incurred in opposing GLG's motion to dismiss the NYLL claims.  Pl's Mem. at 2.

[15] Moreover, Temple's argument that the counterclaims were "frivolous" is itself frivolous in view of this Court's denial of Plaintiff Cohen's motion to dismiss those claims.  See Docket No. 65.

only untrue but also entirely irrelevant to this Motion since Temple opted-in <u>before</u> this work was done.  <u>See</u> <u>supra</u> at p. 4.

Finally, the Motion asserts that GLG's litigation tactics included a refusal to engage in good faith settlement discussions unless Plaintiffs agreed to certain "unreasonable and unsupported" conditions (Pl's Mem. at 11).  This statement is inaccurate, unreasonable and vexatious.  What Plaintiffs' counsel is referring to is GLG's correct observation that any settlement discussions would be futile unless Plaintiffs first agreed that, at least for purposes of settlement, the correct method for calculating GLG's overtime exposure is the fluctuating workweek method, which results in an exposure amount that is less than one-third of the amount Plaintiffs were demanding that GLG agree to pay in settlement of this action.  <u>See</u> Schaffran Decl. ¶ 3.  GLG's insistence that Plaintiffs agree to its position on this threshold issue, at least for purposes of settlement, was necessary in view of the overreaching position taken by Plaintiff Cohen and his attorneys in settlement discussions that they would not agree to settle the case unless GLG agreed to pay an amount that was greater than the maximum amount that Plaintiffs could hope to recover if they were to prevail on their claims.  <u>See</u> <u>id.</u>

GLG's position on the applicability of the fluctuating workweek method for calculating damages in reclassification cases such as this is both reasonable and well supported, and it is Plaintiffs' counsel who is asserting an "unreasonable and unsupported" argument in this Motion by describing GLG's position as "unreasonable and unsupported."  (<u>See</u> Pl's Mem. at 11)  In that regard, five Circuit Courts of Appeal have considered this issue, and all five have agreed with GLG's position and rejected Plaintiffs' position on this issue.  <u>See, e.g.</u>, <u>Urnikis-Negro v. American Family Property Services</u>, No. 08-3117, ---F.3d---, 2010 WL 3024880 *18 (7th Cir. Aug 4, 2010) (affirming the lower court's use of the fluctuating workweek method); <u>Clements v. Serco, Inc.</u>, 530 F.3d 1224, 1230 (10th Cir. 2008); <u>Blackmon v. Brookshire Grocery Co.</u>, 835 F.2d 1135, 1138 (5th Cir. 1988) (employing "fluctuating workweek" method); <u>Valerio v. Putnam Assocs., Inc.</u>, 173 F.3d 35 (1st Cir. 1999) (same); <u>Griffin v.</u>

Wake County, 142 F.3d 712 (4th Cir. 1998) (same).[16]  Plaintiffs' counsel is well aware of these cases.

See Email correspondence from A. Schaffran to D. Wigdor (Schaffran Decl., ¶ 2 & Ex. A).  Thus,

while GLG concedes that there is no Supreme Court or Second Circuit decision on point, Plaintiffs'

counsel's description of GLG's well-supported position as "unreasonable and unsupported" is yet

another example of their repeated conduct in this litigation of:  (a) presenting arguments for an

improper purpose, including to harass and needlessly increase the cost of litigation; (b) making factual

contentions which do not have evidentiary support; and (c) asserting legal positions which are

frivolous, unreasonable and vexatious.  It is ironic that, while Plaintiffs' counsel describes GLG's

position on this issue as "unreasonable and unsupported," the only reason Temple is arguably entitled

to any fee award is because he accepted a settlement offer that was calculated based on a measure of

potential damages using the fluctuating workweek method.  See Schaffran Decl. ¶ 4.

In sum, the assertions in the Motion that GLG forced Temple to incur unnecessary legal fees

are unreasonable, vexatious and made in bad faith.

### 3.    Temple's Requested Fee Is Not Reasonable In Light of the Results Obtained.

The Motion (as amended by Temple's counsel's recent letter) demands nearly $400,000 in fees

and costs, which is almost 40 times the $10,500 amount that Temple accepted in full satisfaction of all

of his claims in the action.  It is also four times the amount of even the alleged maximum $110,000[17] in

damages sought by Temple.[18]  See Supplemental Rule 26(a) Disclosures (Puma Decl., Ex. M.)

---

[16] Many other decisions similarly approve of the fluctuating workweek method for overtime damages calculations in a misclassification case such as this.  See, e.g., Bailey v. County of Georgetown, 94 F.3d 152 (4th Cir. 1996) (same); Martin v. Tango's Rest., Inc., 969 F.2d 1319 (1st Cir. 1992) (same); Dufrene v. Browning-Ferris, Inc., 994 F. Supp. 748 (E.D. La. 1998) (same), aff'd, 207 F.3d 264 (5th Cir.), cert. denied, 531 U.S. 825 (2000); Torres v. Bacardi Global Brands Promotions, Inc., 482 F. Supp. 2d 1379 (S.D. Fla. 2007); Tuck v. Methanex Mgmt., Inc., No. 3-04-CV-1720N, 2006 U.S. Dist. LEXIS 13751 (N.D. Tex. Mar. 29, 2006); Peres v. Radioshack Corp., No. 02 C 7884, 2005 U.S. Dist. LEXIS 33420 (N.D. Ill. Dec. 14, 2005); Tumulty v. FedEx Ground Package Sys. Inc., No. C-04-1425P, 2005 U.S. Dist. LEXIS 25997 (W.D. Wash. Aug. 16, 2005); Cash v. Conn Appliances, Inc., 2 F. Supp. 2d 884 (E.D. Tex. 1997); Donovan v. Maxwell Products, Inc., No. 82-901-Civ, 1983 WL 2055 (M.D. Fla. July 6, 1983).

[17] In reality, Temple's claim for overtime could be worth, accepting all other assumptions by Temple as true, less than one-third of that amount due to the applicability of the fluctuating workweek method for overtime calculation discussed above.

Courts in this District routinely hold, and even the Motion acknowledges (Pl's Mem. at 19), that the relief obtained by a prevailing party is certainly a relevant factor in determining what constitutes a reasonable fee.  See, e.g., Wong v. Hunda Glass Corp., No. 09 Civ. 4402(RLE), 2010 WL 3452417, at *1 (S.D.N.Y. Sept. 1, 2010) (stating that "[t]he most important factor to a determination of what constitutes reasonable attorneys' fees is the degree of success obtained") (internal quotations omitted); Kahlil v. Original Old Homestead Restaurant, Inc., 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) (recognizing that "one of the most important factors a court should consider in awarding fees is the degree of success obtained") (citations omitted).  The district court can determine the "degree of success" by comparing the "quantity and quality of relief obtained" to what the plaintiff sought to achieve.  Id.  Moreover, if a plaintiff has only achieved partial success, it is appropriate to reduce claimed fees.  Wong, 2010 WL 3452417, at *2 (citations omitted).

Here, the result obtained by Temple – a judgment for only 10% of his total claimed damages – is far from a success.  In fact, the result is no more indicative of success than it is of a nuisance-value resolution to avoid the costs of litigation.  Under these circumstances, it is appropriate to reduce whatever amount of fees otherwise would be recoverable (after accounting for all of the other issues with Temple's demand discussed supra at p. 3-9).  See, e.g., Powell v. Carey Int'l, Inc., 547 F. Supp. 2d

---

In addition, although Temple alleges that the computation of the $110,000 in damages disclosed in his Rule 26(a) Disclosure "turned out to be inaccurate" because his employment as a Research Associate ended in March 2008, rather than December 2008 as his counsel now claims he mistakenly assumed, he does not provide the corrected number using his erroneous assumptions and calculations.  This number is presumably still in excess of $55,000 or more than five times the amount of the Judgment since the number of months for which he now asserts he was claiming damages decreased by less than 50 percent, going from 21 months to 11 months.  Schaffran Decl. ¶ 5.  Finally, Plaintiffs' counsel's assertion that this inaccurate statement of Temple's claimed damages in his Rule 26(a) Disclosures should be excused because they "had not yet had the benefit of full discovery at the time that such disclosure was made" is at best misleading and inaccurate because they certainly had access to their client, Temple, who knew full well that his employment as a Research Associate ended in March 2008.  This willingness on the part of Plaintiffs' counsel to file inaccurate pleadings and make inaccurate assertions without basis in fact or in law is consistent with their use of unreasonable and vexatious tactics in other aspects of this litigation, including this Motion.

[18] Temple's counsel indicate that this amount was arrived at by assuming that Temple worked 4 hours of overtime every single day of his employment, without any adjustment for days or weeks when Temple was on vacation, out sick, observing an office or religious holiday, or absent.  This amount also includes liquidated damages, to which GLG contends Temple would not be entitled under the FLSA even if he were to prevail on his claim.

1281, 1296, 1297 (S.D. Fla. 2008) (assessing circumstances where "the fifteen Plaintiffs at one point demanded damages in excess of $15 million and ultimately accepted offers of judgment in an amount totaling $294,140," concluding that "a 67% reduction in fees is appropriate").  Considering Temple's modest success in this action, his claim for fees and costs totally nearly 40 times his recovery is patently absurd and should be rejected.

### 4.   The Hourly Rates Quoted By Plaintiff's Counsel as "Customary Rates" Are Not Reliable.

This Court should disregard the proposed "customary rates" set forth in the Motion ($750/hour for partners Wigdor and Gilly, $500/hour for associate Filosa, $450/hour for associate Bartle and $180/hour for paralegals) because they are unreliable and are based on nothing more than conclusory and unsupported statements in the Motion.  Indeed, in a telling slight of hand, although the Motion states that the rates requested are those "actually paid" by clients of Plaintiff's counsel ("TWG") and cites as authority for this assertion the Wigdor Declaration in support of the Motion, that Declaration states only that the rates requested are TWG's "customary billing rates" and does <u>not</u> say that they are the rates actually paid by TWG clients.[19]  <u>Compare</u> Pl's Mem. at 17 <u>with</u> Wigdor Decl. ¶¶ 9, 40, 42, 46.  Nor does the Declaration say anything about whether these allegedly "customary billing rates" are typically or often subject to discount, which would result in the rates actually paid being less than their claimed "customary billing rates."  <u>See id.</u>  Thus, the Motion presents no actual evidence that the rates requested are in fact the rates "actually paid" by TWG clients.  In such circumstances, courts have refused to accept the rates proposed by a plaintiff's lawyer.  <u>See, e.g.</u>, <u>Wong</u>, 2010 WL 3452417, at *3 (concluding that plaintiff failed to meet his burden of showing a reasonable hourly rate where his counsel "provided no evidence of actual rates charged to clients or awarded by a court"); <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1059 (2d Cir. 1989) (recognizing that plaintiff's

---

[19] In the case of Mr. Filosa, the Declaration does not even say that the rate requested is his "customary billing rate."  Rather, it states that the customary billing rates for experienced associates ranges from $450 to $600 per hour, and that the rate

counsel must produce "satisfactory evidence – in addition to the attorneys' own affidavits" to establish hourly rates); Lavin-McEleney v. Marist College, No. 96CV4081, 1999 WL 33500070, at *4 (S.D.N.Y. Sept. 28, 1999) (observing that "[a]side from the assertion in her affidavit that she charges hourly rates of between $350 to $375, Ms. DeCrow has provided no justification for awarding what appears to be an exorbitant rate" and, therefore, awarding fees at the rate of $175/hour instead).

TWG's refusal to disclose evidence of their actual billing arrangement with Temple is also reason to reject their purported "customary rates."[20]  In Crescent Publishing Group, Inc. v. Playboy Enters., Inc., 246 F.3d 142, 151 (2d Cir. 2001), yet another decision cited in the Motion, the Second Circuit concluded that the "actual billing arrangement . . . provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded."[21]  Nevertheless, Temple has refused to turn over any information to GLG as to his agreement with his counsel concerning attorneys' fees.  See GLG's Letter Motion dated September 14, 2010 (Puma Decl., Ex. H.)

Finally, it is simply absurd to suggest, as the Motion does, that another client "in Opt-In Plaintiff Temple's shoes" (Pl's Mem. at 15) would be willing (and able) to pay rates of $750/hour for partners and $500/hour for associates in a case where only about $10,000 was truly at stake.  In fact, Plaintiff's counsel tried to make this exact argument in Morgenstern, where TWG recently filed a motion for fees in which they requested an hourly rate of $650/hour (not the now-claimed $750/hour) for Messrs. Wigdor and Gilly and $500 for their associates, and the court rejected it.  Instead, the court

---

"requested" for Mr. Filosa in the Motion is $500.  See Wigdor Decl. ¶ 46.

[20] In Wise, a decision cited in the first Motion for fees (but, notably, omitted from the "revised" Motion), Temple's counsel similarly averred in a declaration that the hourly rates sought by plaintiff were "based on counsel's current hourly rates paid by fee-paying clients, including those raising civil rights claims," but he never disclosed the hourly rates that the firm actually charged in those matters.  See Wise v. Kelly, 620 F. Supp. 2d 435 (S.D.N.Y. 2008).  The Wise court ultimately used a lower hourly rate than that "customarily charged" by plaintiff's counsel.  See id.

[21] In their September 15, 2010 letter to the Court, Temple's counsel argues that Crescent is distinguishable because it involves a fee award under the Copyright Act instead of the FLSA.  See 9/15/10 Letter from G. Filosa to Judge Castel (Puma Decl., Ex. L.)  This argument is wholly disingenuous because Temple's counsel not only cited to Crescent in his Motion, but he also relied on the exact same quote from it.  See Pl's Mem. at 16.  The same is true for the Rozell v. Ross-Holst, 576 F. Supp. 2d 527 (S.D.N.Y. 2008).  See id.

found that "the rates charged by these attorneys 'would simply have been too high for a thrifty, hypothetical client'" to pay.  See Morgenstern v. County of Nassau, No. CV 04-58 (ARL), 2009 WL 5103158, at *9 (E.D.N.Y. Dec. 15, 2009) (quoting Arbor Hill Concerned Citizens, 493 F.3d at 112).

> **5.     The Hourly Rates Requested Are Not the "Prevailing Rates" of Firms of Similar Size in Similar Actions in This Court.**

Temple has not met his burden of establishing that the requested rates of $750 per hour for partners with just 15-17 years of experience, $450-$500 per hour for associates with five years or less of experience, and $180/hour for paralegals are appropriate and reasonable.  Instead, he asks the Court to approve rates that are beyond the prevailing rates charged by lawyers of like skill, experience and reputation in this Court.

Although Messrs. Wigdor and Gilly have only been practicing law for 15 and 17 years, respectively, the Motion seeks hourly rates for them that exceed the rates awarded to attorneys with many more years of experience.  Indeed, this Court typically only awards hourly rates of $400/hour or more to attorneys with at least 20 years of experience.  See, e.g., Kahlil, 657 F. Supp. 2d at 478 (awarding $400/hour rate in a wage/hour action for a partner in a small firm with 25 years of experience); Ashkinazi v. Sapir, No. 02 Civ. 2 (RCC)(MHO), 2005 WL 1123732, at *3 (S.D.N.Y. May 10, 2005) (awarding $425 per hour to a partner in a small firm with 26 years of experience); Rozell, 576 F. Supp. 2d at 545-46 (awarding $600 per hour to a partner with over 35 years of experience in employment law); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 386-88 (S.D.N.Y. 2000) (approving a rate of $350/hour for attorneys with fifteen years of experience).  Instead, this Court has held that $250-350 per hour is the range of prevailing rates for attorneys with approximately 10-15 years of experience.  See, e.g., Wong, 2010 WL 3452417, at *3 (recognizing that "[t]he range of fees in this District for civil rights and employment law litigators with approximately ten years' experience is between $250 per hour and $350 per hour" and awarding a rate of $350/hour in wage/hour action to partners with 12 years of experience); Torres v. City of New York, No. 07 Civ. 3473, 2008 WL

419306, at *1 (S.D.N.Y. Feb. 14, 2008) (holding that $350 per hour is not an unreasonable fee for an attorney with 10 years of experience); Marisol A., 111 F. Supp. 2d at 386 (holding that $350 is an appropriate award for attorneys with roughly 15 years of experience). Significantly lower rates are typically awarded for associates with just five years of experience, like Mr. Filosa and Ms. Bartle, for whom the Motion seeks rates of **$500** and **$450** per hour, respectively. See, e.g., Marisol A., 111 F. Supp. 2d at 386-88 (approving rates of $180-200 for attorneys with four to six years of experience); Moses v. NYC Transit Auth., No. 01-4280, 2003 WL 22939122, at * 3 (S.D.N.Y. Dec. 12, 2003) (approving $175/hour rate for associate with 4 years of experience). Furthermore, their proposed paralegal rates of $180/hour are comparable to those allowed by courts for junior associates. See id.

Moreover, this Court has held that fee awards to small firms should be adjusted downwards, because such firms "do[ ] not incur the same overhead costs that burden a large law firm." Kahlil, 657 F. Supp. 2d at 476 (citing Saunders v. The Salvation Army, No. 06 Civ. 2980, 2007 WL 927529, at *3 (S.D.N.Y Mar. 27, 2007)). Indeed, a recent survey of attorneys' fees awarded in this district found that, in contrast to the rates sought by the Motion, "[w]ithin the last five years, courts have approved rates ranging from $250 to $425 per hour for work done by partners in small firms in this district." Reiter v. MTA of New York, No. 01 Civ. 2762, 2007 WL 2775144, at *7 (S.D.N.Y. Sept. 25, 2007) (internal citations omitted). According to the TWG website, the firm has only 14 lawyers and, therefore, its rates should be treated consistent with this guidance regarding small firms. See Brady v. Wal-Mart, 455 F. Supp. 2d 157, 206-07 (E.D.N.Y. 2006) (noting, in a case where TWG represented the plaintiff Brady, that "[f]irm size also matters, and the defendants rightly point out the difference between the large firms that represented prevailing parties . . . and the smaller office [TWG] that represents Brady" and rejecting TWG's argument that it deserved a higher fee because it "maintained an office on Fifth Avenue in Manhattan with overhead comparable to that of large firms in the same area").

Finally, in two recent fee petitions involving TWG, they were awarded hourly rates significantly lower than those sought by the Motion.  For example, in <u>Brady</u>, TWG requested what they described as the typical "S.D.N.Y." rates of $450/hour for partners and between $250-350/hour for associates.  <u>See</u> 455 F. Supp. 2d at 206-08.  (It is worth noting this admission by Temple's counsel as to the typical rates in this Court, in stark contrast to the rates they now seek in the Motion.)  The Court ultimately awarded to TWG rates of $350/hour for partners and $150-$225/hour for associates.  <u>See</u> <u>id.</u> at 208.  Similarly, in <u>Morgenstern</u>, 2009 WL 5103158, at *9, TWG sought fees based on very different rates, which they again described as the "S.D.N.Y." rates (a moving target, apparently), of $650/hour for Messrs. Wigdor and Gilly and $450-$595/hour for associates.  <u>See</u> <u>id.</u> at *8.  The rates ultimately used by the Court were significantly less, with the partner rate set at $400/hour and the associate rates set between $200-$300/hour depending on experience.  <u>See</u> <u>id.</u> at *9.

The hourly rates demanded by the Motion are unreasonable and inconsistent with both the usual practice in this Court and Temple's counsel's own fee petitions in other actions.  GLG suggests that the more appropriate hourly rate for Messrs. Wigdor and Gilly, who each have 15 and 17 years of experience, respectively, would be $400/hour, the more appropriate rate for Ms. Bartle and Mr. Filosa, who each have only five years[22] of experience, would be $250/hour, and the more appropriate rate for paralegals would be $150/hour.

### 6. "Preclusion of Other Employment" And "Anticipated Returns Of The Litigation" Do Not Support Temple's Demands.

Other considerations that the Motion asserts favor the proposed fee award are the "preclusion of other employment" and "anticipated returns of the litigation."  However, the Motion offers no evidence that TWG actually was precluded from taking on other work as a result of this case.  Mere conclusory statements cannot reasonably support the sort of extraordinary fee request proposed here.

---

[22] Mr. Wigdor's Declaration reports that Ms. Bartle and Mr. Filosa graduated law school in 2005. Wigdor Decl. ¶¶ 43, 45.

Even assuming, *arguendo*, that these conclusory assertions are true as to the overall litigation, TWG certainly was not precluded from pursuing other work as a result of Temple's individual claims, which is the only aspect of the litigation properly at issue here. See supra at p. 3-4. Moreover, the Motion concedes that TWG stood to enjoy substantial rewards due to "the possibility of collecting a contingency fee" if they were successful in the litigation, but that has not been the case to date. See Pl's Mem. at 22.

### 7. Temple Could Have Submitted a More Reasonable Application For *His* Pro Rata (1/49th) Share Of Fees For Work Purportedly Done On Behalf of All 49 Members of the Putative Collective Action, But He Chose Not To Do So.

Temple has now had three chances to make a reasonable request for fees, but he has failed to do so. Accordingly, it would be appropriate to deny Temple all of the fees sought by the Motion. Indeed, Temple could have submitted a more reasonable application for the very limited amount of fees for work on his individual claim, plus a pro rata (or 1/49th)[23] share of the fees for the limited amount of work done on behalf of all 49 potential collective action members, with no request for any fees for work on Plaintiff Cohen's individual claims.[24] See, e.g., Matthews v. City of New York, CV-01-2739 (CPS), 2003 U.S. Dist. LEXIS 16334 (E.D.N.Y. Aug. 22, 2003) (awarding plaintiff, who was

---

[23] Although Temple suggests in a footnote to his Motion that any pro rata share of the fees for this work should be based on the number of Opt-In Plaintiffs, not the number of putative collective action members, he did not cite any authority to support that position. Pl's Mem. at 7 n.4. Nor has GLG found any authority to support it, and it respectfully submits that Temple's position is unreasonable and should be rejected. First, this work purportedly was done on behalf of all 49 members of the putative collective action, and before Temple opted in. Second, as set forth in GLG's opposition to the motion for conditional certification and supporting declarations, from the time this action was filed, there was little, if any, interest in this action among the members of the putative collective action. See Docket No. 25 at 24 (confirming Plaintiff Cohen's failed solicitation efforts) & Nos. 27 at ¶18, 28 at ¶31, 31 at ¶25, 35 at ¶27, 36 at ¶32, 33 at ¶32, 37 at ¶¶30-31, 32 at ¶20, 26 at ¶13, 30 at ¶29 (statements by putative collective action members that they do not wish to participate). Nevertheless, Plaintiff Cohen and his counsel pressed ahead to demand conditional certification and ultimately sent notices to all 49 individuals, only to have just 3 join the case. It would be manifestly unreasonable for Temple's counsel to enjoy a windfall recovery of fees incurred in litigating their way to a Court-approved notice simply because only three individuals individually elected to opt in, and one individual then decided to act reasonably and quickly settle his individual claim.

[24] For instance, he could have requested the total of (i) $1,476.66 in fees for work related to only his individual claim, which includes $955.00 in fee entries referencing only him and a 1/3 share of $521.66 in fee entries referencing discovery work for all 3 opt-in plaintiffs, plus (ii) a 1/49th pro rata share of the fees for work on the Complaint ($ 82.04), the conditional certification briefing ($ 423.27) and the negotiation of the notice to potential collective action members ($212.24). These fees add up to $ 2,194.21, a number that is only a small fraction of the almost $400,000 in fees sought by the Motion. See Chart (Puma Decl., Ex. N); Wigdor Decl., Exh. E. In addition, these fees are based on the reasonable rates proposed by GLG above, not on the rates suggested by Temple in his Motion.

1 of 31 plaintiffs in a group of cases that were consolidated for purposes of discovery, and accepted an

offer of judgment, a 1/31 pro rata share of the attorneys' fees and costs spent on a motion and

discovery that benefitted all of the plaintiffs in the consolidated cases).

### C.    Nearly All Of The Costs Sought By The Motion Are Improper.

The Motion demands an award of nearly $20,000 in costs, which is almost twice the $10,500

that Temple recovered in this action.  The reason for this inflated number is that, once again, the

Motion seeks reimbursement for costs incurred in prosecuting Plaintiff Cohen's individual claims:

- over $6,000 in processing/hosting fees for the nearly 200,000 e-mails produced from only Plaintiff Cohen's e-mail account at GLG as part of the discovery period limited to Plaintiff Cohen's individual claims (see supra at p. 4-5);

- over $3,000 in computer research that, based on its timing, relates to tasks that Temple committed to remove from the renewed Motion but did not (see supra at p. 6-7) or that relate to discovery as to Plaintiff Cohen's individual claims (see supra at p. 4-5);

- over $300 in copying expenses that, based on the timing, appear to relate almost entirely to the period of discovery limited to Plaintiff Cohen's individual claims (see supra at p. 4-5);

- over $400 in meals, without explanation, including over $170 for meals on just one day around the time of Plaintiff Cohen's deposition;[25]

- over $300 in postage that, based on the timing, appear to relate largely to the period of discovery limited to Plaintiff Cohen's individual claims (see supra at p. 4-5), including over $200 in postage for sending the Court-approved Notice to a group of individuals other than Temple who overwhelmingly chose not to join this action;

- nearly $400 in unexplained transportation fees;[26] and

- over $1,000 for a video deposition taken during the period of discovery limited to only Plaintiff Cohen's claims (see supra at p. 4-5).

See Wigdor Decl., Exh. E.  Sifting through every cost requested in the Motion to determine whether it

relates to Temple's own claims would be an onerous task,[27] and it is not GLG's or the Court's

---

[25] Moreover, the cost of numerous meals for the employees of TWG properly should be considered part of the cost of doing business as a law firm, if that is how the firm chooses to operate, not costs recoverable from an opposing party.

[26] Again, the cost of numerous cab rides for the employees of TWG properly should be considered part of the cost of doing business as a law firm, if that is how the firm chooses to operate, not costs recoverable from an opposing party.

obligation to do so.  Instead, it was Temple's duty to properly limit the costs sought by the Motion, as required by the August 24 Order.  Thus, Temple's request for costs should be denied in its entirety.

## III.   <u>CONCLUSION</u>

In an unreasonable, vexatious and bad faith effort to "cover their losses" in the event that Plaintiff Cohen's claims are dismissed on summary judgment, as GLG contends they should be, the Motion seeks virtually all of the fees and costs incurred since the inception of this action.  The August 24 Order already made clear that Temple can only recover the fees and costs associated with prosecuting his own individual claim, but Temple and his counsel simply ignored that directive. Accordingly, and because it is not GLG's or the Court's obligation to parse Temple's counsel's fee and cost records for him after he had more than ample opportunity to appropriately limit his requests, the Motion should be denied in its entirely.

Dated:   September 20, 2010
       New York, New York

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP

By: <u>/s/ Andrew J. Schaffran</u>
    Andrew J. Schaffran (AS-1236)
    Leni D. Battaglia (LB-4704)
    101 Park Avenue
    New York, New York 10178-0060

    Michael J. Puma (MP-5573)
    1701 Market Street
    Philadelphia, PA 19103-2921

    *Counsel for Defendant*
    *Gerson Lehrman Group, Inc.*

---

[27] Because Plaintiff did not provide a substantive explanation for each cost entry, identifying the costs that apply to Temple's claims can only be accomplished by comparing the date of every cost entry with the fee entries at that particular time.