IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY COHEN, on behalf of himself and on behalf of all similarly situated employees,<br><br>       Plaintiff,<br><br>  v.<br><br>GERSON LEHRMAN GROUP, INC.,<br><br>       Defendant. | Civ. No. 09-CV-04352 (PKC)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF OPT-IN PLAINTIFF TEMPLE'S RETENTION AGREEMENT**

MORGAN, LEWIS & BOCKIUS LLP
Andrew J. Schaffran (AS-1236)
Leni D. Battaglia (LB-4704)
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma (MP-5573)
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963-5001 (fax)

Counsel for Defendant
 Gerson Lehrman Group, Inc.

## TABLE OF CONTENTS

                                                                               **Page**

| | | |
|---|---|---:|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | RELEVANT PROCEDURAL HISTORY | 2 |
| III. | ARGUMENT | 3 |
| IV. | CONCLUSION | 7 |

## TABLE OF AUTHORITIES

**Page**

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
    493 F.3d 110 (2d Cir. 2007) ............................................................................................... 6

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
    522 F.3d 182 (2d Cir. 2008) ............................................................................................... 3

Ayres v. 127 Rest. Corp.,
    No. 96 CIV. 1255(DC), 1999 WL 328348 (S.D.N.Y. May 21, 1999) ................................. 4, 5

Brady v Wal-Mart,
    455 F. Supp. 2d (E.D.N.Y. 2006) ....................................................................................... 5

Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.,
    246 F.3d 142 (2d Cir. 2001) ............................................................................................ 4, 5

In re Grand Jury Subpoena Served Upon Doe,
    781 F.2d 238 (2d Cir. 1986) ............................................................................................... 4

Lefcourt v. United States.,
    125 F.3d 79 (2d Cir. 1997) ................................................................................................. 4

Morgenstern v. County of Nassau,
    No. CV 04-58 (ARL), 2009 WL 5103158 (E.D.N.Y. Dec. 15, 2009) .................................... 6

Pappas v. Watson Wyatt & Co.,
    No. 3:04CV304 (EBB), 2008 U.S. Dist. LEXIS 34 (D. Conn. Jan. 2, 2008) ..................... 4, 5

Riddell Sports Inc. v. Brooks,
    158 F.R.D. 555 (S.D.N.Y. 1994) ......................................................................................... 4

Rozell v. Ross-Holst,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008) ................................................................................. 4

I.     **PRELIMINARY STATEMENT**

On September 3, 2010, Opt-in Plaintiff Temple ("Temple") filed a new/second Motion for Attorneys' Fees and Costs ("Temple's Motion"). Despite recovering only $10,500, Temple's Motion seeks over $400,000 in fees, which largely are unrelated to his claims in this action and are based on unreasonable hourly rates for his counsel (hereinafter "TWG") that exceed the prevailing rates in this Court for attorneys of like experience, skill and qualifications. Indeed, without evidentiary support, TWG has proposed an hourly rate of $750/hour for partners Wigdor and Gilly, $500/hour for associates Filosa and Bartle, and $180/hour for paralegals. It based these rates on what it deemed to be the "customary hourly rate" for TWG clients. However, nowhere in Temple's Motion or its supporting declaration did TWG produce any evidence that any of their clients, including Temple, ever in fact paid those rates.

The fee that a "reasonable person in Temple's shoes" – and particularly Temple himself – would be willing to pay TWG in this action is important to determining whether their proposed fees are reasonable. Thus, GLG should be permitted to review a copy of Temple's retention agreement with TWG to see what Temple actually agreed to pay in this case. Moreover, even if Temple and his counsel entered into a contingency fee arrangement, that agreement would be relevant to Temple's demand for nearly $400,000 in fees. For instance, if Temple's counsel agreed with Temple that a 40% recovery on his relief in this action (as it turns out, about $4,000) would be reasonable and appropriate, then the Court and GLG should be able to weigh that in assessing the reasonableness of the $400,000 sought by Temple's Motion.

For these reasons, and as explained in detail below, GLG respectfully submits that Temple should be required to produce a copy of his retention agreement with TWG.

## II.  RELEVANT PROCEDURAL HISTORY

On July 30, 2010, Temple accepted an Offer of Judgment from GLG for $10,500, plus reasonable attorneys' fees and costs, to be determined by the Court.  See Docket No. 88.  The Judgment was entered by the Court on August 2, 2010, and specifically stated that the Court's award of "reasonable attorneys fees and other costs" as part of the Judgment "relates only to Mr. Temple."  See id. (emphasis in original).  Similarly, the Offer of Judgment that was accepted by Temple expressly states that the offer was limited, *inter alia*, to "reasonable attorney's fees and other costs incurred up to the date this offer of judgment is served that might be recoverable by [Temple] against Defendant."  See id.

On August 16, 2010, Temple filed his initial Motion for attorneys' fees and costs.  See Docket Nos. 89-92.  In response to what was clearly an unreasonable and vexatious request for fees, GLG submitted a letter to the Court on August 23, 2010, attached as Exhibit A, requesting that the Motion be denied.  In response to GLG's letter, on August 24, 2010, the Court issued an Order ("August 24 Order") permitting Temple to withdraw his initial motion for fees by September 3, 2010, and requiring that any new motion for fees set forth a request for fees that is reasonable and limited to work on Temple's claims.  See Docket No. 93.  After receiving the August 24 Order concerning his initial motion for fees and costs, Temple withdrew his motion and filed a second Motion for Attorneys' Fees and Costs ("Temple's Motion").  See Docket No. 94-96.

In preparing its opposition to Temple's Motion (which was due on September 20, 2010), counsel for GLG sent an e-mail to Temple's counsel on September 8, 2010, attached as Exhibit B, to follow-up on an earlier discovery request (dated July 9, 2010, attached as Exhibit C) for a copy of the retention agreement between TWG and Temple.  On September 10, 2010, Plaintiffs' counsel responded in an e-mail, attached as Exhibit D, stating that they would not produce the

agreement because they believe it to be irrelevant to the Motion.  On September 14, 2010, GLG sent a required pre-motion letter to the Court, attached as Exhibit E, requesting (1) a pre-motion conference to address any motion that the Court may deem appropriate regarding the production of Temple's retention agreement, and (2) a temporary stay of the deadline for its opposition to the Motion, which was due on September 20, 2010.  On September 15, 2010, Temple sent a letter to the Court, attached as Exhibit F, opposing GLG's request.

On September 20, 2010, the Court issued an Order ("September 20 Order") permitting GLG to file a Motion by September 23, 2010, to compel the production of Temple's retention agreement with TWG.  See Docket No. 99.[1]  The Court also ordered TWG to submit a copy of that retention agreement to the Court by September 23, 2010.  See id.

### III.   ARGUMENT

Temple's fee agreement with his counsel is directly relevant to his pending demand for nearly $400,000 in fees and costs in this action.  The appropriate standard for a Court to apply when ruling on a motion for an award of attorneys' fees is "a presumptively reasonable fee."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 185 (2d Cir. 2008) (citations omitted).  This standard considers "what a reasonable, paying client would be willing to pay."  Id.  Thus, the critical question to be answered in Temple's Motion is "what a reasonable, paying client would be willing to pay" for the $10,500 judgment accepted by Temple.

---

[1] Although the September 20 Order did not stay the deadline for GLG to respond to Temple's Motion, GLG requests an opportunity to supplement its opposition to Temple's Motion with additional information contained in the retention agreement in the event that the instant motion is granted.

In answering that question, both the Second Circuit and this Court have concluded that the actual billing arrangement[2] between a plaintiff and his counsel is an important factor. For example, in Crescent Publ'g Group, Inc. v. Playboy Enters., Inc., 246 F.3d 142 (2d Cir. 2001), the Second Circuit held that "[t]he actual billing arrangement . . . provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." Id. at 151. In fact, the Crescent court concluded that the actual billing arrangement is a "significant" factor in determining a reasonable fee. Id. Although GLG anticipates that Temple will argue in his opposition (as he did in his September 15, 2010 letter) that Crescent is distinguishable because it involved an award of attorneys' fees under the Copyright Act rather than the Fair Labor Standards Act (see Exhibit F, attached), that argument fails because Temple's own Motion cited Crescent for this proposition. See Docket No. 95 at 16.

Moreover, in Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008), which Temple cited in his Motion as well, this Court concluded that the "range of rates that plaintiffs' counsel actually charges their clients" is relevant to a determination of the "customary" rate. Temple likely will attempt to distinguish Rozell, as he did in his September 15 submission (see Exhibit F, attached), on the basis that the court in that case did not compel the production of the retainer agreement. However, this contention misses the point because, in Rozell, when the defendant challenged plaintiff's counsel's "customary hourly rate" – as GLG did in opposing Temple's Motion for fees/costs – plaintiff's counsel (unlike TWG) acted reasonably and agreed to produce copies of retainer agreements with their clients without being compelled to do so.

---

[2] Although Temple may argue in his Opposition that his fee agreement with TWG is privileged, such a position is not supported by case law in the Second Circuit or this District. See Lefcourt v. United States., 125 F.3d 79, 85 (2d Cir. 1997); In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 247 (2d Cir. 1986); Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 560 (S.D.N.Y. 1994).

See id. at 544-45.  Rozell was not a case, as Temple would have the Court believe, where the defendant requested a copy of the retainer agreement and the request was denied.

In addition, the Pappas and Ayres decisions cited by Temple in his September 15 submission (see Exhibit F, attached) are inapposite because neither of them addressed the issue of whether a plaintiff should be compelled to produce a copy of his retention agreement with counsel in the context of a request for attorneys' fees.  See Pappas v. Watson Wyatt & Co., No. 3:04CV304 (EBB), 2008 U.S. Dist. LEXIS 34, at *13-14 (D. Conn. Jan. 2, 2008); Ayres v. 127 Rest. Corp., No. 96 CIV. 1255(DC), 1999 WL 328348 (S.D.N.Y. May 21, 1999).  Pappas is particularly unhelpful to Temple.  In Pappas, unlike here, plaintiff's counsel disclosed in a declaration the actual hourly rate that plaintiff had agreed to pay.  See id.  Moreover, the Pappas court ultimately used an hourly rate lower than the $425/hour requested by plaintiff's counsel (and far lower that the rates proposed by Temple's counsel here), finding it to be excessive in light of what a "reasonable" client would have been willing to pay.  Id.  In using a lower rate, the court noted plaintiff's failure to produce the retention agreement and cited Crescent for the proposition that "an actual fee agreement may 'provide a strong indication of what private parties believe is the reasonable fee to be awarded . . . .'"  Id.

Finally, in a case in which TWG represented the plaintiff in an employment discrimination matter and filed a motion for fees, Brady v Wal-Mart, 455 F. Supp. 2d (E.D.N.Y. 2006), TWG produced a copy of the retention agreement, which was then attached to the defendant's opposition to the plaintiff's fee petition (as one of the exhibits in support of its argument, like here, that the requested hourly rates were unreasonable).  Although Temple's counsel argued in their September 15 submission that Brady was inapposite because it involved different "facts and circumstances" (see Exhibit F, attached), they did not (likely because they

could not) explain such "facts and circumstances" or how they warranted a different result than here.

In this case, just as in the other decision cited above, Temple's actual fee agreement with his counsel is directly relevant to his demand for fees. In that regard, Temple's Motion presents no evidence that the rates requested for his counsel ($750/hour for partners Wigdor and Gilly, $500/hour for associate Filosa, $450/hour for associate Bartle and $180/hour for paralegals) are in fact the rates "actually paid" by TWG clients.[3] Compare Docket No. 95 at 17 with Docket No. 96 ¶¶ 9, 40, 42, 46.

GLG seriously doubts that Temple or any other reasonable TWG client "in his shoes" would be willing (and able) to pay rates of $750/hour for partners and $500/hour for associates in a case where only about $10,000 truly was at stake.[4] If TWG's clients are not willing to pay those rates, then GLG should not be forced to pay an attorneys' fees award that is based on those hourly rates. Thus, if Temple and his counsel concluded in their retention agreement that something less than the exorbitant rates sought by the Motion would be appropriate for this litigation, that is directly relevant to Temple's Motion. As another example, if the retention agreement provides for a contingency arrangement such that TWG's fees would be, for instance, 40% of whatever damages Temple might recover in the litigation by settlement or otherwise

---

[3] In the case of Mr. Filosa, the Declaration does not even say that the rate requested is his "customary billing rate". Rather, it states that the customary billing rates for experienced associates ranges from $450 to $600 per hour, and that the rate "requested" for Mr. Filosa in the Motion is $500. See Docket No. 96 ¶ 46.

[4] TWG advanced this argument in another case in which it recently filed a motion for fees and requested an hourly rate of $650/hour (not the now-claimed $750/hour) for Messrs. Wigdor and Gilly and $500 for their associates, and the court rejected it. Instead, the court found that "the rates charged by these attorneys 'would simply have been too high for a thrifty, hypothetical client'" to pay. See Morgenstern v. County of Nassau, No. CV 04-58 (ARL), 2009 WL 5103158, at *9 (E.D.N.Y. Dec. 15, 2009) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112 (2d Cir. 2007)).

(which would be roughly $4,000 here based on the amount of the accepted Offer of Judgment), then GLG and the Court should have that information so that it can be considered in assessing Temple's demand for over $400,000 in fees and costs.

## IV.     CONCLUSION

Temple's retention agreement with TWG is directly relevant to the Court's assessment of whether his demand for nearly $400,000 in fees and costs is reasonable and, therefore, GLG respectfully requests that the Court grant its Motion to compel the production of the retention agreement.

Dated:   September 23, 2010
         New York, New York

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Michael J. Puma
     Michael J. Puma (MP-5573)

Andrew J. Schaffran (AS-1236)
Leni D. Battaglia (LB-4704)
101 Park Avenue
New York, New York 10178-0060

1701 Market Street
Philadelphia, PA 19103-2921

*Counsel for Defendant Gerson Lehrman Group, Inc.*