**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

JEFFREY COHEN, on behalf of himself and on behalf of
all similarly situated employees,

Plaintiff,

v.

GERSON LEHRMAN GROUP, INC.,

Defendant.

Civil Action No.
09-CV-04352 (PKC)

---

## DEFENDANT'S RULE 56.1(b) STATEMENT
## SUBMITTED IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
## JUDGMENT ON DEFENDANT'S COUNTERCLAIMS

Defendant Gerson Lehrman Group, Inc. ("GLG"), by its attorneys, pursuant to Rule

56.1(b) of the Local Rules for the United States District Court for the Southern District of New

York, submits the following Statement in Opposition to the Statement of Undisputed Material

Facts submitted by Plaintiff Jeffrey Cohen ("Cohen") in support of his Motion for Summary

Judgment on GLG's counterclaims against Cohen.

1.      On May 5, 2009, Plaintiff Jeffrey Cohen commenced this action on behalf of
himself and all similarly situated "Research Associate" employees of Defendant Gershon [sic]
under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), New York Labor Law §
663 ("NYLL") as well as 12 N.Y.C.R.R. § 142-2.2. *See* Complaint, ¶¶1, 2, 6, attached as Exhibit
A to Filosa Decl.

**Response:**  GLG does not dispute this paragraph, except that with respect to purported violations

of the minimum wage and overtime provisions under the FLSA, the NYLL and 12 N.Y.C.R.R. §

142-2.2 asserted on behalf of Cohen and individuals alleged to be similarly situated to him, GLG

denies that its compensation of Cohen or other Research Associates violated the law and further

denies that Cohen is similarly situated to any other Research Associate.

2.      On June 15, 2009, Plaintiffs filed a motion for Preliminary Class Certification and
Defendant Moved to Dismiss or Strike Plaintiffs' state law class action claims. *See* Docket Entry

Nos., 10, 16.

**Response:**  GLG does not dispute this paragraph, except that the referenced motion was filed by

a single Plaintiff (Cohen), not "Plaintiffs."

   3.     On June 15, 2009, Defendant filed its Answer. *See* Docket Entry No. 20.

**Response:**  Admitted.

   4.     On October 1, 2009, Defendant filed an Amended Answer, Defenses and
Counterclaims. See Amended Answer, Defenses and Counterclaims ("Counterclaims"), attached
as Exhibit B to the Filosa Decl., at ¶ 1.

**Response:**  Admitted.

   5.     On October 16, 2009, Plaintiff Jeffrey Cohen filed a Motion to Dismiss
Defendant's Counterclaims. *See* Docket Entry No. 54.

**Response:**  Admitted.

   6.     On January 7, 2010, the Court granted Plaintiffs' Motion for Preliminary Class
Certification, denied Defendant's Motion to Dismiss or Strike the Plaintiffs' state law class action
claims and denied Plaintiffs Motion to Dismiss the Defendant's Counterclaims. *See* Order, dated
January 7, 2010, attached as Exhibit C to the Filosa Decl.

**Response:**  Admitted.

   7.     On January 21, 2010, Plaintiff Cohen filed an Answer to Defendant's
Counterclaims. *See* Docket Entry No. 68.

**Response:**  Admitted.

   8.     By Order dated June 23, 2010, the Court set the close of factual discovery on
Defendant's counterclaims as November 19, 2010. *See* Docket Entry No. 83.

**Response:**  GLG does not dispute this paragraph, except to clarify that the Order (Dkt. #83) set

November 19, 2010 as the close of fact discovery on "all issues other than the state labor law

claims of persons other than [Cohen] and the three-opt-ins."

   9.     On August 3, 2010, Defendant served Plaintiff with its Second Amended Initial
26(a) Disclosures. *See* Def.'s Second Amended Initial 26(a) Disclosures, attached as Exhibit D to
the Filosa Decl.

**Response:** GLG does not dispute this paragraph, but further avers that its Seconded Amended

Initial 26(a) Disclosures (Filosa Decl., Exhibit ("Exh.") D, at 5-6) detailed its losses resulting

from Cohen's "mass deletion" as well as how those losses were calculated, and Plaintiffs have

not articulated any factual basis to challenge the amount or calculation of GLG's stated losses,

which also were described in the Declaration of David Wolff (Filosa Decl., Exh. G).

10.     Mr. Cohen was employed as a Research Associate from April 10, 2007 until December 31, 2008, when he was promoted to Research Manager. *See* Complaint, ¶14.

**Response:** Admitted.

11.     Mr. Cohen resigned his employment with Defendant on April 24, 2009. *See* Complaint, ¶10.

**Response:** Admitted.

12.     Throughout his employment with the Company, Mr. Cohen was provided access to and use of one of the Company's computers for performing his job duties and responsibilities. *See* Counterclaims, ¶ 4.

**Response:** GLG does not dispute this paragraph, but further avers that:  (1) Cohen's access to

and use of one of GLG's computers and its computer network was granted only pursuant to, and

was at all times subject to, the terms of GLG's End User Policies (Filosa Decl., Exh. F); (2)

Cohen affirmed that he read and understood the End User Policies and agreed to comply with

them (Defendant's Local Rule 56.1 Statement of Undisputed Material Facts in Support of its

Motion for Summary Judgment ("GLG 56.1"), at ¶¶ 342-44); and (3) Cohen's access also was

subject to the terms of his Intellectual Property, Confidentiality, and Non-Competition

Agreement with GLG ("Confidentiality Agreement").  (GLG 56.1 ¶ 342).

13.     On August 28, 2009, Mr. Cohen was deposed.  *See* Deposition of Jeffrey Cohen, attached as Exhibit E to the Filosa Decl.

**Response:** Admitted.

14.     Prior to his last day of employment with Defendant, Mr. Cohen deleted several

files from his C-drive ("Local Drive") and H-drive, ("Network Drive"). See Cohen Dep. at 88:15-20.

**Response:**   Except to admit that, before resigning, Cohen deleted files from the hard drive of the

computer assigned to him and a network drive to which he had access, GLG denies the

remaining supposedly undisputed facts set forth in Paragraph 14 and further avers that Cohen

performed a "mass deletion" of files from the hard drive of the computer assigned to him and a

network drive to which he had access.  (Cohen Dep. [Filosa Decl., Exh. E] at 88:7-20).

Specifically, Cohen testified:

> Q:  Did you delete each document one document at a time or did
> you delete --
>
> A:  It was a mass deletion.
>
> Q:  So when you say -- what was within the scope of the mass
> deletion is what we're trying to understand?
>
> A:  Like I said, I don't remember every single document that was
> on my computer in April of 2008.
>
> Q:  Was it your -- were you attempting to delete everything that
> was on your computer?
>
> A:  All -- [j]ust all files.
>
> Q:  Okay.  And when you use the word "file," what is the meaning
> of the word "file" as you are using it?
>
> A:  To me a pdf or a Word document.
>
> Q:  So you were seeking to delete all pdf and Word documents?
>
> A:  Yes.

Cohen Dep. [Filosa Decl., Exh. E] at 91:5-92:5.  GLG further avers that all of the files deleted by

Cohen were GLG property pursuant to the End User Policies acknowledged by Cohen.  Filosa

Decl., Exh. F at 1 ("The End User Computing Environment (including all hardware, software,

and data) is the property of Gerson Lehrman Group (GLG) and must be used for legitimate

business use.").

15.    The files that Mr. Cohen deleted consisted of PDF documents, Microsoft Word
documents and possibly Microsoft Excel documents. *See* Cohen Dep. at 92:2-5; 92:21-22; 93:26;
116:15-18.

**Response:**  GLG does not dispute this paragraph, except to further aver that Cohen's mass deletion also included e-mail messages.  (GLG 56.1 ¶ 352).

16.     All of these documents were documents that Mr. Cohen had personally saved to his computer or the network drive during the course of his employment with Defendant.  *See* Cohen Dep. at 116:19-20.

**Response:**  GLG denies the supposedly undisputed facts set forth in Paragraph 16, as Cohen has testified that he does not recall the details of the documents deleted and thus it is unknown whether Cohen personally saved all of the files that were deleted from the hard drive and network drive.  (Cohen Dep. [Filosa Decl., Exh. E] at 91:5-11).

17.     The files that Mr. Cohen deleted were personal in nature, as they contained personal information to which he did not want his former employer to have access, and were not relevant to this lawsuit. *See* Cohen Dep. at 88:15-24; 100:14-18; 101:4-7.

**Response:**  GLG denies the supposedly undisputed facts set forth in Paragraph 17, as Cohen testified that it was "more than likely" that GLG's files were included among the files deleted (Cohen Dep. [Filosa Decl. Exh. E] at 93:10-12; GLG 56.1 ¶ 356); all claimed "personal" files actually were GLG's property pursuant to the End User Policies acknowledged by Cohen (Filosa Decl., Exh. F, at 1); the record evidence indicates that the deleted files that GLG was able to recover (only from the network drive) included files that are relevant to this action (GLG 56.1 ¶¶ 347-49) there were other deleted files (from the hard drive) that GLG was not able to recover and, consequently, it is not possible to know whether they were potentially relevant to this action (Declaration of David Wolff ("Wolff Decl.") [Filosa Decl. Exh. G] ¶ 7); Declaration of Rudi Peck ("Peck Decl.") ¶ 5); Cohen never testified that none of the deleted files were potentially relevant to this action; and Cohen admitted that part of the reason he decided to perform the mass deletion was because he was preparing to file this action and did not want GLG to have access to the deleted files (Cohen Dep. [Filosa Decl. Exh. E] at 100:2-101:16).

18.     After Mr. Cohen deleted these files, his computer and Defendant's systems continued to operate in the same manner as they had before he deleted these files. *See* Cohen Dep. at 115:18-24.

**Response:**  GLG denies the supposedly undisputed facts set forth in Paragraph 18, as its

computer and systems did not continue to "operate in the same manner" because GLG was

unable to recover all of the deleted files (*see supra* paragraph 17).

19.     Mr. Cohen did not use any special software to delete these [sic], nor did he seek anyone's assistance. Instead, Mr. Cohen deleted the files in the same manner one would typically delete files. *See* Cohen Dep. at 89:1-13; 91:24-93:9.

**Response:**  GLG denies the supposedly undisputed facts set forth in Paragraph 19, as they are

incomprehensible and also because Cohen testified that he could not remember how he deleted

the files (Cohen Dep. at 89:1-5); the record evidence indicates that Cohen in fact deleted the files

with the assistance of a data destruction or "wiping" program or software (Wolff Decl. [Filosa

Decl., Exh. G] ¶ 7; Peck Decl. ¶ 4); and although GLG provided Cohen with a complete forensic

image of the hard drive of the computer formerly used by him at GLG (*see* Letter from L.

Battaglia to G. Filosa, dated September 15, 2010, Exh. 92 to the Declaration of Michael J. Puma

in Support of Defendant's Motion for Summary Judgment), Cohen apparently failed to perform

his own forensic analysis of the hard drive to rebut the evidence that he deleted the files with the

assistance of a data destruction program or software.

20.     Defendant's computing polices are entitled "GLG End User Computing Policies." *See* GLG End User Computing Policies ("Computing Policies"), attached as Exhibit F to the Filosa Decl., at 1.

**Response:**  GLG does not dispute this paragraph, except to admit that an earlier version of the

End User Policies also was produced to Cohen (bates labeled GLG0333-53).

21.     Defendant's Computing Policies, under the heading "Data Storage Environment," provide that: "The standard PC configuration includes a 'My Documents' directory on the local hard disk (C:\drive) for private data storage. Shared network directories are available (H:\drive) as well. Authentication protects data stored in both locations."  *See* Exhibit F, at 6.

**Response:**  GLG does not dispute this paragraph, but further avers that (1) nothing in the End

User Policies (Filosa Decl., Exh. F) prohibits an employee from saving work files to a GLG hard

drive, and (2) Cohen admitted that his mass deletion likely included GLG (not just what he

characterizes as "personal") files (*see supra* paragraph 17).

      22.    Defendant's Computing Policies, under the heading "Saving Data," provide: "Users are instructed to store data . . . on the local hard drive in their personal 'My Documents' directory; or in the shared network directory." *See* Exhibit F, at 6.

**Response:**  Admitted.

      23.    Defendant's Computing Policies further provide that "Data stored locally outside the shared network directory is not backed up and can be lost in the event of a problem with the local hard disk."  *See* Exhibit F, at 6.

**Response:**  GLG does not dispute this paragraph, but further avers that nothing in the End User

Policies (Filosa Decl., Exh. F) prohibits an employee from saving work files to a GLG hard

drive.

      24.    Defendant's Computing Policies, under the heading "Data of Departing Employees," provide that:

> Business management must review a departing employee's privately stored data files and move critical information in these files to an active user's files or to shared files within five working days after departure of the employee. If the business group does not provide other instructions, IT Infrastructure has the right to delete dormant user access after five days of an employee departure, and may archive or delete the data at its own discretion, including voice mail and email. (IT Infrastructure receives notice of employee departures from Human Resources and distributes the information within IT as necessary.)

> *See* Exhibit F, at 6.

**Response:**  GLG does not dispute this paragraph, but further avers that (1) there is no record

evidence that this "business management review" was not performed on Cohen's files, which

Cohen failed to investigate during discovery, and (2) Cohen's admitted mass deletion made such

a review impossible without GLG's efforts to restore the deleted files.

25.     Defendant's Computing Polices, under the heading "PC Disk Space," provide that: "In order to optimize PC performance and response time, users must maintain the disk space on their PCs, regularly deleting old or extraneous data files. In addition, some data may be best stored only on the network."  *See* Exhibit F, at 7.

**<u>Response:</u>**  GLG does not dispute this paragraph, but further avers that (1) Cohen made no effort during his mass deletion to distinguish "old or extraneous data files" from those that were still current and relevant (GLG 56.1 ¶¶ 355-56), and (2) Cohen clearly did not act pursuant to this provision of the End User Policies because he testified that he did not recognize the Policies and could not recall reading them (Cohen Dep. at 101:24-103:22, Exh. 4 to the Declaration of Michael J. Puma in Support of Defendant's Motion for Summary Judgment).  GLG further avers that Cohen admitted he never thought about the company's policy that strictly prohibited "destroying, vandalizing, or reconfiguring of any [GLG ] hardware or software."  (Cohen Dep. at 111:18-112:3, Exh. 4).  Cohen testified that he "never thought" about many of the provisions in GLG's End User Policies.  (Cohen Dep. at 113:1-21, Exh. 4).

26.     Defendant's Computing Policies, under the heading "E-mail Guidelines," provide that: "If an email has important information that needs to be saved, employees can save the information to a word, notepad or similar document. Employees may not save every email they leave into documents on their PCs."  *See* Exhibit F, at 15.

**<u>Response:</u>**  GLG does not dispute this paragraph, but further avers that this section of the End User Policies also provides that "E-mail messages are neither private nor confidential, are subject to review, and are the property of Gerson Lehrman Group.  Use of personal E-mail services (i.e., E-mail provided by an external service provider) is prohibited unless specifically authorized by both the Senior Management member responsible for the business unit and Senior Systems Administrator.  All E-mail correspondence should be for legitimate business purposes only and should be sent using the GLG mail system (Microsoft Outlook/Exchange)."  (Filosa Decl., Exh. F at 15.)

27.     On October 30, 2009, in opposition to Plaintiff Cohen's Motion to Dismiss Defendant's Counterclaims, Defendant filed a Declaration of David Wolff ("Mr. Wolff").  *See* Declaration of David Wolff ("Wolff Decl."), attached as Exhibit G to the Filosa Decl.

**Response:**  Admitted.

28.     On November 4, 2010, Mr. Wolff was deposed.  *See* Deposition of David Wolff ("Wolff Dep."), attached as Exhibit H to the Filosa Decl.

**Response:**  Admitted.

29.     Mr. Wolff is employed by Defendant in the position of Senior Security Engineer. Wolff Decl. ¶ 1.

**Response:**  GLG does not dispute this paragraph, but further avers that Wolff's job duties include responsibility for GLG's security such as the physical security of the offices, network security, information security, incident response, audits, and compliance procedures and policies. (Transcript of the Deposition of David Wolff ("Wolff Dep."), at 25:16-26:8, Exh. 8 to the Declaration of Michael J. Puma in Support of Defendant's Motion for Summary Judgment), but do not involve enforcement of the End User Policies (Wolff Dep. at 107:24-108:13, Exh. 8). GLG further avers that although Cohen's counsel deposed GLG's Human Resources Director, Deborah Barker, they declined to ask her any questions about the End User Policies and also elected not to seek to depose any of the Information Technology department personnel identified in GLG's Second Amended Initial 26(a) Disclosures.

30.     On June 15, 2009, Mr. Wolff attempted to recover data from the Local Drive drive [sic] of the computer previously assigned to Mr. Cohen, but was unsuccessful.  *See* Wolff Decl. ¶¶ 2, 5.

**Response:**  Admitted.

31.     On June 25, 2009, Mr. Wolff engaged the assistance of FiOS [sic], an outside vendor that specialized in forensic examinations, to restore the Local Drive of the computer previously assigned to Mr. Cohen.  *See* Wolff Decl. ¶ 6.

**Response:**  GLG does not dispute this paragraph, but refers to its response to paragraph 9 above.

32.     In an effort to restore the H Drive, Mr. Wolff retrieved several back-up tapes from the Company's off-site storage facility and Mr. Wolff and others worked to restore the H Drive using this back-up tape.  *See* Wolff Dec1. ¶ 9.

**Response:**  GLG does not dispute this paragraph, but refers to its response to paragraph 9 above.

33.     Mr. Wolff, Defendant's Senior Security Engineer, did not know whether employees were required to obtain permission before deleting documents on their hardware or network drive.  *See* Wolff Dep. at 40:25-41:2-8.

**Response:**  GLG does not dispute this paragraph, but avers that it is immaterial to the

counterclaims (which relate to Cohen's conduct), and refers to its response to paragraph 29

above.

34.     During the course of his employment, Mr. Wolff has deleted files stored on his Local Drive and Network Drive without first obtaining permission to do so.  *See* Wolff Dep. at 42:8-16.

**Response:**  GLG does not dispute this paragraph, but avers that it is immaterial to the

counterclaims (which relate to Cohen's conduct), refers to its response to paragraph 29 above,

and further avers that Mr. Wolff's deletion of "old or extraneous data files" as part of an effort to

"maintain the disk space" is consistent with the End User Policies (Filosa Decl., Exh. F at 7)

while Cohen's "mass deletion," as described by him, was not consistent with the provision of the

End User Policies (*see supra* paragraphs 14, 17, 29, & 25).

35.     Mr. Wolff was unaware of whether his deletion of files stored on both the Local Drive and Network Drive violated the [sic] GLG's policies.  *See* Wolff Dep. at 42:24-43:4; 43:13-17.

**Response:**  GLG does not dispute this paragraph, but avers that it is immaterial to the

counterclaims (which relate to Cohen's conduct) and refers to its response to paragraph 29

above.

36.     Mr. Wolff does not recall ever attempting to recover data from any other employee's Local Drive other than Mr. Cohen's.  *See* Wolff Dep. at 58:9-13; 66:24-67:5.

**Response:**  GLG does not dispute this paragraph, but avers that it is immaterial to the

counterclaims (which relate to Cohen's conduct) and that there is no record evidence as to

whether GLG's Information Technology Department or Human Resources Department

personnel have attempted to recover data from any employee's local drive.

37.     After he was unable to restore the Local Drive of the computer assigned to Mr. Cohen, on the advice of counsel, Mr. Wolff sent the Local Drive to FiOS to try to recover data from the Local Drive.  *See* Wolff Dep. at 72:8-19; 83:4-15.

**Response:**  Admitted, except that GLG disputes that Mr. Wolff retained Fios at the direction of

counsel.

38.     While Mr. Wolff stated in his declaration that FiOS concluded that the Local Drive had been deleted by someone likely using specialized destruction software, he was not told how probable it was that specialized destruction software as used, nor was he provided with the rationale for FiOS' alleged statement that software was used by Plaintiff to delete the files.  *See* Wolff Dep. at 85:19-86:5; 136:24-137:24.

**Response:**  GLG does not dispute this paragraph, but refers to its response to paragraph 19

above.

39.     As a Research Associate, Mr. Cohen would typically not have had the administrator access necessary to install software on an individual computer.  See Wolff Dep. at Wolff Tr. 109:19-110:18.

**Response:**  GLG does not dispute this paragraph, but avers that Mr. Wolff did not know whether

Cohen had administrator rights with respect to his computer (Wolff Dep. [Filosa Decl., Exh. H]

at 110:5-8), there is no record evidence as to whether Cohen had such rights, and there is no

record evidence that administrative access was needed to install software and/or run a program

on the GLG hard drive formerly used by Cohen.

40.     Matthew Griffin, internal counsel for the Company, discussed with Mr. Wolff the data recovery options available. *See* Wolff Dep. at 79:5-12; 87:13-14.

**Response:**  GLG does not dispute this paragraph, but avers that it is immaterial to the

counterclaims.

41.     Mr. Wolff did not personally restore the Network Drive but had the server team at

the Company restore the network drive. *See* Wolff Dep. at 89:8-20.

**Response:**  GLG does not dispute this paragraph, but refers to its response to paragraph 9 above.

42.     GLG discouraged storing data on employee's individual Local Drive because the data on the Local Drives is not backed up like the data on the Network Drives. *See* Wolff Dep. at 91:7-12.

**Response:**  GLG does not dispute this paragraph, but refers to its responses to paragraphs 17 and 22 above.

43.     FiOS was able to recover files from Mr. Cohen's Local Drive, but the data that was recovered was not of use to Defendant in the present case.  *See* Wolff Dep. at 135:10-14; 136:12-15.

**Response:**  GLG denies the supposedly undisputed facts set forth in paragraph 43, as the record evidence indicates that files from the network drive to which Cohen had access were in fact of use to GLG in this action (GLG 56.1 ¶¶ 347-49) (detailing considerations raised by Cohen while discussing anticipated litigation with other Research Associates as well as possible legal representation); Fios was unable to recover all of the deleted files (Peck Decl. ¶ 5); although GLG provided Cohen with a complete forensic image of the hard drive of the computer formerly used by him at GLG, Cohen apparently failed to perform his own forensic analysis of the hard drive to rebut that not all of the deleted files were recoverable; and Wolff testified that the files recovered were "system files" (Wolff Dep. at 136:3-7).

44.     Mr. Wolff was unaware of any document at the Company that would provide guidance on the definition of old or extraneous files. *See* Wolff Dep. at 117:8-15.

**Response:**  GLG does not dispute this paragraph, but refers to its responses to paragraphs 25 and 34 above.

45.     Aside from the Local Drive and Network Drive, there is also a shared drive that departments of the Company can use to save files. *See* Wolff Dep. at 125:9-12.

**Response:**  GLG does not dispute this paragraph, but avers that it is immaterial to the

counterclaims, and further avers that Wolff testified that he did not know the specifics of each

department's practices (Wolff Dep. [Filosa Decl., Exh. H] at 125:13-17).

46.     Mr. Wolff does not recall anyone contacting him with instructions regarding Mr. Cohen's computer within five days after Mr. Cohen resigned his employment with the Company. *See* Wolff Dep. at 113:14-114:4.

**Response:**  GLG does not dispute this paragraph, but refers to its responses to paragraphs 24 and

29 above.

47.     Mr. Wolff has no knowledge as to whether the IT Infrastructure archived or deleted Mr. Cohen's computer after he left the Company but prior to the Company's restoration of the drives.  *See* Wolff Dep. at 115:19-116:2.

**Response:**  GLG does not dispute this paragraph, but refers to its responses to paragraphs 24 and 29 above, and further avers that there is no record evidence that anyone "archived or deleted" any data on that computer other than Cohen's own admitted "mass deletion" (*see supra* at paragraph 14).

Dated:  March 11, 2011
      New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

BY:   /s/ Michael J. Puma         
Andrew J. Schaffran (AS-1236)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma (MP-5573)
Blair J. Robinson (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963-5001 (fax)

Counsel for Defendant
Gerson Lehrman Group, Inc.