# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JEFFREY COHEN, on behalf of himself and on behalf of all similarly situated employees,

        Plaintiff,

      v.

GERSON LEHRMAN GROUP, INC.,

        Defendant.

Civil Action No.
09-CV-04352 (PKC)

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS

Andrew J. Schaffran
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma
Blair J. Robinson (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963-5001 (fax)

Counsel for Defendant
Gerson Lehrman Group, Inc.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ....................................................................................................1

II.     STATEMENT OF PERTINENT DISPUTED MATERIAL FACTS ................................2

        A.      Cohen Has Not Established As An Undisputed Fact That GLG's Losses
                Did Not Exceed The CFAA's $5,000 Jurisdictional Threshold. ...........................2

        B.      Cohen Has Not Established As An Undisputed Fact That His Conduct Did
                Not Exceed His Authorized Access To GLG's Computer Systems. .......................2

        C.      Cohen Has Not Established As An Undisputed Fact That He Did Not Use
                A Program Or Software To Accomplish His "Mass Deletion". .............................4

        D.      Cohen Has Not Established As An Undisputed Fact That GLG Recovered
                All Of The Files That He Deleted. ............................................................................4

III.    ARGUMENT .............................................................................................................5

        A.      Cohen Bears The Burden of Demonstrating That No Material Facts Are
                Genuinely Disputed. ................................................................................................5

        B.      Cohen Is Not Entitled To Summary Judgment On The CFAA Claim ...................6

                1.      A Reasonable Jury Could Conclude That The CFAA's $5,000
                        Jurisdictional Threshold Is Satisfied. ............................................................6

                2.      A Reasonable Jury Could Conclude That Cohen Exceeded His
                        Authorized Access To GLG's Computer Systems Or Was Not
                        Authorized To Access Them To Perform A "Mass Deletion." ..................8

                        a.      A Reasonable Jury Could Conclude That Cohen Exceeded
                                His Access. ...................................................................................9

                        b.      A Reasonable Jury Could Conclude That Cohen's Access
                                Was Unauthorized. ......................................................................10

                3.      The CFAA Does Not Require The Use Of A Program Or Software,
                        And In Any Event A Reasonable Jury Could Conclude That Cohen
                        Used A Program Or Software To Delete Files. .........................................13

        C.      Cohen Is Not Entitled To Summary Judgment On The Conversion
                Counterclaim. ........................................................................................................14

        D.      Cohen Is Not Entitled To Summary Judgment On The Trespass To
                Chattels Counterclaim. ..........................................................................................15

        E.      The Court Should Continue To Exercise Jurisdiction Over GLG's State
                Law Counterclaims. ..............................................................................................16

IV.     CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

**Page**

## CASES

ABF Capital Management v. Askin Capital Management, L.P.,
  957 F. Supp. 1308 (S.D.N.Y. 1997)...........................................................................16

Calyon v. Mizuho Securities USA, Inc.,
  No. 07-2214, 2007 WL 2618658 (S.D.N.Y. July 24, 2007)...............................................8, 11

Davidoff v. Davidoff,
  819 N.Y.S.2d 209 (N.Y. Sup. Ct. 2006) ...................................................................15

EF Cultural Travel BV v. Explorica, Inc.,
  274 F.3d 577 (1st. Cir. 2001)...................................................................6, 8, 9, 10

Elektra Entertainment Group, Inc. v. Santangelo,
  No. 06. Civ. 11520, 2008 U.S. Dist. LEXIS 76510 (S.D.N.Y. Oct. 1, 2008) ........................15

Ervin & Smith Adver. & Public Relations. v. Ervin,
  No. 08-459, 2009 U.S. Dist. LEXIS 8096 (D. Neb. Feb. 3, 2009)...........................................8

Frees Inc. v. McMillian,
  No. 05-1979, 2007 U.S. Dist. LEXIS 57211 (W.D. La. Aug. 6, 2007)....................................9

Hart v. City of Albany,
  272 A.D.2d 668 (N.Y. 2000) ...............................................................................15

Hecht v. Components International, Inc.,
  867 N.Y.S.2d 889 (N.Y. Sup. Ct. 2008) .................................................................15

International Airport Ctrs., LLC v. Citrin,
  440 F.3d 418 (7th Cir. 2006) ...............................................................10, 11, 13

Kranz v. Town of Tusten,
  236 A.D.2d 675 (N.Y. App. Div. 3d Dep't 1997)....................................................14

LVRC Holdings v. Brekka,
  581 F.3d 1127 (9th Cir. 2009) ............................................................................11

Lasco Foods, Inc. v. Hall & Shaw Sales Marketing & Consulting, LLC,
  No. 08-1683, 2009 U.S. Dist. LEXIS 99535 (E.D. Mo. Oct. 26, 2009)...........................6, 8, 9

Lumbermen's Mutual Casualty Co. v. RGIS Inventory Specialists, LLC,
  628 F.3d 46 (2d Cir. 2010)...................................................................................5

# TABLE OF AUTHORITIES
(continued)

**Page**

MPC Containment System v. Moreland,
  No. 05-6973, 2008 U.S. Dist. LEXIS 60546 (N.D. Ill. July 23, 2008)....................................8

Miner v. Clinton County, N.Y.,
  541 F.3d 464 (2d Cir. 2008).......................................................................................5

Modis v. Bardelli,
  531 F. Supp. 2d 314 (D. Conn. 2008).......................................................................7

NCMIC Finance Corp. v. Artino,
  638 F. Supp. 2d 1042 (S.D. Iowa 2009) ...................................................................9

North American Development, Inc. v. Shahbazi,
  No. 95-4803, 1996 U.S. Dist. LEXIS 7784 (S.D.N.Y. June 6, 1996) .....................16

Orbit One Communications, Inc. v. Numerex Corp.,
  692 F. Supp. 2d 373 (S.D.N.Y. 2010)................................................................10, 11

P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC,
  428 F.3d 504 (3d Cir. 2005)....................................................................................13

P.C. of Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, Inc.,
  No. 04-4554, 2007 U.S. Dist. LEXIS 15216 (D.N.J. Mar. 2, 2007).........................7

Pacific Aerospece & Electronics, Inc. v. Taylor,
  295 F. Supp. 2d 1188 (E.D. Wash. 1994) .............................................................6, 7

Purgess v. Sharrock,
  33 F.3d 134 (2d Cir. 1994)......................................................................................16

Reeves v. Sanderson Plumbing Products, Inc.,
  530 U.S. 133 (2000)..................................................................................................5

School of Visual Arts v. Kuprewicz,
  771 N.Y.S.2d 804 (N.Y. Sup. Ct. 2003) .................................................................15

Shurgard Storage Ctrs. v. Safeguard Self Storage,
  119 F. Supp. 2d 1121 (W.D. Wash. 2000).................................................11, 12, 13

Sledge v. Kooi,
  564 F.3d 105 (2d Cir. 2009).....................................................................................5

# TABLE OF AUTHORITIES
(continued)

**Page**

Tyco International v. Does,
   No. 01-3856, 2003 WL 23374767 (S.D.N.Y. Aug. 29, 2003)..................................................7, 8

United Mine Workers v. Gibbs,
   383 U.S. 715 (1966).........................................................................................................16

United States v. Middleton,
   231 F.3d 1207 (9th Cir. 2000) .........................................................................................6

United States v. Morris,
   928 F.2d 504 (2d Cir. 1991)............................................................................................11

United States v. Rodriguez,
   628 F.3d 1258 (11th Cir. 2010) .............................................................................11, 12, 13

ViChip Corp. v. Lee,
   438 F. Supp. 2d 1087 (N.D. Cal. 2006) ..........................................................................13

Vigilant Insurance Co. of America v. Housing Authority of City of El Paso, Tex.,
   660 N.E.2d 1121 (N.Y. 1995)..........................................................................................14

## STATUTES

18 U.S.C. § 1030 (a)(5)(B)(i)...............................................................................................6

18 U.S.C. § 1030(e)(6)..........................................................................................................9

18 U.S.C. § 1830  (e)(11)......................................................................................................6

## MISCELLANEOUS

Restatement (Second) of Torts § 217....................................................................................16

## I.   <u>INTRODUCTION</u>

Plaintiff Jeffrey Cohen ("Cohen") seeks summary judgment on Defendant Gerson Lehrman Group, Inc.'s ("GLG") counterclaims for (1) his violation of the Computer Fraud and Abuse Act ("CFAA"), (2) conversion, and (3) trespass to chattels, all based on Cohen's admitted "mass deletion" of data from GLG's computer systems.  (<u>See</u> Cohen's Motion for Summary Judgment on Defendants' Counterclaims ("Pl. Br."), at Dkt. No. 127.)

According to Cohen, the supposedly undisputed facts demonstrate that he was loyally complying with GLG's policies by intentionally engaging in a "mass deletion" of files on GLG's computer systems on the eve of his resignation and while knowing that he was about to sue the company.  To the contrary, there is, at a bare minimum, a dispute as to Cohen's intentions and whether his conduct exceeded the authorization granted to him by GLG's computer and network use policy.  Cohen also relies heavily on mere speculation that GLG ultimately recovered all of the files that he deleted, which speculation is not only insufficient to demonstrate the absence of a dispute but also objectively false according to the declaration submitted with this opposition. In addition to mischaracterizing the record, Cohen advances essentially the same legal arguments as in his motion to dismiss.  (Dkt. No. 55.)  Those arguments fail for the same reasons addressed in GLG's opposition to that motion.

For all these reasons, and as further explained below, GLG respectfully submits that the Court should deny Plaintiff's Motion and set a prompt trial date for GLG's counterclaims.

## II.     STATEMENT OF PERTINENT DISPUTED MATERIAL FACTS[1]

### A.     Cohen Has Not Established As An Undisputed Fact That GLG's Losses Did Not Exceed The CFAA's $5,000 Jurisdictional Threshold.

Cohen contends that GLG has not demonstrated that it sustained losses amounting to at least $5,000 as a result of his mass deletion.  (Pl. Br. at 8.)  This assertion ignores the substantial costs of GLG's internal investigation and the costs incurred when GLG contracted an outside vendor (Fios) to assist with its investigation.  See GLG's Opposition to Plaintiffs' 56.1 Statement ("Opp. Stmt."), filed herewith, ¶¶ 27-32, 37-38, 43.  GLG engaged in an extensive internal investigation in an effort to recover the files Cohen deleted, and also retained an outside expert to seek to recover files that could not be recovered by GLG.  (Id.)  GLG's internal and external costs associated with this investigation are detailed in its Supplemental Rule 26(a) Disclosures, at Filosa Decl. Ex. D.  As Cohen elected not to depose a representative of Fios to attempt to challenge the billing by Fios, or to depose any of the individuals other than David Wolff involved in GLG's investigation, or even question David Wolff about the calculation of losses associated with his own effort, he has absolutely no factual basis to challenge GLG's undisputed calculation of its losses.

### B.     Cohen Has Not Established As An Undisputed Fact That His Conduct Did Not Exceed His Authorized Access To GLG's Computer Systems.

Cohen asserts for the first time in his Motion that his "mass deletion" actually was an attempt to comply with GLG's policies.  (Pl. Br. at 12-17.)  This absurd *post hoc* rationalization for his conduct is entirely absent from Cohen's Answer to the Counterclaims (Dkt. No. 68), his

---

[1] GLG does not restate yet again in this brief all of the facts pertaining to Cohen's "mass deletion," which are set forth in GLG's Amended Answer and Counterclaims (Dkt. No. 52), GLG's Memorandum of Law in Opposition (Dkt. No. 58) to Cohen's failed Motion to Dismiss the Counterclaims (Dkt. No. 54), and paragraphs 341-361 (regarding Cohen's spoliation of evidence) of Defendant's Local Rule 56.1 Statement of Material Undisputed Facts in Support of its Motion for Summary Judgment ("GLG 56.1") filed herewith.

Motion to Dismiss (Dkt. No. 54), and, most notably, his sworn testimony regarding the "mass deletion" (Opp. Stmt. ¶¶ 14-20; GLG 56.1 ¶¶ 352-357).  In other words, there is no factual basis for this creation of Cohen's counsel.

Moreover, the record contradicts Cohen's latest theory.  GLG's "End User Computing" policy that Cohen now claims was the basis for his "mass deletion" (Pl's Br. at 15-17) is the same policy that Cohen testified he could not recall having read.  (Opp. Stmt. ¶ 25).  In fact, Cohen testified that he "never thought about" GLG's policies while engaging in what he called the "mass deletion."  (Id.)  In light of this testimony, to suggest that Cohen was acting based on a policy strains credulity.  At a minimum, whether Cohen was acting pursuant to a GLG policy, or instead with the purpose of limiting GLG's ability to defend his claims, is clearly disputed.

In addition, the "End User Computing" policy states that all company hardware, software and data "[are] the property of GLG and must be used for legitimate business use."  (Opp. Stmt. ¶¶ 14, 26; GLG 56.1 ¶¶ 342-344).  The policy expressly prohibits the destruction of such property.  (Id.)  Here, however, Cohen admits that he was deleting the files while knowing he was about to sue GLG and for the specific purpose of preventing the company from having access to the files.  (Opp. Stmt. ¶ 17; GLG 56.1 ¶¶ 342-360).  Thus, even if a jury were to accept Cohen's new theory that his "mass deletion" was pursuant to the "End User Computing" policy, there remains a dispute as to whether he exceeded his authorization with respect to GLG's computer system in light of these conflicting (accepting Cohen's position) provisions of the policy.

**C.     Cohen Has Not Established As An Undisputed Fact That He Did Not Use A Program Or Software To Accomplish His "Mass Deletion".**

Cohen acknowledges that his "mass deletion" included e-mails and computer files – such as .pdf files, Microsoft Word files, and possibly Microsoft Excel files – that he created during his employment by GLG.  (Pl's Br. at 4.)  Cohen asserts in the Motion for the first time that it is undisputed that he deleted these files without installing or using any deletion program or software.  (Id.)  However, Cohen's own testimony contradicts these claimed undisputed facts, as Cohen testified that he cannot recall how he performed the "mass deletion."  (Opp. Stmt. ¶¶16-17).  Moreover, whether Cohen used a program or software to delete the files is directly disputed by both the Declaration of David Wolff (Dkt. No. 60, the "Wolff Decl."), attached as Exhibit G to the Filosa Decl., ¶ 7, and the Declaration of Rudi Peck ("Peck Decl."), filed herewith, ¶¶ 3-4.  Thus, whether Cohen used a program or software to delete GLG's files, which Cohen contends is material to the disposition of GLG's CFAA counterclaim, is disputed as well.

**D.     Cohen Has Not Established As An Undisputed Fact That GLG Recovered All Of The Files That He Deleted.**

Cohen contends that GLG was not permanently dispossessed of its property by his actions because (1) the files he deleted were restored, and (2) the files belonged to him.  These assertions completely disregard both the plain language of GLG's "End User Computing" policy and Cohen's own testimony.

First, Cohen's assertion that GLG recovered all of the files he deleted (Pl's Br. at 19-20) is not supported by any evidence.  To the contrary, the Declaration of David Wolff confirms that GLG's internal investigation could not recover many of the deleted files.  (Wolff Decl., ¶¶ 5-6).  The Declaration of Rudi Peck, filed herewith, confirms that even Fios was unable to recover many of those remaining files.  (Peck Decl. ¶ 5).

Second, contrary to Plaintiff's assertion that the files were his personal property, his testimony acknowledged that all of the files on GLG's computer systems were its property, as set forth in the "End-User Computing" policy.  (Opp. Stmt. ¶ 14; GLG 56.1 ¶ 344).  And if there were any doubt remaining, Plaintiff conceded at this deposition that the deleted files included Cohen's working files for GLG.  (GLG 56.1 ¶¶ 355-356).

In sum, both of these facts that Cohen contends are material to all of GLG's counterclaims are disputed and, therefore, the counterclaims cannot be resolved as a matter of law at this stage.

## III.    ARGUMENT

### A.    Cohen Bears The Burden of Demonstrating That No Material Facts Are Genuinely Disputed.

Summary judgment is appropriate only if there is no genuine dispute as to any of the facts material to each of the counterclaims.  See Lumbermen's Mut. Cas. Co. v. RGIS Inventory Specialists, LLC, 628 F.3d 46, 51 (2d Cir. 2010).  As the moving party, Cohen bears the burden of demonstrating that no such disputes exist.  See Miner v. Clinton County, N.Y., 541 F.3d 464, 471 (2d Cir. 2008).  In determining whether a genuine dispute exists, the Court must construe the evidence in the light most favorable to GLG and "drawing all reasonable inferences in [GLG's] favor."  Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009).  Further, the Court "may not make credibility determinations or weigh the evidence" at this stage, as its role is to determine whether disputed issues of fact exist, not to decide those disputes.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  Despite these standards, Cohen's Motion ignores obvious disputes as to many material facts – including those created by his own testimony – and asks the Court to make determinations as a matter of law as to his credibility and intent, which are classic issues for resolution by a jury.

**B.    Cohen Is Not Entitled To Summary Judgment On The CFAA Claim.**

    **1.    A Reasonable Jury Could Conclude That The CFAA's $5,000 Jurisdictional Threshold Is Satisfied.**

Under the civil action provision of the CFAA,[2] jurisdiction is established if a party can demonstrate loss "to 1 or more persons during any one-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030 (a)(5)(B)(i).  Thus, to succeed on the merits of a CFAA claim, GLG must plead and prove damage or loss of at least $5,000 attributable to Cohen's conduct, which it will establish at trial.

Cohen asserts that the $7,207.13 in losses claimed by GLG includes amounts that are not recoverable under the CFAA.  (Pl's Br. at 8-12).  To the contrary, as detailed in its Rule 26(a) Disclosures (Opp. Stmt., Ex. A), GLG identifies as losses only the value of the damaged property, the cost of its internal investigation, and the costs incurred when GLG contracted Fios to assist with the investigation.  Such remedies fall squarely with the CFAA's definition of damage or loss.  See 18 U.S.C. § 1830 (e)(11) (including both a damages assessment and an effort to restore data as a recoverable "loss" under the CFAA); United States v. Middleton, 231 F.3d 1207, 1213-14 (9th Cir. 2000) (confirming that losses recoverable under the CFAA include the costs of efforts "reasonably necessary to restore the data, program, system, or information").

---

[2] Cohen's characterization of the CFAA is completely inapposite to the well documented history of the statute.  Since its enactment in 1984, Congress has continuously broadened the scope of the CFAA. Pacific Aerospece & Electronics, Inc. v. Taylor, 295 F. Supp. 2d 1188, 1194 (E.D. Wash. 1994).  In its 1994 amendments, the statute allowed any person injured by a violation of the statute to bring "a civil action against the violator to obtain compensatory damages and relief."  Id.  Contrary to Plaintiff's assertion that the statute is applicable to a narrow category of circumstances, Congress has substantially expanded the scope of the CFAA both in terms of who may file suit and who is protected.  Courts have recognized the broad application of the CFAA to claims by an employer for employee misuse of company computers, data and networks.  See EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 582-84 (1st. Cir. 2001) (involving issue of employee's authorized access when he acted in violation of his confidentiality agreement); Lasco Foods, Inc. v. Hall & Shaw Sales Mktg & Consulting, LLC, No. 08-1683, 2009 U.S. Dist. LEXIS 99535, at *7-16 (E.D. Mo. Oct. 26, 2009) (recognizing the CFAA's expansion to protect employers from the actions of disgruntled employees).

See also generally Pacifica Aerospace & Electronics, 295 F. Supp .2d at 1194-97 (discussing history of the CFAA, its increasing use in cases involving former employees, and the broad nature of damages that qualify as losses under the statute).  Applying the plain language of the statute, courts have recognized a plaintiff's right to recover the costs of investigating and taking remedial steps in response to conduct that violates the CFAA.  See, e.g., Modis v. Bardelli, 531 F.Supp. 2d 314, 320 (D. Conn. 2008) (explaining that the costs of responding to the offense are recoverable regardless of whether there is an interruption in service); P.C. of Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, Inc., No. 04-4554, 2007 U.S. Dist. LEXIS 15216, at *14 (D.N.J. Mar. 2, 2007) (concluding that recoverable losses include the reasonable costs of assessing damages and restoring data).  Here, as set forth in its Supplemental 26(a) Disclosures, GLG seeks to recover the losses it incurred in assessing the extent of Cohen's mass deletion and attempting to recover the files he admittedly deleted.  Cohen does not even attempt to demonstrate, because he cannot, that GLG's claimed losses are unreasonable as a matter of law.

Finally, Cohen erroneously relies on Tyco Int'l v. Does, No. 01-3856, 2003 WL 23374767 (S.D.N.Y. Aug. 29, 2003), in an attempt to narrow the scope of losses recoverable under the CFAA.  In Tyco, the plaintiff's claimed losses were entirely different than those at issue here.  Tyco's e-mail server was overloaded by a spam attack causing the server to send or receive more than 33,000 e-mail messages over a short period of time.  Id. at *1.  The attack was unsuccessful, but Tyco spent approximately $136,000 trying to determine what happened and the source of the attack.  Id.  Tyco argued that the company was entitled to the costs of paying an investigator to locate the identity of the spammer.  Id. at *3-4.  The court disagreed and ruled that determining the identity of the spammer was not a foreseeable, compensable damage for which the company could be reimbursed.  Id. at *3.  No such damages are at issue here.  As discussed

above, the CFAA allows for the recovery of the losses claimed by GLG and, therefore, summary

judgment is inappropriate.

>2.      **A Reasonable Jury Could Conclude That Cohen Exceeded His Authorized Access To GLG's Computer Systems Or Was Not Authorized To Access Them To Perform A "Mass Deletion."**

In applying the CFAA, whether access was "without authorization" or "exceeded

authorization" is an issue of fact.  See MPC Containment Sys. v. Moreland, No. 05-6973, 2008

U.S. Dist. LEXIS 60546, at *50-51 (N.D. Ill. July 23, 2008).  Indeed, this Court and several

others have concluded that an employee may act "without authorization" or "in excess of

authorized access" by accessing files on an employer's computer system that the employee

generally would have permission to access but are accessed in a manner that is inconsistent with

the employer's interests or in violation of an employee's duties to his employer.  See, e.g.,

Calyon v. Mizuho Secs. USA, Inc., No. 07-2214, 2007 WL 2618658, *1 (S.D.N.Y. July 24,

2007) ("[T]he plain language of the statute seems to contemplate that, whatever else, 'without

access' and 'exceeds authorized access' would include an employee who is accessing documents

on a computer system which that employee had to know was in contravention of the wishes and

interests of his employer."); EF Cultural Travel, 274 F.3d at 582-84 (ruling that employee

exceeded access when he acted in violation of his confidentiality agreement); Lasco Foods, 2009

U.S. Dist. LEXIS 99535, at *7-16 (identifying line of authority in which the CFAA has been

applied to actions of disgruntled or terminated employees at or around the time of termination);

Ervin & Smith Adver. & Pub. Relations. v. Ervin, No. 08-459, 2009 U.S. Dist. LEXIS 8096, at

*22-23 (D. Neb. Feb. 3, 2009) (observing that "many courts have interpreted § 1030(a)(4) [of the

CFAA] to permit an employer's claim against an employee who accesses information he is

ordinarily authorized to access").

### a.   A Reasonable Jury Could Conclude That Cohen Exceeded His Access.

The CFAA permits a civil claim against an individual who "exceeds authorized access" to a computer system.  18 U.S.C. § 1030(e)(6).  Where there is a an agreement or policy governing an employee's use of information on that system, actions inconsistent with the terms of the agreement or policy demonstrate that the employee's actions exceeded authorized access. See, e.g., EF Cultral Travel, 274 F.3d at 582; NCMIC Fin. Corp. v. Artino, 638 F. Supp. 2d 1042, 1061 (S.D. Iowa 2009) (concluding that liability for exceeding access can be based on an employee's violation of a computer usage policy); Frees Inc. v. McMillian, No. 05-1979, 2007 U.S. Dist. LEXIS 57211 (W.D. La. Aug. 6, 2007) (recognizing damages available under CFAA where employee exceeds authorized access pursuant to an agreement with employer).

Here, Cohen received and was bound by GLG's "End-User Computing" policy, which he acknowledges was the basis for him to have any access to GLG's computer systems, protects all files on the systems as GLG's property, and prohibits the destruction of GLG's property.  (Opp. Stmt. ¶¶ 14, 17, 25, 26).  Moreover, Cohen's confidentiality agreement with GLG required him to preserve and return all of GLG's property upon the conclusion of his employment:

> [a]ll documents, records, notebooks, files, memoranda, data, reports, price lists, customer lists, plans and other documents that Employee uses, prepares or comes into contact with during the course of or in connection with Employee's service to GLG or belonging to GLG (including copies or reproductions thereof in Employee's possession or control), whether or not prepared by Employee and whether prepared by Employee or solely or jointly with others, will be left with or immediately returned to GLG and will at all times be the property of GLG.

(GLG 56.1 ¶ 342).  Nevertheless, shortly before leaving GLG and while admittedly preparing to sue the company, Cohen intentionally performed a "mass deletion" of GLG's computer files, and did so without consideration of GLG's policies and without making any effort to preserve work

files that plainly belonged to GLG.  (GLG 56.1 ¶¶ 352-357).  As discussed above, although

Cohen's counsel now contends that Cohen's conduct was in fact authorized and pursuant to

GLG's policies, Cohen's own testimony is that he "never thought about" the company's policies.

(Opp. Stmt. ¶ 25).  Under these circumstances, there is at a minimum a dispute as to whether

Cohen's actions exceeded his authorized access.

### b.    A Reasonable Jury Could Conclude That Cohen's Access Was Unauthorized.

As an alternative to the arguments above as to whether Cohen "exceeded authorized

access" by deleting GLG's files, the CFAA claim may be premised on the disputed facts as to

whether Cohen's access was "unauthorized."  As the CFAA does not define "without

authorization," courts (in the decisions discussed below) have turned to a consideration of duties

owed by employees to their employers to assess whether conduct was "without authorization."

Yet, Cohen ignores this authority in making the unequivocal and illogical assertion that once an

employer allows an employee *any* access to its computer systems, even if that access is granted

only pursuant to and then limited by the employer's computer use policies, there can be no

violation of the CFAA if an employee abuses that access to harm the employer.  (Pl's Br. at 17.)

The authority contrary to Cohen's position is even recognized in a decision by Cohen.  See Orbit

One Communications, Inc. v. Numerex Corp., 692 F.Supp. 2d 373, 385 (S.D.N.Y. 2010)

("Courts have interpreted the CFAA's prohibitions of 'access without authorization' and

'exceed[ing] authorized access' in two different ways.").

Decisions by this Court and two Courts of Appeal have concluded that an employee's

authorization to access an employer's computer systems terminates when the employees decides

to abuse that access in violation of the employee's duty of loyalty to the employer.  See Int'l

Airport Ctrs., LLC v. Citrin, 440 F.3d 418, 420-21 (7th Cir. 2006); EF Cultural Travel, 274 F.3d

at 582-84; Calyon, 2007 WL 2618658, at *1.  In International Airport Centers, the defendant

deleted files that incriminated him and other files that were the property of his employer from his

work-issued laptop computer.  440 F.3d at 419-22.  The court held that the plaintiff employer

stated a claim under the CFAA because the defendant employee acted without authorization

when he deleted the data from his computer.  Id. at 420-21.  According to the Seventh Circuit,

"Citrin's breach of his duty of loyalty terminated his agency relationship (more precisely,

terminated any rights he might have claimed as IAC's agent – he could not by unilaterally

terminating any duties he owed his principal [to] gain an advantage) and with it his authority to

access the laptop, because the only basis of his authority had been that relationship."  Id.

      Here, Cohen deleted GLG's files contrary to its policies that granted him authorization to

use GLG's computer systems and without GLG's knowledge or permission.  Moreover, it is at

least disputed as to whether he did so contrary to GLG's interests and in an effort to gain a

perceived tactical advantage over GLG, as his deletion was on the eve of his separation from

GLG and planned lawsuit against GLG and was intended to prevent GLG from accessing the

files once he was gone.  (Opp. Stmt. ¶ 17; GLG 56.1 ¶¶ 342-360).  Under these circumstances,

where it is at least disputed whether Cohen acted consistent with the policy governing his use of

GLG's computer systems, he cannot use that policy granting access as a shield to claim that his

actions were not "without authorization" as a matter of law.  Shurgard Storage Ctrs. v. Safeguard

Self Storage, 119 F. Supp. 2d 1121, 1124-25 (W.D. Wash. 2000) (citing United States v. Morris,

928 F.2d 504 (2d Cir. 1991) (holding that a computer user who had generally authorized access

to a computer and its programs nevertheless was without authorization to use the programs in an

unauthorized way)).

Finally, even under the alternative interpretation of "authorization" applied by some courts, the recent decision in United States v. Rodriguez, 628 F.3d 1258 (11th Cir. 2010), distinguishes the exceedingly narrow interpretation in one decision relied upon by Cohen, LVRC Holdings v. Brekka, 581 F.3d 1127, 1135 (9th Cir. 2009).  In Rodriguez, the court ruled that a Social Security Administration employee violated the CFAA when he searched its databases for the personal information of his friends and relatives.  2010 628 F.3d at 1260 .  The Eleventh Circuit distinguished LVRC Holdings – which held that an employee did not violate the CFAA when he sent documents that he was authorized to access to his personal e-mail account – because the Social Security Administration had a policy that prohibited employees from obtaining personal information "for non-business purposes."  Id. at *4.  In other words, because the Social Security Administration's policies limited the extent of authorized access, the defendant in Rodriguez acted "without authorization" even under the more limited interpretation of "authorization" because the nature of his access was not permitted.  Similarly, GLG's policy limited the access granted to Cohen, and the parties dispute whether Cohen's conduct was contrary to requirements of the policy.  Thus, even if this Court were to adopt Cohen's narrow interpretation of "authorization," summary judgment would be inappropriate.

> **3.     The CFAA Does Not Require The Use Of A Program Or Software,
> And In Any Event A Reasonable Jury Could Conclude That Cohen
> Used A Program Or Software To Delete Files.**

Cohen contends that the CFAA cannot apply to his conduct unless the "transmission" that led to the deletion of GLG's files involved the use of a special program or software.[3]  (Pl's Br. at 9.)  Cohen further asserts that it is undisputed that he deleted the files on GLG's computer systems without installing or using any special deletion software.  (Pl's Br. at 4.)  To the contrary, based on Cohen's own testimony that he cannot recall how he accomplished the "mass deletion" and the reports by GLG's internal and external investigators indicating that a data destruction or "wiping" program or software was in fact used, this fact identified as material by Cohen is plainly disputed and thus summary judgment is inappropriate.

In addition, courts have recognized that even unauthorized deletion without the aid of a program or software can satisfy the requirements for a cause of action under the CFAA.  See, e.g., ViChip Corp. v. Lee, 438 F. Supp. 2d 1087 (N.D. Cal. 2006) (granting summary judgment in favor of employer where employee deleted all files from his computer without use of a program on the day before his termination).  See also Int'l Airport Ctrs., LLC, 440 F.3d at 419-20 (declining to dismiss plaintiff's claims where investigation suggested that a program was used for mass deletion but it was not clear whether or how it was used).  Summary judgment on the CFAA claim is inappropriate for this additional reason.

---

[3] Cohen also suggests in this section of his brief that the CFAA only applies to the actions of "spammers" or "hackers," which ignores a long line of contrary authority.  See, e.g., Int'l Airport Ctrs., 440 F.3d at 420-21 (CFAA claim by employer against employee who personally deleted data from his computer); P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC, 428 F.3d 504, 510 (3d Cir. 2005) (involving allegations that a former employee personally downloaded files and opened a competing company in violation of the CFAA); Shurgard, 119 F. Supp. 2d at 1121 (denying defendant's motion to dismiss CFAA claims in a case involving employee's alleged use of employer's computer to misappropriate trade secrets).

## C.     Cohen Is Not Entitled To Summary Judgment On The Conversion Counterclaim.

Relying on essentially the same arguments addressed above, Cohen contends that GLG has no claim for conversion, as a matter of law, because it is supposedly undisputed that (1) he had authority to exercise control over the deleted files, and (2) his deletion of the files was pursuant to GLG's policy.  (Pl's Br. at 18-20.)

Conversion has been defined as the unauthorized assumption and exercise of a right of ownership over goods belonging to another to the exclusion of the owner's rights.  <u>Vigilant Ins. Co. of America v. Housing Authority of City of El Paso, Tex.</u>, 660 N.E.2d 1121 (N.Y. 1995). Conversion also has been defined as any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with that person's rights in the property, or as any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.  <u>Hart v. City of Albany</u>, 272 A.D.2d 668 (N.Y. 2000); <u>Kranz v. Town of Tusten</u>, 236 A.D.2d 675 (N.Y. App. Div. 3d Dep't 1997).

Under either definition, the parties clearly dispute (1) the ownership of the deleted files, (2) whether Cohen was authorized to access and delete some or all of those files, and (3) whether Cohen was acting pursuant to a GLG policy in deleting the files.  (<u>See</u> <u>supra</u> at 2-12).  In light of these genuine disputes as to facts that Cohen identifies as material, summary judgment is inappropriate as to the conversion counterclaim.

GLG does not dispute Cohen's final argument as to the conversion counterclaim that "an essential element of conversion is that the owner of the property is excluded from use thereof." (Pl's Br. at 19 (quoting <u>State v. Seventh Regiment Fund, Inc.</u>, 98 N.Y.2d 249, 259-60 (2002)). However, Cohen has no factual basis to assert that GLG's was excluded from its use of the

deleted files because, Cohen speculates, it ultimately recovered all of those files.  To the contrary, it is at a minimum disputed whether GLG was able to recover all of the deleted files. Thus, summary judgment on the conversion counterclaim is inappropriate for this additional reason.

>    **D.      Cohen Is Not Entitled To Summary Judgment On The Trespass To Chattels Counterclaim.**

Cohen advances essentially the same factual contentions discussed above as to the conversion counterclaim to also seek summary judgment on the trespass to chattel counterclaim. (Pl's Br. at 20-22.)

An individual may be liable for a trespass to chattel if he or she intentionally dispossesses another of the chattel or uses or intermeddles with a chattel in another's possession.  Restatement (Second) of Torts § 217; Hecht v. Components Int'l, Inc., 867 N.Y.S.2d 889, 897-98 (N.Y. Sup. Ct. 2008).  Liability will attach if the owner is dispossessed of the chattel, the chattel is impaired as to condition, quality or value, or the possessor is deprived of the use of the chattel for a substantial time.  Restatement [Second] of Torts § 218; Hecht, 867 N.Y.S.2d at 898.  Courts have not hesitated to apply this common law theory to data stored on a computer system.  See, e.g., Elektra Entm't Group, Inc. v. Santangelo, No. 06. Civ. 11520, 2008 U.S. Dist. LEXIS 76510, at *6 (S.D.N.Y. Oct. 1, 2008); Davidoff v. Davidoff, 819 N.Y.S.2d 209 (N.Y. Sup. Ct. 2006); School of Visual Arts v. Kuprewicz, 771 N.Y.S.2d 804 (N.Y. Sup. Ct. 2003).

As discussed above, the parties clearly dispute (1) the ownership of the deleted files, (2) whether Cohen was authorized to access and delete some or all of those files, (3) whether Cohen was acting pursuant to a GLG policy in deleting the files, and (4) whether GLG was permanently deprived of the deleted files.  Moreover, even if Cohen were correct that GLG was not permanently disposed of some of the deleted files, which he is not, at a minimum there is a

dispute as to whether GLG was dispossessed of those files for a substantial time after his separation from GLG on April 24, 2009 (Compl. ¶ 10) and during investigation and recovery efforts by GLG and Fios thereafter.  In light of these genuine disputes as to facts that Cohen identifies as material, summary judgment is also inappropriate as to the trespass to chattel counterclaim.

> ### E.   The Court Should Continue To Exercise Jurisdiction Over GLG's State Law Counterclaims.

Based on his request for summary judgment as to the CFAA claim, Cohen contends that the common law claims should be dismissed for lack of jurisdiction.  In the event that the Court declines to dismiss the CFAA claim, which would be proper for the reasons set forth above, then this argument clearly fails.  Moreover, even if the CFAA claim were dismissed, which it should not be, this Court properly should exercise its discretion to continue to assert supplemental jurisdiction over the common law claims.

Supplemental jurisdiction is a doctrine of discretion.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  In determining whether to decline jurisdiction, a court should "weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants."  Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994).  Ordinarily, when all federal claims in a suit are dismissed *early* in the litigation, a federal court is more likely to exercise its discretion to dismiss or remand state law claims.  Id. at 138.  Under those circumstances, the federal court has "invested little time and has minimal familiarity with the particularities of [the] case."  North American Development, Inc. v. Shahbazi, No. 95-4803, 1996 U.S. Dist. LEXIS 7784, at *8 (S.D.N.Y. June 6, 1996).  See also ABF Capital Management v. Askin Capital Management, L.P., 957 F. Supp. 1308, 1322-23 (S.D.N.Y. 1997).

Here, in contrast, the Court has acquired familiarity with GLG's counterclaims over the course of more than a year, including via letter briefing on the amendment of GLG's Answer to advance its counterclaims, briefing of a motion to dismiss the claims, letter briefing over discovery disputes relating to the counterclaims, and briefing of the instant Motion.  Thus, interests of judicial economy weigh in favor of this Court retaining jurisdiction over the claims. Moreover, if any of Cohen's claims against GLG survive GLG's pending motion for summary judgment as to those claims, which they should not, it would serve the interests of the parties and judicial economy to have all disputes between GLG and Cohen litigated in a single trial.  For all these reasons, the Court should retain jurisdiction over GLG's state law counterclaims even if the Court were to dismiss the CFAA counterclaim.

## IV.   **CONCLUSION**

For the above reasons, GLG respectfully requests that the Court deny Cohen's Motion for Summary Judgment regarding its CFAA and common law counterclaims.

Dated:  March 11, 2011
New York, New York                          Respectfully submitted,

BY:   /s/ Michael J. Puma
Andrew J. Schaffran (AS-1236)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma (MP-5573)
Blair J. Robinson (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963-5001 (fax)

Counsel for Defendant
Gerson Lehrman Group, Inc.