**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY COHEN, on behalf of himself and on behalf of all similarly situated employees,<br><br>                Plaintiff,<br><br>     v.<br><br>GERSON LEHRMAN GROUP, INC.,<br><br>                Defendant. | Civil Action No.<br>09-CV-04352 (PKC) |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ON LIABILITY AND IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Andrew J. Schaffran
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma
Blair J. Robinson (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963-5001 (fax)

Counsel for Defendant
Gerson Lehrman Group, Inc.

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   SUMMARY OF MATERIAL, UNDISPUTED FACTS ................................. 3

    A.    GLG Provides Research Solutions Through Its Council Members ...................... 3

    B.    Plaintiffs Advised GLG's Clients As To Products And Council Members .......... 4

    C.    Plaintiffs Promoted and Marketed GLG's Services.............................................. 4

    D.    Plaintiffs Performed Compliance Duties ............................................................. 5

    E.    Plaintiffs' Primary Duties Involved The Exercise Of Discretion and Judgment With Respect To Matters Of Significance. ........................................... 5

III.  WHETHER PLAINTIFFS WERE PROPERLY CLASSIFIED AS EXEMPT WHILE EMPLOYED AS RESEARCH ASSOCIATES IS AN ISSUE OF LAW FOR THE COURT TO DECIDE. ...................................................... 6

IV.  GLG IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS WERE EXEMPT UNDER THE ADMINISTRATIVE EXEMPTION. .......................... 6

    A.    Plaintiffs Were Paid On A Salaried Basis At A Rate Of Over $455 Per Week. ..................................................................................................................... 7

    B.    Plaintiffs Had A Primary Duty To Perform Work Directly Related To The Management Or General Business Operations Of GLG And/Or Its Clients. ........ 7

        1.    Plaintiffs' Primary Duties Included Advisory Responsibilities That Were Vital To Both GLG's Strategy And Its Clients' Research. .............. 8

        2.    Plaintiffs' Primary Duties Included Promoting And Marketing GLG's Services To Clients, Which Was Critical To GLG's Strategy. ..................................................................................................... 10

        3.    Plaintiffs' Primary Duties Included Compliance Functions That Were Vital To GLG's Business And Its Clients' Interests. ..................... 11

        4.    The Administrative/Production Dichotomy Also Demonstrates That Plaintiffs Satisfied The Administrative Exemption......................... 12

    C.    Plaintiffs' Primary Duties Included The Exercise Of Independent Judgment And Discretion With Respect To Matters Of Significance................ 15

        1.    Plaintiffs Exercised Discretion and Independent Judgment .................... 15

        2.    Plaintiffs' Discretion and Independent Judgment Was Exercised With Respect To Matters Of Significance. ............................................. 18

    D.    GLG's "Reclassification" Of Certain Employees Other Than Plaintiffs Does Not Alter The Outcome Of The Parties' Cross-Motions........................... 21

V.   COHEN'S CLAIMS ALSO SHOULD BE DISMISSED AS A SANCTION FOR HIS SPOLIATION OF EVIDENCE. ................................................ 24

VI.  CONCLUSION.............................................................................................. 25

-i-

# TABLE OF AUTHORITIES

**Page**

## CASES

Abel v. Department of Correctional of Kansas,
No. 93-4070, 1995 WL 106535 (D. Kan. Jan. 12, 1995)..........................................................22

Amendola v. Bristol-Myers Squibb Co.,
558 F. Supp. 2d 459 (S.D.N.Y. 2008)........................................................................10, 11, 18

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)..............................................................................................................23

Beers v. Gen. Motors Corp.,
No. 97-cv-482, 1999 WL 325378 (N.D.N.Y. May 17, 1999) .................................................24

Bobal v. Rensselaer Polytechnic Institute,
916 F.2d 759 (2d Cir. 1990)..................................................................................................24

Cann v. Ford Motor Co.,
658 F.2d 54 (2d Cir. 1981)....................................................................................................22

Carda v. E.H. Oftedal & Sons, Inc.,
No. 04-5036, 2005 U.S. Dist. LEXIS 26375 (D.S.D. Mar. 23, 2005)....................................22

Castro v. Metropolitan Trans. Authority,
No. 04-1445, 2006 WL 1418585 (S.D.N.Y. May 23, 2006) ..................................................21

Chambers v. NASCO, Inc.,
501 U.S. 32 (1991)................................................................................................................24

Clarke v. JPMorgan Chase Bank, N.A.,
No. 08 Civ. 2400, 2010 U.S. Dist. LEXIS 33264 (S.D.N.Y. Mar. 26, 2010).........................23

Cooke v. General Dynamics Corp., Electric Boat Division,
993 F. Supp. 56 (D. Conn. 1997)..........................................................................................24

Darveau v. Detecon, Inc.,
515 F.3d 334 (4th Cir. 2008) ................................................................................................11

Davis v. J.P. Morgan Chase & Co.,
587 F.3d 529 (2d Cir. 2009)..................................................................1, 12, 13, 18

Dennis v. County of Fairfax,
55 F.3d 151 (4th Cir. 1995) ..................................................................................................23

## TABLE OF AUTHORITIES
(continued)

**Page**

Diaz v. Electronics Boutique of Am., Inc.,
  No. 04-CV-0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005)........................................24

Dymond v. U.S. Postal Serv.,
  670 F.2d 93 (8th Cir. 1982) ....................................................................................15

Haywood v. N. America Van Lines, Inc.,
  121 F.3d 1066 (7th Cir. 1997) ................................................................................16

Heffelfinger v. EDS Corp.,
  580 F. Supp. 2d 933 (C.D. Cal. 2008) ....................................................................21

Hein v. PNC Finance Services Grp., Inc.,
  511 F. Supp. 2d 563 (E.D. Pa. 2007) ......................................................................9

Hogan v. Allstate Insurance Co.,
  361 F.3d 621 (11th Cir. 2004) ............................................................................9, 17

Icicle Seafoods, Inc. v. Worthington,
  475 U.S. 709 (1986)..................................................................................................6

Liger v. New Orleans Hornets NBA Ltd. Partnership,
  No. 05-1969, 2008 WL 348800 (E.D. La. Feb. 6, 2008)........................................23

Lutz v. Ameritech Corp.,
  208 F.3d 214 (6th Cir. 2000) .............................................................................18, 19

McAllister v. Transamerica Occidental Life Insurance Co.,
  325 F.3d 997 (8th Cir. 2002) ..................................................................................12

Mike v. Safeco,
  274 F. Supp. 2d 216 (D. Conn. 2003) .....................................................................23

In re Novartis Wage & Hour Litigation,
  611 F.3d 141 (2d Cir. 2010)...............................................................................18, 19

Paul v. UPMC Health System,
  No. 06-1565, 2009 WL 699943 (W.D. Pa. Mar. 10, 2009) ....................................12

Peck v. Hudson City School District,
  100 F. Supp. 2d 118 (N.D.N.Y. 2000) ....................................................................22

## TABLE OF AUTHORITIES
(continued)

Page

Piscione v. Ernst & Young, L.L.P.,
    171 F.3d 527 (7th Cir. 1999) ....................................................................9, 15, 18

Reich v. Haemonetics Corp.,
    907 F. Supp. 512 (D. Mass. 1995) ......................................................................16

Reich v. John Alden Life Insurance Co.,
    126 F.3d 1 (1st Cir. 1997).................................................................10, 11, 18, 20

Savage v. UNITE HERE,
    No. 05-cv-10812, 2008 WL 1790402 (S.D.N.Y. Apr. 17, 2008) ....................11, 12

Schwind v. EW & Associates,
    357 F. Supp. 2d 691 (S.D.N.Y. 2005)..................................................................11

Stahl v. Bd. of County Comm'rs.,
    101 F. App'x 316 (10th Cir. 2004)......................................................................23

## REGULATIONS

29 C.F.R. § 541.200 et seq...................................................................................6

29 C.F.R. § 541.201 .........................................................................7, 8, 10, 11

29 C.F.R. § 541.202.......................................................................................15, 17, 18

29 C.F.R. § 541.203(b) ....................................................................................8, 10

29 C.F.R. § 541.207(a)........................................................................................15

12 N.Y.C.R.R. 142-2.2 .........................................................................................6

## RULES

Fed. R. Evid. 407 ...................................................................................................22

## MISCELLANEOUS

69 Fed. Reg. 22122, 22142 (Apr. 23, 2004) .......................................................16

Moore's Fed. Practice 3d § 34.16[4]....................................................................24

Preamble to 2004 Regulations, Defining and Delimiting the Exemption for Executive,
    Administrative, Professional and Outside Sales and Computer Employees, 69 Fed.
    Reg. 22122-01 (Apr. 23, 2004)...................................................................10

-iv-

## I. __PRELIMINARY STATEMENT__

Defendant Gerson Lehrman Group ("GLG") submits this Memorandum of Law in support of its Motion for Summary Judgment and in opposition to the Cross-Motion for Summary Judgment of Plaintiffs Jeffrey Cohen ("Cohen"), Matthew Ronen ("Ronen") and Ashleigh Baldwin ("Baldwin") (collectively, "Plaintiffs").  Plaintiffs worked for GLG as Research Associates during the time period pertinent to this action.  Plaintiffs allege that GLG misclassified them as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and, for Plaintiffs Cohen and Ronen, the New York Labor Law ("NYLL").  See Complaint ("Compl.") ¶¶ 60-73).  Plaintiff Cohen also purports to assert class and collective action claims on behalf of allegedly similarly situated Research Associates, but the Cross-Motions pertain only to Plaintiffs' individual claims.

By cross-moving for summary judgment, Plaintiffs concede that their claims may be resolved as a matter of law.  As set forth below, Plaintiffs' motion should be denied and, instead, GLG is entitled to summary judgment on Plaintiffs' claims because Plaintiffs, by their own admissions at their respective depositions and in documents that they created or confirmed as accurate, satisfy the requirements for the administrative exemption to the FLSA:  (1) Plaintiffs were paid on a salary basis at a rate of at least $455 per week; (2) Plaintiffs had a primary duty to perform office or non-manual work directly related to the management or general business operations of GLG or GLG's clients; and (3) that duty included the exercise of discretion and independent judgment with respect to matters of significance.  (See infra at 6-21).

Plaintiffs' Motion does not dispute that they satisfy the salary basis test.  Rather, their Motion focuses on the second and third prongs of the administrative exemption, and is premised on flawed interpretations of the Second Circuit's decisions in Davis v. J.P. Morgan Chase & Co., 587 F.3d 529 (2d Cir. 2009), and In re Novartis Wage & Hour Litig., 611 F.3d 141 (2d Cir.

1

2010).  Briefly stated, Plaintiffs contend that they did not qualify for the administrative

exemption because they "produced" projects for GLG's clients and their job duties did not

pertain to matters of significance.

Despite Plaintiffs' mischaracterization of <u>Davis</u> and <u>Novartis</u> and their job duties in their

Motion, the undisputed record evidence demonstrates that Plaintiffs were administrative rather

than production workers, and that their duties involved the exercise of discretion and

independent judgment on matters of significance.  Indeed, Plaintiffs considered themselves to be

"trusted advisors" and "thought partners" for the clients that they worked with, which included

some of the world's most sophisticated investors at leading hedge funds, private equity and

venture capital firms, and investment banks.  Far from working as "liasons" who merely

"produced" research projects, as Plaintiffs suggest in their Motion, Plaintiffs' primary duties

involved the following activities that were directly related and vital to the management and

general business operations of GLG and its clients:

- analyzing the needs of GLG's clients and doing research and advising GLG's clients as to which GLG product(s) and Council Member(s) would best suit their needs on proposed research projects;

- promoting and marketing GLG's services to support the efforts of GLG's sales personnel;

- performing compliance functions that mitigated substantial risk for GLG and its clients; and

- regularly exercising discretion and independent judgment with respect to matters of significance.

Accordingly, Plaintiffs' Motion should be denied, GLG's Motion should be granted, and

Plaintiffs' claims should be dismissed, with prejudice.

## II.    SUMMARY OF MATERIAL, UNDISPUTED FACTS

This section briefly summarizes the material, undisputed facts pertinent to Plaintiffs'
claims.  A detailed recitation of such facts is set forth in Defendant's Local Rule 56.1 Statement
of Undisputed Material Facts supporting its Motion for Summary Judgment ("GLG 56.1") and
Defendant's Opposition to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts
supporting their Motion for Summary Judgment ("56.1 Opp."), both filed herewith.

### A.    GLG Provides Research Solutions Through Its Council Members.

GLG provides expert research to clients in the financial services industry and various
other industries through a network of over 250,000 subject matter experts known as GLG
"Council Members" who provide outside consulting services to these clients.  (GLG 56.1 ¶¶ 2, 3,
7).  GLG's Council Members include former CEOs and government officials, economists,
physicians, scientists, engineers and academics who serve as paid consultants to GLG's clients.
(Id. at ¶ 5).  GLG's clients include hedge funds, private equity and venture capital firms, and
investment banks.  (Id. at ¶¶ 96, 116).

GLG's clients typically pay for Council Members' services through a subscription fee,
the amount of which varies based on the services requested.  (Id. at ¶¶ 10-12).  GLG offers its
clients phone consultations with Council Members, as well as more complex services such as
live meetings, surveys, market studies and customized research reports.  (Id. at ¶ 14).

GLG has distinct "Sales" and "Product" departments.  GLG's Sales Department is
responsible for selling subscriptions to clients.  (Id. at ¶¶ 141, 156, 168).  GLG's Product
Department is responsible for designing GLG's proprietary products offered to clients, such as
its survey tool and its "RMP" platform that clients may use to search for Council Members.  (Id.
at ¶¶ 314, 319).

At times pertinent to this lawsuit, GLG employed Research Associates, including

Plaintiffs.  Plaintiffs Cohen and Ronen worked in GLG's New York City office; Plaintiff

Baldwin worked in GLG's Boston, Massachusetts office.  (Id. at ¶¶ 15, 20, 24).  Plaintiffs' job

duties as Research Associates included: (1) advising GLG's clients as to which GLG product(s)

and Council Member(s) would best suit their needs on proposed research projects; (2) promoting

and marketing GLG's services to existing and prospective clients; and (3) monitoring for, and

advising clients regarding, compliance issues.  See Plaintiffs' Local Rule 56.1 Statement of

Undisputed Material Facts ("Pls. 56.1") ¶ 7; (GLG 56.1 ¶¶ 60-230).  These duties, and Plaintiffs'

exercise of discretion and independent judgment in performing these duties, are addressed below.

**B.     Plaintiffs Advised GLG's Clients As To Products And Council Members.**

Contrary to Plaintiffs' attempts to minimize their job responsibilities, as Research

Associates Plaintiffs considered themselves to be "thought partners" and "trusted advisors" for

GLG's clients.  (GLG 56.1 ¶¶ 92-140).  Plaintiffs worked directly with GLG's clients to

understand their research needs and to provide them with advice as to the most appropriate GLG

products and Council Members for their research solutions.  (Id. at ¶¶ 60-91).  Plaintiffs

developed and/or refined research projects for sophisticated investors, analyzed the needs of

GLG's clients and which GLG product(s) and Council Member(s) would be most appropriate for

the client's needs on each project, communicated with Council Members and researched their

experience and expertise, and provided recommendations to clients as to which Council

Members were best suited to handle each proposed research project and/or which GLG

product(s) would be most appropriate for the client's needs.  (Id. at ¶¶ 92-140).

**C.     Plaintiffs Promoted and Marketed GLG's Services.**

GLG had a separate Sales Department responsible for selling GLG's products and

services.  Although Plaintiffs were not engaged in sales, among their primary job duties as

Research Associates were promoting and marketing GLG's services to existing and prospective

clients in order to assist sales personnel.  (Id. at ¶¶ 141-188).  Plaintiffs educated clients about

additional GLG products, such as surveys, market studies, and private Council Member visits,

proposed ideas for new projects, and encouraged use of GLG's services.  (Id. at ¶¶ 147, 152, 154,

159, 160, 161, 163, 164, 183).  These promotional duties were intended to expand and deepen

relationships with clients.  (Id. at ¶¶ 145, 146, 165, 172-75, 181, 186, 188).

> **D.    Plaintiffs Performed Compliance Duties.**

Compliance was fundamental to GLG's strategy and its clients' interests, and GLG's

compliance efforts were a key differentiating factor for GLG as compared to its competitors.  (Id.

at ¶¶ 189-191).  As Research Associates, Plaintiffs were on the front lines of GLG's compliance

efforts.  (Pls' 56.1 ¶ 7; GLG 56.1 ¶¶ 189-196).  Plaintiffs' primary duties included regularly

monitoring clients' research projects and interactions with Council Members for potential

compliance issues that could create a risk for a client or GLG, and seeking to prevent situations

in which there could be an improper exchange of information.  (GLG 56.1 ¶¶ 189-230).

> **E.    Plaintiffs' Primary Duties Involved The Exercise Of Discretion and
> Judgment With Respect To Matters Of Significance.**

Plaintiffs received minimal training and worked free from close supervision.  For

instance, Plaintiffs' supervisors generally did not participate in their communications with

clients.  (Id. at ¶¶ 237, 242, 243, 245, 258, 259).  Plaintiffs' supervisors did not need to approve

their day-to-day decisions and, insofar as they were involved in such decisions, deferred to

Plaintiffs' judgment.  (Id. at ¶¶ 238, 239, 248, 261, 267, 269, 270, 272).  Plaintiffs also had the

discretion to carry out their job duties.  For example, although GLG had a "compliance

framework," Plaintiffs were trained that there were no rules that could address the multitude of

specific compliance issues that could arise and, therefore, Plaintiffs were expected to use their

best judgment.  (Id. at ¶¶ 233-234).  Finally, the matters as to which Plaintiffs exercised

discretion and independent judgment were significant to GLG and its clients.  (Id. at ¶¶ 237-332).

## III.  WHETHER PLAINTIFFS WERE PROPERLY CLASSIFIED AS EXEMPT WHILE EMPLOYED AS RESEARCH ASSOCIATES IS AN ISSUE OF LAW FOR THE COURT TO DECIDE.

The FLSA expressly exempts from its overtime requirement any employee who is paid on a salary basis and works in a "bona fide executive, administrative, or professional capacity." Id. § 213(a)(1).  The ultimate decision as to whether duties qualify as exempt work is a question of law for the court to resolve.  See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).  Based on Plaintiffs' own admissions and undisputed statements by GLG, there is no dispute that Plaintiffs were covered by the FLSA's administrative exemption.[1]

## IV.  GLG IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS WERE EXEMPT UNDER THE ADMINISTRATIVE EXEMPTION.

Although the terms "executive," "administrative," and "professional" employee are not defined in the FLSA, the Secretary of Labor has defined these terms under authority granted by the FLSA.  29 C.F.R. § 541.0 et seq.  During the pertinent time period, the U.S. Department of Labor ("DOL") defined the administrative exemption to include an employee who is compensated "on a salary or fee basis at a rate of not less than $455 per week," id. § 541.200(a)(1), and "[w]hose primary duty is the performance of office or non-manual work directly related to the  management or general business operations of the employer or the employer's customers," which "includes the exercise of discretion and independent judgment with respect to matters of significance."  Id. § 541.200(a)(2)-(3).

Thus, GLG is entitled to summary judgment dismissing Plaintiffs' FLSA claims if

---

[1]     Plaintiff Baldwin is not asserting a claim under the NYLL.  Plaintiff Ronen's and Cohen's NYLL claims generally are governed by the same standards as their FLSA claims because the New York regulation that purports to require overtime compensation, 12 N.Y.C.R.R. 142-2.2, explicitly incorporates the FLSA's exemptions.  12 N.Y.C.R.R. 142-2.2.

Plaintiffs: (1) were paid on a salary basis at a rate of at least $455 per week; (2) had a primary

duty to perform office or non-manual work directly related to the management or general

business operations of GLG or GLG's clients; and (3) that duty included the exercise of

discretion and independent judgment with respect to matters of significance.  Id. § 541.200(a)

(the "Regulations").  As explained below, Plaintiffs were properly classified as exempt

administrative employees because the requirements for the exemption have been satisfied.

### A.   Plaintiffs Were Paid On A Salaried Basis At A Rate Of Over $455 Per Week.

Plaintiffs were paid a salary of more than $455 per week that did not vary based on the

quantity or quality of their work, or the number of hours worked.  (GLG 56.1 ¶¶ 27-48).

Plaintiffs therefore satisfied the first requirement for the administrative exemption.[2]

### B.   Plaintiffs Had A Primary Duty To Perform Work Directly Related To The Management Or General Business Operations Of GLG And/Or Its Clients.[3]

To qualify for the FLSA's administrative exemption, the work at issue must be directly

related to the management or general business operations of the employer or the employer's

customers.  29 C.F.R. § 541.201(a).  The Regulations stress that the phrase "directly related to

the management or general business operations" means that the primary duty must be "directly

related to assisting with the **running or servicing** of the business."  Id. § 541.201(a) (emphasis

added).  The Regulations also differentiate "work directly related to assisting with the running or

servicing of the business, as distinguished, for example, from working on a manufacturing

production line or selling a product in a retail or service establishment."  Id.  Importantly, these

duties may be performed for either the employer or the employer's customers (i.e., GLG's

---

[2]      Plaintiffs do not address this requirement in their Motion and conceded this point in their pre-motion letter.  (See December 16, 2009 Correspondence from D. Wigdor to Hon. P. Kevin Castel, at 2, n.2).

[3]      Plaintiffs do not dispute that they performed office or non-manual work and therefore concede that they satisfied this aspect of the second prong of the administrative exemption.

clients).  Id. § 541.200.

Here, Plaintiffs did not work on a manufacturing production line, and Plaintiffs concede that they did not engage in sales.  (GLG 56.1 ¶¶ 141, 156, 168).  Moreover, while Plaintiffs worked in the Research Department, GLG also had separate Product and Sales Departments which were responsible for product development and sales, respectively, and it was the Council Members (not Plaintiffs) who "produced" the research being purchased by GLG's clients.  (Id. at ¶ 13).  Moreover, Plaintiffs concede in their own 56.1 Statement that they performed advisory, compliance, and promotional duties as Research Associates.  (Pls. 56.1 ¶ 7 ("Research Associates, which were part of the larger Research Management Department, served in the following capacities:  (i) 'as thought partners to client,' (ii) 'as the front line bulwark for the compliance framework,' and (iii) 'as ambassadors of the GLG brand.'")).  Despite this critical admission, Plaintiffs' Motion purports to characterize Plaintiffs as entry-level "liaisons" whose job was to "produce" research projects for GLG's clients.  As explained below, however, Plaintiffs' actual job duties confirm that they were properly classified as exempt.

### 1.    Plaintiffs' Primary Duties Included Advisory Responsibilities That Were Vital To Both GLG's Strategy And Its Clients' Research.

Section 541.201(b) of the Regulations provides that the following type of work is directly related to management or general business operations:

> [T]ax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; **research**; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

See 29 C.F.R. § 541.201(b) (emphasis added).  The Regulations also recognize that employees in the financial services industry who perform advisory functions for their employer's clients are generally engaged in exempt work.  Id. § 541.203(b).

Against this regulatory backdrop, it is undisputed that Plaintiffs' primary duties included exempt research and advisory activities:

- **Plaintiff Cohen** (1) worked regularly with clients as a "research partner" and "trusted advisor"; (2) was responsible for advising clients as to which Council Members "might have the experience and information that the client is looking for" and "fulfilling time-sensitive research requests" for clients on a regular basis throughout the day; (3) "provid[ed] primary research solutions for investment analysts looking to further develop their investment thesis"; (4) "manag[ed] primary research projects throughout various deal stages and diligence periods [for investment clients such as] private equity [firms], venture capital [firms], hedge fund[s] and long-only asset managers"; and (5) determined clients' research needs by interviewing them and conducting independent research on their industries, businesses and/or relevant market trends, and analyzing which Council Members were best suited to handle the client's research needs. (GLG 56.1 ¶¶ 60-66, 92-114).

- **Plaintiff Ronen** (1) collaborated directly with analysts and industry experts to provide consultations and customized research reports to clients; (2) "deliver[ed] relevant and timely primary market research solutions to [his] clients at hedge funds, investment banks, and [private equity/venture capital] firms"; (3) "[s]erved as a thought partner with clients to design and deliver primary market research analysis to address challenging capital market questions at all stages of the investment cycle"; and (4) collaborated on a "daily basis" with some of the "most legendary investors at the world's largest hedge funds, providing them with crucial primary research." (Id. at ¶¶ 67-76, 115-130).

- **Plaintiff Baldwin** (1) worked directly and proactively with clients on research projects; (2) researched and analyzed which Council Members were best suited to handle clients' research projects; and (3) advised clients regarding which Council Members to use and whether to use other GLG products, such as surveys. (Id. at ¶¶ 77-91, 131-140).

Consistent with the Regulations, several courts have held that employees performing similar advisory job duties were performing exempt work. See, e.g., Hogan v. Allstate Ins. Co., 361 F.3d 621, 626-28 (11th Cir. 2004) (employees whose duties included promoting sales, advising customers regarding available products, and adapting insurance policies to customers' needs were exempt); Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 541-42 (7th Cir. 1999) (consultant who examined data and advised clients regarding proposed solutions was performing exempt work); Hein v. PNC Fin. Servs. Grp., Inc., 511 F. Supp. 2d 563, 570-72 (E.D. Pa. 2007) (financial consultant met administrative exemption where his primary duties involved gathering

information and advising clients).

> **2.      Plaintiffs' Primary Duties Included Promoting And Marketing GLG's Services To Clients, Which Was Critical To GLG's Strategy.**

The Regulations specifically identify "marketing" as an administrative activity directly related to management or general business operations (29 C.F.R. § 541.201(b), and this Court uses "promoting" interchangeably with "marketing."  <u>Amendola v. Bristol-Myers Squibb Co.</u>, 558 F. Supp. 2d 459, 475-77 (S.D.N.Y. 2008); <u>see</u> <u>also</u> <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 11-12 & n.8 (1st Cir. 1997) (representatives whose job duties were "aimed at promoting (i.e., increasing, developing, facilitating, and/or maintaining)" customer sales performed exempt work).[4]

As mentioned above, the Regulations also expressly provide that employees in the financial services industry "generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and **marketing, servicing or promoting the employer's financial products**." 29 C.F.R. §541.203(b) (emphasis added).

There is no dispute that Plaintiffs' primary job duties as Research Associates included promotional and marketing responsibilities.  Although GLG had a separate Sales Department that was responsible for sales, Plaintiffs' primary job duties included promoting and marketing

---

[4]      The seminal <u>John Alden</u> decision has guided numerous courts on the contours of exempt "sales promotion" work and was relied upon by the DOL in amending the Regulations in 2004.  <u>See</u>, <u>e.g.</u>, Preamble to 2004 Regulations, Defining and Delimiting the Exemption for Executive, Administrative, Professional and Outside Sales and Computer Employees, 69 Fed. Reg. 22122-01 (Apr. 23, 2004).  <u>John Alden</u> has been cited in over 160 court decisions and in several DOL advisory opinions.  <u>See, e.g.</u>, DOL Op. Ltr, FLSA 2005-21 (Aug. 19, 2005) (using <u>John Alden</u> to distinguish between exempt service and non-exempt production employees); DOL Op. Ltr., FLSA 2006-31 (Sept. 8, 2006) (referencing <u>John Alden</u> in the 2004 regulations); DOL Op. Ltr., FLSA 2006-43, (Nov. 27, 2006) (same).

GLG's services to clients in order to advance the efforts of sales personnel.   (GLG 56.1 ¶¶ 141-188).  To that end, Plaintiffs communicated with clients to expand and deepen relationships and to increase usage, and they recommended to clients that they consider using additional GLG products, such as surveys, private visits and customized research reports.  (Id. at ¶¶ 145-47, 152, 154, 159, 160, 161, 163-65, 172-75, 181, 183, 186, 188).

These are precisely the types of promotional activities that several courts have recognized qualify as exempt work.  See, e.g., John Alden, 126 F.3d at 11-12 & n.8 (holding that employee's primary duty was administrative work where, as here, it involved the promotion of sales); Darveau v. Detecon, Inc., 515 F.3d 334, 339 (4th Cir. 2008) (employees are exempt where they market and promote customer sales generally and cultivate client relationships); Savage v. UNITE HERE, No. 05-cv-10812, 2008 WL 1790402, at *8 (S.D.N.Y. Apr. 17, 2008) (dismissing plaintiff's overtime claims because her duties included, among others, "represent[ing] and promot[ing] her employer"); Amendola, 558 F. Supp. 2d at 475-77 (relying upon John Alden and finding that the putative class likely qualified as exempt under the administrative exemption where they were responsible for promoting the company's sales, "mov[ing] the business" and "mov[ing] market share"); Schwind v. EW & Assocs., 357 F. Supp. 2d 691, 1375-79 (S.D.N.Y. 2005) (granting summary judgment and holding that plaintiff was an administrative employee where he "represented the company, negotiated contracts, promoted sales, and was involved in business research").

### 3.    Plaintiffs' Primary Duties Included Compliance Functions That Were Vital To GLG's Business And Its Clients' Interests.

The DOL Regulations also specifically provide that "legal and regulatory compliance" activities represent exempt work directly related to management or general business operations. 29 C.F.R. § 541.201(b).

GLG and its clients take compliance issues very seriously, as compliance failures present serious risks to their respective businesses. (GLG 56.1 ¶¶ 189-196). GLG's compliance framework is a key differentiator for GLG as compared to its competitors and part of what clients value in retaining GLG. (Id. at ¶ 190). Plaintiffs were trained on compliance, worked with GLG's Compliance Department, and monitored client projects and interactions with Council Members for potential compliance risks. (Id. at ¶¶ 197-230). These job duties qualify as exempt work. See 29 C.F.R. § 541.201(b); see also Savage, 2008 WL 1790402, at *6 (plaintiff who identified potential legal and safety violations performed exempt work); McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997, 998 (8th Cir. 2002) (review of insurance claims for compliance with contract law and insurance statutes was exempt work); Paul v. UPMC Health Sys., No. 06-1565, 2009 WL 699943, at *10 (W.D. Pa. Mar. 10, 2009) (monitoring for compliance in connection with preparation of audits was exempt work directly related to business operations).

> ### 4. The Administrative/Production Dichotomy Also Demonstrates That Plaintiffs Satisfied The Administrative Exemption.

Plaintiffs rely extensively on the Second Circuit's administrative/production analysis in Davis v. J.P. Morgan Chase & Co., 587 F.3d 529 (2d Cir. 2009). Although Plaintiffs suggest that Davis represents a sea change in the law regarding the administrative exemption,[5] the decision actually confirmed what has long been the case – that the question of whether an employee is exempt turns on an evaluation of that individual's actual duties. See Davis, 587 F.3d at 533 ("What determines whether an [individual] performed production or administrative functions is the nature of her duties . . . "). Contrary to Plaintiffs' contentions, Plaintiffs' actual

---

[5] The Second Circuit's decision in Davis analyzed the administrative exemption to the FLSA's overtime requirement. Plaintiffs have cited no authority to support the proposition that Davis applies to Plaintiff Cohen's and Ronen's claims under the NYLL.

job duties as Research Associates were entirely unlike the duties at issue in <u>Davis</u> and, consequently, <u>Davis</u> is inapposite to this case.

The plaintiff in <u>Davis</u> was a loan underwriter whose "primary duty was to **sell** loan products under the detailed directions of the Credit Guide." <u>Id.</u> at 534 (emphasis added). In evaluating the plaintiff's duties, the Second Circuit concluded that there was "no indication that underwriters were expected to advise customers as to what loan products best met their needs and abilities," and that the plaintiff's work "was primarily functional rather than conceptual." <u>Id.</u> at 535. The plaintiff also was paid production incentives which, the Second Circuit noted, demonstrated that "the work of underwriters could be quantified in a way that the work of administrative employees generally cannot." <u>Id.</u> at 535. Under those circumstances, the Second Circuit held that the plaintiff-loan underwriter was performing non-exempt work.

In sharp contrast to the duties of the underwriter in <u>Davis</u>, the simple and undisputed facts here are that (1) Plaintiffs did not sell anything as Research Associates; (2) Plaintiffs were expected to advise clients as to what products and which Council Members best met their needs; (3) Plaintiffs did not work under the detailed directions of a credit guide or any similar guidelines issued by their employer; (4) GLG's independent Sales and Product Departments were responsible for many of the duties at issue in <u>Davis</u>; (5) Plaintiffs' actual duties involved advisory, promotional and compliance responsibilities that were not performed by the plaintiff in <u>Davis</u> and that the Regulations and well-settled case law make clear qualify as exempt work; (6) Plaintiffs were nothing like the "producers" in <u>Davis</u> because it was GLG's more than 200,000 Council Members – not its handful of Research Associates – who produced the research services for which GLG was paid; and (7) Plaintiffs were not paid production incentives.

Plaintiffs overstate the significance of <u>Davis</u> by arguing that GLG's consideration of

certain performance-related "metrics" automatically compels the Court to conclude that Plaintiffs were misclassified as exempt from overtime.  (Pls. Mem. at 13-15).  This argument fails for several reasons.  First, <u>Davis</u> does not stand for the proposition that any reliance on quantitative measures of performance means that an employee was engaging in production work for the purposes of the administrative exemption.  There is not a shred of authority to support that misstatement of the law and, to the contrary, the Second Circuit in <u>Davis</u> referenced the defendant's use of productivity metrics as just one fact in a broad evaluation of the plaintiff's job duties as a loan underwriter – duties that, as explained above, are entirely distinct from the Plaintiffs' primary job duties as Research Associates.

Second, Plaintiffs drastically overstate the factual record regarding the extent to which metrics were used to evaluate their performance.  It is undisputed that each Plaintiff's performance as a Research Associate was evaluated based on many factors, including a variety of qualitative measures such as quality of service, adherence to GLG compliance standards, leadership, teamwork and collaborative skills, sales feedback, peer feedback, and client feedback.  (GLG 56.1 ¶¶ 49-52).  There was no formula at GLG for salary, bonus or promotion decisions that required reliance, in whole or in part, on metrics.  Indeed, the undisputed evidence confirms that metrics played a relatively small role in GLG's evaluation of Plaintiffs' overall job performance.  (<u>Id.</u> at ¶¶ 51-56).

Finally, to the extent metrics were used, they underscore the promotional and compliance duties that were critical to the Research Associate position.  For instance, the Active Users and Total Project Volume metrics were considered a rough proxy for a Research Associate's success in his or her promotional duties, as an increase in those metrics suggested that the Research Associate was expanding and/or deepening client relationships.  (<u>Id.</u> at ¶ 53).  As another

14

example, the Member Programs Transaction Volume metric was considered a rough proxy for a Research Associate's commitment to compliance.  (Id. at ¶ 54).

In sum, there is no legal or factual basis to suggest that Plaintiffs fall on the production side of the administrative/production dichotomy.

### C.  Plaintiffs' Primary Duties Included The Exercise Of Independent Judgment And Discretion With Respect To Matters Of Significance.

#### 1.  Plaintiffs Exercised Discretion and Independent Judgment.

Plaintiffs summarily assert that "there are genuine issues of fact" as to whether their primary duties as Research Associates included the exercise of discretion and independent judgment.  (Pls. Mem. at 20 n.7).  Although Plaintiffs were correct to recognize their complete inability to credibly argue that, as a matter of law, Plaintiffs did not exercise discretion and independent judgment in performing their job duties as Research Associates, the undisputed record evidence demonstrates that Plaintiffs' job duties easily satisfied this element of the administrative exemption test.

The Regulations provide that the exercise of independent judgment and discretion with respect to matters of significance "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202 (a); see also id. § 541.207(a) (same).  The phrase "discretion and independent judgment" implies "that the employee has authority to make an independent choice, free from immediate direction or supervision."  Id. § 541.202(b), (c).  However, it "does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review."  Id. § 541.202(c); see also Piscione, 171 F.3d at 536-7 ("We are cognizant of the reality that many individuals who exercise discretion and independent judgment often do so after consultation with others."); Dymond v. U.S. Postal Serv.,

670 F.2d 93, 96 (8th Cir. 1982) (employees performed work requiring exercise of discretion and independent judgment where their decisions were subject to approval or even reversal by management); Haywood v. N. Am. Van Lines, Inc., 121 F.3d 1066, 1073 (7th Cir. 1997); Reich v. Haemonetics Corp., 907 F. Supp. 512, 518 (D. Mass. 1995).

In determining whether an employee performs work directly related to management or general business operations of the employer or the employer's customer, the DOL directs that each case must be examined individually.  69 Fed. Reg. 22122, 22142 (Apr. 23, 2004). Moreover, "the applicability of the administrative employee exemption depends not on occupational title, job classification, or position description, but rather an **individual employee's duties** and salary."  DOL Opinion Letter, FLSA 2006-43, Nov. 27, 2006, at 1 (citing 29 C.F.R. § 541.2) (emphasis added).

Factors that the Court may consider when determining whether an employee exercises the requisite discretion and independent judgment include whether the employee:

- has authority to formulate, affect, interpret, or implement management policies or operating practices;

- carries out major assignments in conducting the operations of the business;

- performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;

- has authority to commit the employer in matters that have significant financial impact;

- has authority to waive or deviate from established policies and procedures without prior approval;

- has authority to negotiate and bind the company on significant matters;

- is involved in planning long- or short term business objectives; and/or

29 C.F.R. § 541.202(b).

Plaintiffs' descriptions of their own duties – in their testimony and in documents they authored or have conceded are accurate – demonstrate that they exercised discretion and independent judgment in carrying out their daily job responsibilities:

- **Plaintiff Cohen** (1) independently managed GLG's relationship with and services for a large number of clients, ascertained clients' research needs, and advised them as to research projects on a regular basis; (2) individually determined which clients to call in order to promote and market GLG's products and services; (3) communicated directly with clients by phone and e-mail without his manager's approval or participation; (4) independently evaluated multiple options for research projects and then used his discretion and judgment to formulate the best course of action to recommend to clients; (5) determined whether (and, if so, how) to deviate from GLG's training materials regarding communicating effectively with clients; (6) had the discretion to decide when to recruit new Council Members into GLG's Council Member Network; (7) independently determined which materials and sources to consult in maintaining his subject matter expertise regarding his clients and GLG's Council Members; (8) advised on rates with Council Members and regularly approved payments to Council Members that committed GLG to pay for thousands of dollars of services; and (9) contributed to management policies and operating practices by developing client service initiatives. (GLG 56.1 ¶¶ 237-257, 285-291, 304-316).

- **Plaintiff Ronen** (1) worked independently to respond to client inquiries and advise clients as to the appropriate products and Council Members to recommend; (2) determined which clients he would call or write on a given day; (3) had the discretion to recommend (without first having to discuss his advice with his manager) to clients that they use additional GLG products and services, including surveys and private Council Member visits; (4) had the discretion to deviate from GLG's training materials when communicating with Council Members and clients; (5) advised on rates for Council Members, reviewed Council Members' invoices to ensure that they were consistent with project requirements, and approved payments to Council Members; and (6) contributed to management policies and operating practices by taking leadership roles on two important initiatives.  (Id. at ¶¶ 258-262, 292-297, 318-328).

- **Plaintiff Baldwin** (1) had the discretion to recommend that clients engage in certain research projects; (2) communicated with clients directly (and without her manager's involvement) regarding research projects and events that GLG was conducting; (3) identified Council Members that were best suited to provide advice regarding clients' research requests, including the potential use of surveys; (4) raised compliance-related concerns with her supervisor and suggested courses of action to remedy potential compliance issues; (5) determined whether to deviate from GLG's training materials; and (6) had the discretion to approve payments to Council Members.  (Id. at ¶¶ 263-284, 298-303, 329-332).

These duties are consistent with those that several courts have found include the exercise of discretion and independent judgment.  See, e.g., Hogan, 361 F.3d at 628 (employees sufficiently exercised discretion and independent judgment in the course of servicing existing customers, promoting sales, and advising customers); Lutz v. Ameritech Corp., 208 F.3d 214, 215 (6th Cir. 2000) (field engineers who assessed needs of clients and developed plans for coordinating customers' needs exercised requisite discretion and independent judgment); Piscione, 171 F.3d at 536-38 (advising and counseling clients concerning benefit and defined contribution plans involved the exercise of discretion and independent judgment); John Alden, 126 F.3d at 13 (employees exercised discretion and independent judgment when choosing which clients to contact, determining which products to discuss with each client, and tailoring proposals for the client's customers); Amendola, 558 F. Supp. 2d at 476-77 (employees exercise requisite degree of judgment and discretion where they determine which customers to call or visit and how they will promote products).

### 2.    Plaintiffs' Discretion and Independent Judgment Was Exercised With Respect To Matters Of Significance.

Another consideration for the "discretion and independent judgment" prong of the primary duty analysis is whether Plaintiffs exercised such discretion and independent judgment with respect to matters of significance.  29 U.S.C. § 541.202(a).  "The term 'matters of significance' refers to the level of importance or consequence of the work performed."  Id.

Plaintiffs assert that their job duties as Research Associates did not pertain to "matters of significance."  (Pls' Mem. at 20-24).  In doing so, Plaintiffs again turn a blind eye to their actual job duties – the critical issue in determining the applicability of the administrative exemption. Davis, 587 F.3d at 533.  Rather, Plaintiffs devote the entirety of their argument in this context to a discussion of the Second Circuit's decision in In re Novartis Wage & Hour Litigation, 611 F.3d

141 (2d Cir. 2010).

Plaintiffs' reliance on <u>Novartis</u> is misplaced.  The plaintiffs in <u>Novartis</u> were pharmaceutical sales representatives.  Unlike Plaintiffs, who were free to exercise their discretion and independent judgment on a daily basis as Research Associates, the plaintiffs in <u>Novartis</u> were severely constrained in their work as sales representatives.  Novartis determined which physicians the representatives would call and when, and what drugs would be promoted on each sales call.  Moreover, the company scripted what the sales representatives would say, the representatives could not deviate from the company's pre-determined scripts, and representatives had no role in determining what drugs to promote on sales calls.  <u>Novartis</u>, 611 F.3d at 156-58.  Based on these particular facts, and relying on the Secretary of Labor who appeared as amicus curiae and directed that the pharmaceutical sales representatives at issue do not perform exempt work, the Second Circuit held that the plaintiffs did not exercise independent discretion and judgment on matters of significance.  <u>Id.</u>

In stark contrast to the utter lack of discretion and independent judgment exercised by the sales representatives in <u>Novartis</u>, Plaintiffs had the discretion to determine which clients to contact and when, what to say and write to those clients, and which GLG products and Council Members to recommend based on Plaintiffs' own assessment of each client's particularized need.  (GLG 56.1 ¶¶ 237-39, 242, 243, 245, 248, 258, 259, 261, 267, 269, 270, 272).  Plaintiffs also had discretion to deviate from what written guidance they did have.  (<u>Id.</u> at ¶¶ 231-36, 254-56, 262).  As set forth below, there is no genuine dispute that Plaintiffs exercised discretion and independent judgment with respect to matters of significance.

Plaintiffs' advisory duties with respect to clients' research projects were fundamental to the business of both GLG and its clients (<u>Id.</u> at ¶¶ 60-140) and, therefore, pertained to "matters

of significance." <u>See, e.g.,</u> <u>Lutz</u>, 208 F.3d at 215 (employees who assess needs of clients

exercised requisite discretion and independent judgment on matters of significance); <u>John Alden</u>,

126 F.3d at 14 (employees who advise customers regarding which products fit their needs

exercise discretion and judgment on matter of significance to the employer's business).

Plaintiffs' compliance duties similarly were critical to GLG's business and value

proposition to clients, and both Plaintiffs and GLG's clients recognized the significance of this

compliance role.  (GLG 56.1 ¶¶ 189-230).  Although GLG had compliance guidelines, those

guidelines could not address the multitude of specific compliance issues that could arise and,

therefore, Plaintiffs were directed to use their judgment to address compliance issues.  (<u>Id.</u> at ¶

193).

Plaintiffs also exercised discretion and independent judgment by contributing to the

formulation and implementation of management policies and operating practices and

participating in the planning of long- and short term business objectives, and performed work

that affected business operations to a substantial degree.  For example, Plaintiff Ronen took a

"proactive role in team and firm wide initiatives" by developing a new program for Research

Associate call plans and another policy initiative known as the "2-Strike Rule."  (<u>Id.</u> at ¶¶ 318-

328).  Ronen viewed the "2-Strike Rule" as an important concept for GLG's business, and he

both proposed this initiative to management and led a working group to effectuate its

implementation.  (<u>Id.</u> at ¶¶ 322-328).  Similarly, Plaintiff Cohen (1) participated in GLG's Long

Only Working Group to generate client service initiatives and develop best practices for

providing client service; (2) led an initiative related to an online resource called "Bigdough"; (3)

worked on an internal initiative called "Strengths, Weaknesses, Opportunities, and Threats" that

GLG used to identify optimal experts for various companies; and (4) helped formulate and

implement a new function for GLG's computer systems that integrated information from clients' public filings with the SEC (the "13F" reports) into GLG's client-knowledge database.  (Id. at ¶¶ 304-317).

Plaintiffs' work on these initiatives, although not required to satisfy this prong of the administrative exemption, further demonstrates their exercise of discretion and independent judgment on matters of significance.  See Castro v. Metro. Trans. Auth., No. 04-1445, 2006 WL 1418585, at *3 n.6 (S.D.N.Y. May 23, 2006) (drafting policies involves use of discretion on matters of significance); see also Heffelfinger v. EDS Corp., 580 F. Supp. 2d 933, 965 (C.D. Cal. 2008) (plaintiff exercised discretion where he revised a technical guide by using his technical knowledge of the process at issue).

### D.    GLG's "Reclassification" Of Certain Employees Other Than Plaintiffs Does Not Alter The Outcome Of The Parties' Cross-Motions.

Presumably in an attempt to divert the Court's attention from Plaintiffs' actual job duties, Plaintiffs make a passing reference to GLG's decision to temporarily reclassify a handful of remaining Research Associates – not the Plaintiffs, who had been promoted to new roles – as eligible for overtime compensation as it was phasing out the Research Associate position.  (Pls. Mem. at 9-10).  The reclassification of these other individuals, however, is inapposite, inadmissible, and immaterial to the parties' cross-motions.

First, it is undisputed that Plaintiffs were not reclassified.  (GLG 56.1 ¶¶ 335-338).  The reclassification of other individuals has no bearing on Plaintiffs' individual claims.

Second, to the extent that Plaintiffs assert that the reclassification is somehow evidence that GLG misclassified Plaintiffs as exempt from overtime, evidence related to the reclassification decision is barred under Federal Rule of Evidence 407.  Rule 407 expressly prohibits the use of subsequent measures (e.g., changes in policy) for this purpose.  It provides in

pertinent part:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, [or] culpable conduct.

Fed. R. Evid. 407.  The rule is a "common sense recognition that people are loath to take actions which increase the risk of losing a lawsuit.  Rule 407 is prompted by the fear that people will be less likely to take subsequent remedial measures if evidence of their repairs or improvements may be used against them . . . ."  Cann v. Ford Motor Co., 658 F.2d 54, 60 (2d Cir. 1981).

Allowing Plaintiffs to use GLG's reclassification decision as evidence supporting their claims would run contrary to the policy behind Rule 407 of discouraging parties from forgoing subsequent remedial measures because of concerns that evidence of such measures could be used against them.  Indeed, if employers could automatically be subjected to class or collective action litigation any time they decided to reclassify employees from exempt to overtime eligible, they would be discouraged from voluntarily reviewing their previous classification decisions or reclassifying employees.  For these reasons, evidence relating to GLG's reclassification decision is inadmissible in this case.  See, e.g., Peck v. Hudson City School Dist., 100 F. Supp. 2d 118, 122 (N.D.N.Y. 2000) (in sexual harassment action, granting motion in limine prohibiting introduction of evidence relating to a change in sexual harassment policy in support of sexual harassment claim); Carda v. E.H. Oftedal & Sons, Inc., No. 04-5036, 2005 U.S. Dist. LEXIS 26375, at *1 (D.S.D. Mar. 23, 2005) (exclusion of subsequent remedial measures – evidence of defendant's change in record keeping policy after plaintiff filed FLSA suit – "supports the public policy of preventing a party from being punished for making positive changes"); Abel v. Dep't of Corr. of Kansas, No. 93-4070, 1995 WL 106535, at *1 (D. Kan. Jan. 12, 1995) (excluding plaintiff's use of policy changes regarding roll calls and meal breaks; "[i]f the defendant changed

its policies in response to [a previous FLSA lawsuit], then these changes are likely to be subsequent remedial measures under Rule 407").[6]

Third, even if GLG's reclassification of certain other employees were not inadmissible, which it is, whether or not Plaintiffs were exempt would still need to be decided based upon an analysis of their actual job duties, not GLG's classification decision.  See, e.g., Clarke et al. v. JPMorgan Chase Bank, N.A., No. 08 Civ. 2400, 2010 U.S. Dist. LEXIS 33264, at *61-2 (S.D.N.Y. Mar. 26, 2010) (reclassification insufficient to preclude summary judgment where the plaintiff's job duties confirmed that he fell within overtime exemption); Mike v. Safeco, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (after the defendant reclassified the plaintiff and other employees from exempt to non-exempt, the plaintiff contended that he and other employees had been improperly classified as exempt prior to the reclassification; the court concluded that "[t]he merits of Mike's claim will turn upon evidence relating to Mike's day-to-day tasks, and not upon any Safeco company policy or decision."); Liger v. New Orleans Hornets NBA Ltd. P'ship, No. 05-1969, 2008 WL 348800, at *2 (E.D. La. Feb. 6, 2008) ("evidence of [defendant's] post-lawsuit compliance with the FLSA is not relevant to determining whether [defendant] can claim the exemption during the period of time before the lawsuit was filed").

Finally, to the extent Plaintiffs assert that the reclassification was not based upon a claimed recognition that Research Associates had been misclassified, but rather was based upon unrelated business reasons, then it is immaterial to the cross motions for summary judgment.  A fact is "material" for purposes of a motion for summary judgment if it "might affect the outcome of the suit under governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[6]     See also Stahl v. Bd. of County Comm'rs., 101 Fed. Appx. 316, 321 (10th Cir. 2004) (affirming district court's decision to exclude, under FRE 407, evidence that defendant had suspended the employment test that was the subject of plaintiff's discrimination suit); Dennis v. County of Fairfax, 55 F.3d 151, 154-55 (4th Cir. 1995) (discussing policy reasons for applying FRE 407 in employment cases).

An employer's own classification of a job is neither controlling nor material to the issue of whether an employee qualifies for an exemption from the FLSA's overtime requirements.  See Cooke v. Gen. Dynamics Corp., Elec. Boat Div., 993 F. Supp. 56, 61 (D. Conn. 1997) (an employer's mere labels are irrelevant to whether an employee is covered by an overtime exemption); Diaz v. Electronics Boutique of Amer., Inc., No. 04-CV-0840E, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) (same).  Rather, in determining whether an employee qualifies for the administrative exemption, the relevant inquiry is whether the employee satisfied the exemption's salary basis and duties requirements.  29 C.F.R. § 541.2.

In sum, any evidence related to the reclassification is inadmissible and/or immaterial. Plaintiffs' actual job duties, however, make it clear that they performed exempt work.

## V.    COHEN'S CLAIMS ALSO SHOULD BE DISMISSED AS A SANCTION FOR HIS SPOLIATION OF EVIDENCE.

Plaintiff Cohen's claims also should be dismissed based on his spoliation of evidence. The duty to preserve evidence arises when a party reasonably should know that the evidence may be relevant to anticipated litigation, including prior to the litigation itself, and courts have broad discretion to fashion appropriate sanctions (including dismissal) for spoliation.  See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990); Beers v. Gen. Motors Corp., 97-cv-482, 1999 WL 325378, at *4 (N.D.N.Y. May 17, 1999); see also Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (observing that "outright dismissal of a lawsuit . . . is within the court's discretion" for spoliation); Moore's Fed. Practice 3d § 34.16[4] (noting district court's inherent power to impose sanctions for pre-lawsuit destruction of evidence).

As set forth in GLG's opposition to Plaintiff Cohen's motion for summary judgment as to GLG's counterclaims, Cohen admits that, on the eve of resigning from GLG and while planning to file this action, he intentionally performed a "mass deletion" of the files on both a network

drive and the hard drive of the computer he used at GLG, with the specific objective of preventing GLG from having access to those files, many of which included evidence concerning his job duties at GLG.  (GLG 56.1 ¶¶ 351-361).  Because it is undisputed that Cohen not only failed to comply with his obligations to preserve evidence relevant to this case, but also deliberately destroyed evidence with the specific purpose of preventing GLG from having access to it, the Court properly could dismiss Plaintiff Cohen's claims as a sanction for spoliation.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiffs are exempt under both the FLSA and the NYLL and, therefore, the Court should deny Plaintiffs' Motion for Summary Judgment, grant GLG's Cross-Motion for Summary Judgment, and dismiss Plaintiffs' claims, with prejudice, in their entirety.

Dated:  March 11, 2011
        New York, New York                      Respectfully submitted,

                                                BY:   /s/ Michael J. Puma
                                                Andrew J. Schaffran (AS-1236)
                                                MORGAN, LEWIS & BOCKIUS LLP
                                                101 Park Avenue
                                                New York, New York 10178-0060
                                                (212) 309-6000
                                                (212) 309-6001 (fax)

                                                Michael J. Puma (MP-5573)
                                                Blair J. Robinson (*admitted pro hac vice*)
                                                MORGAN, LEWIS & BOCKIUS LLP
                                                1701 Market Street
                                                Philadelphia, PA 19103-2921
                                                (215) 963-5000
                                                (215) 963-5001 (fax)

                                                Counsel for Defendant
                                                Gerson Lehrman Group, Inc.