**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                   :

JEFFREY COHEN, on behalf of himself   :
individually, and on behalf of all similarly   :
situated employees,                   :         No. 09 Civ. 4352 (PKC)
                                   :

                   Plaintiff,   :

          v.                        :

GERSON LEHRMAN GROUP, INC.   :
                      Defendant.   :
                                   :
------------------------------------------------------------X

 

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

 

**THOMPSON WIGDOR & GILLY LLP**

Douglas H. Wigdor
Gregory N. Filosa
85 Fifth Avenue
New York, NY 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
dwigdor@twglaw.com
gfilosa@twglaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.    SUMMARY JUDGMENT STANDARD .................................................... 2

    II.    APPLICATION OF THE ADMINISTRATIVE EXEMPTION ................... 4

        A.    WHETHER PLAINTIFFS' PRIMARY DUTY WAS THE PERFORMANCE OF WORK DIRECTLY RELATED TO THE MANAGEMENT OR GENERAL BUSINESS OPERATIONS OF GLG OR ITS CLIENTS ........................................................................ 5

            1.    Defendant <u>Cannot</u> Establish That Plaintiffs' Primary Duty Involved The Performance of Advisory Responsibilities That Were Vital To Both GLG's Strategy And Its Clients' Research ................................................ 6

            2.    Defendant Cannot Establish That Plaintiffs' Primary Duty Involved Promoting And Marketing GLG's Services To Clients, Which Was Critical To GLG's Strategy ....................................................................... 8

            3.    Defendant Cannot Establish That Plaintiffs' Primary Duty Included Compliance Functions That Were Vital To GLG's Business and Its Clients' Interests ................................................................................... 11

            4.    Defendant Has Failed To Establish That There Are No Genuine Issues Of Fact Regarding The Application Of The Administrative Exemption .................................................................................................. 12

        B.    WHETHER PLAINTIFFS' PRIMARY DUTY INCLUDED THE EXERCISE OF INDEPENDENT JUDGMENT AND DISCRETION WITH RESPECT TO MATTERS OF SIGNIFICANCE ...................................................................................... 13

            1.    There Are Disputed Issues Of Fact Regarding Whether Plaintiffs' Primary Duty Involved The Exercise Of Independent Judgment And Discretion ................................................................................................ 13

            2.    There Is No Dispute That Plaintiffs' Primary Duty Did Not Involve The Exercise Of Discretion And Independent Judgment With Respect To Matters Of Significance To GLG Or Its Clients ..................................... 15

                a.    Plaintiffs' Research Advisory Duties Do Not Relate To Matters Of Significance To GLG ........................................................... 16

i

b.   Plaintiffs' Compliance Duties And Formulation And
Implementation of Management And Operating Policies Are
Not Plaintiffs' Primary Duties ...................................................17

C.   DEFENDANT'S RECLASSIFICATION OF THE RESEARCH ASSOCIATE POSITION
CONSTITUTES AN ADMISSION THAT PLAINTIFFS WERE NOT PERFORMING EXEMPT
WORK .........................................................................................................19

III.   DEFENDANT IS NOT ENTITLED TO DISMISSAL OF PLAINTIFF COHEN'S
CLAIM.......................................................................................................................21

CONCLUSION ............................................................................................................................22

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)........................................................................................................2, 3

*Bobal v. Rensselaer Polytechnic Inst.*,
    916 F.2d 759 (2d Cir. 1990)..................................................................................................21

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..............................................................................................................2

*Davis v. J.P. Morgan Chase & Co.*,
    587 F.3d 529 (2d Cir. 2009)..............................................................................................9, 16

*Darveau v. Detecon, Inc.*,
    515 F.3d 334 (4th Cir. 2008) ...........................................................................................10, 11

*Downes v. J.P. Morgan Chase & Co.*,
    No. 03-CV-8991 (GEL), 2007 WL 1468218 (S.D.N.Y. May 16, 2007).....................5, 12

*Hein v. PNC Financial Servs. Group, Inc.*,
    511 F. Supp. 2d 563 (E.D. Pa. 2007) ..................................................................................8

*Hogan v. Allstate Ins. Co.*,
    361 F.3d 621 (11th Cir. 2004) ..........................................................................................7, 8

*Icicle Seafoods, Inc. v. Worthington*,
    475 U.S. 709 (1986)..............................................................................................................5

*In re Novartis Wage and Hour Litigation*,
    611 F.3d 141 (2d Cir. 2010)..............................................................................................4, 18

*Knight v. U.S. Fire Ins. Co.*,
    804 F.2d 9 (2d Cir. 1986) .....................................................................................................3

*Lutz v. Ameritech*,
    208 F.3d 214 (6th Cir. 2000) ...............................................................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................................................3

*Okoro v. Marriott Int'l, Inc.*,
    No. 07-CV-157, 2008 WL 4449386 (S.D.N.Y. Sept. 29, 2008)...........................................3

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
    685 F. Supp. 2d 456 (S.D.N.Y. 2010)................................................................22

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d. Cir. 1997).......................................................................3

*Reich v. John Alden Life Ins. Co.*,
    126 F.3d 1 (1st Cir. 1997)..............................................................10, 16, 17

*Reiseck v. Universal Comms. of Miami*, Inc.,
    591 F.3d 101 (2d Cir. 2010).......................................................................5

*Rubery v. Buth-Na-Bodhaige, Inc.*,
    470 F. Supp. 2d 273 (W.D.N.Y. 2007)..........................................................20

*Sav-on Drug Stores, Inc. v. Super. Ct. of L.A. Cty.*,
    96 P.3d 194 (Cal. 2004)...........................................................................20

*Savage v. UNITE HERE*,
    No. 05-CV-10812 (LTS) (DCF), 2008 WL 1790402 (S.D.N.Y. April 17, 2008)............11

*Wallace v. Countrywide Home Loans, Inc.*,
    No. 08-CV-1463, 2009 U.S. Dist. LEXIS 110140 (C.D. Ca. Nov. 23, 2009).................20

## **Statutes and Rules**

29 C.F.R. § 541.200(a).................................................................................4

29 C.F.R. § 541.201(b) ................................................................................6

29 C.F.R. § 541.202(a)...............................................................................13

29 C.F.R. § 541.202(b) ..............................................................................16

29 C.F.R. § 541.202(c)...............................................................................13

29 C.F.R. § 541.202(e)..........................................................................13, 17

29 C.F.R. § 541.203(b)...........................................................................9, 10

29 C.F.R. § 541.700(a)............................................................................4, 5

29 C.F.R. § 541.700(b) ...............................................................................5

FED. R. CIV. P. 56(c) ...................................................................................2

FED. R. CIV. P. 56(e) ...................................................................................3

iv

FED. R. EVID. 407 ............................................................................................................19

## PRELIMINARY STATEMENT

Plaintiffs Jeffrey Cohen ("Plaintiff Cohen" or "Mr. Cohen"), Matthew Ronen ("Plaintiff Ronen" or "Mr. Ronen") and Ashleigh Baldwin ("Plaintiff Baldwin" or "Ms. Baldwin") (collectively, "Plaintiffs") respectfully submit the following Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment With Respect to Liability and In Opposition to Defendant's Cross-Motion for Summary Judgment. As set forth more below, Defendant cannot show that there are no disputed issues of fact which would preclude summary judgment. Indeed, the statement of "undisputed" material facts submitted by Defendant is rife with unsupported statements of fact and gross mischaracterization of the testimony and evidence developed during discovery in this matter. As a result, many of these purported statements of undisputed are, in fact, easily disputed or completely unsupported. Defendant's failure in this regard is fatal to its cross-motion for summary judgment. Instead, as outlined below and in Plaintiffs' prior submission, Plaintiff is entitled to summary judgment because Defendant simply cannot show that Plaintiffs' primary duty as Research Associate was the performance of duties that satisfy the elements of the Fair Labor Standards Act's ("FLSA") and New York Labor Law's ("NYLL") administrative exemption.

Specifically, Defendant's cross-motion for summary judgment fails because (i) Defendant cannot establish that Plaintiffs' primary duty involved the performance of work directly related to the management or general business operations of Defendant or its clients; (ii) Defendant has failed to meet its burden of showing that there are no disputed issues of fact regarding whether Plaintiffs' primary duty includes the exercise of discretion and independent judgment; and (iii) Defendant cannot establish that any discretion or independent judgment exercised by Plaintiffs related to matters of significance for Defendant or its clients. While

Defendant tries to manufacture evidence which would show the relationship between Plaintiffs'

performance of their duties and the management and general business operations of Defendant's

clients, Defendant has failed to present any admissible evidence (i.e. non-hearsay or personal

knowledge-based evidence) which would support such a finding.  With respect to Defendant's

own management and general business operations, Defendant's cross-motion is based on a gross

exaggeration and mischaracterization of the work performed by Plaintiffs as Research

Associates, which, at the very least raises disputed issues of fact which preclude summary

judgment on Defendant's cross motion.  Instead, for the reasons outlined below and more fully in

Plaintiffs' prior submission, Plaintiffs respectfully submit that they are entitled to summary

judgment on their motion as there are no disputed issues of fact pertaining to Defendant's

inability to show that Plaintiffs' primary duties involved the performance of duties exempt under

the administrative exemption.

## <u>ARGUMENT</u>

## I.    SUMMARY JUDGMENT STANDARD

As the Court is aware, summary judgment may not be granted unless all of the

submissions taken together "show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The moving party bears the burden of

demonstrating the absence of a material factual question, and in making this determination, the

court must view all facts 'in the light most favorable' to the non-moving party."  *Celotex*, 477

U.S. at 323.

A genuine issue of material fact exists only where "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  Although all facts are construed in favor of the non-moving party, such party

may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a

motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), but

"must come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986) (emphasis

removed).  Similarly, only disputes over material facts – facts that might affect the outcome of

the suit under the governing law – will properly preclude the entry of summary judgment.  *Okoro*

*v. Marriott Int'l, Inc.,* No. 07-CV-157, 2008 WL 4449386, *4 (S.D.N.Y. Sept. 29, 2008) (citing

*Anderson*, 477 U.S. at 248).  Further, "[t]he principles governing admissibility of evidence do

not change on a motion for summary judgment. Rule 56(e) provides that affidavits in support of

and against summary judgment 'shall set forth such facts as would be *admissible in evidence.*'"

(*Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d. Cir. 1997) (emphasis in original) (citing FED. R. CIV.

P. 56(e)).  "Therefore, only admissible evidence need be considered by the trial court in ruling on

a motion for summary judgment." *Id.*

As set forth below, as well as in Plaintiffs' Memorandum of Law In Support of Their

Motion for Summary Judgment With Respect To Liability ("Plaintiffs' Opening Brief"),

Defendant is not entitled to summary judgment with respect to their cross-motion for summary

judgment as there are numerous disputed issues of fact regarding Defendant's cross-motion.

## II.    APPLICATION OF THE ADMINISTRATIVE EXEMPTION

While Defendant asserts in their cross-motion for summary judgment that there is no

dispute that Plaintiffs were covered by the FLSA's administrative exemption, in order to

establish that it is entitled to summary judgment, Defendant must establish that there is no

genuine issue of material fact regarding the application of this exemption.  The Department of

Labor's Regulations ("DOL Regulations") define an administrative employee as one: (i) who is "compensated . . . at a rate not less than $455 per week;" (ii) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (iii) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).

As the employer asserting the application of this exemption, Defendant bears the burden of proving that Plaintiffs fall within the application of the administrative exemption.  *See In re Novartis Wage and Hour Litigation*, 611 F.3d 141, 150 (2d Cir. 2010) ("The burden of proving that employees fall within such an exemption is on the employer.").  Further, "[b]ecause the FLSA is a 'remedial law,' exemptions to the overtime pay requirement are 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'"  *Id.* at 150 (internal citations omitted).

The DOL Regulations define an employee's "primary duty" as "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  "While the determination of an employee's primary duty must be based on all the facts in a particular case . . . [t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee.  Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement."  29 C.F.R. § 541.700(a), (b); *see also Reiseck v. Universal Comms. of Miami*, Inc., 591 F.3d 101, 107 (2d Cir. 2010) ("Under the interpretive regulations, an employee's 'primary duty' is the duty that consumes a 'major part, or over [fifty] percent of the employee's time.'").

Finally, the application of the administrative exemption presents a mixed question of law and fact, that is, "[w]hether a duty falls within the definition of the given exemption is a question of law, but whether and to what extent a worker performed that duty constitutes an issue of fact." *Downes v. J.P. Morgan Chase & Co.*, No. 03 Civ. 8991 (GEL), 2007 WL 1468218, * 10 (S.D.N.Y. May 16, 2007) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). At present, Defendant is unable to meet its burden because there are a number of disputed issues of fact which preclude summary judgment.

### A. WHETHER PLAINTIFFS' PRIMARY DUTY WAS THE PERFORMANCE OF WORK DIRECTLY RELATED TO THE MANAGEMENT OR GENERAL BUSINESS OPERATIONS OF GLG OR ITS CLIENTS

In moving for summary judgment, Defendant identifies a number of job duties which it lumps into the category of Plaintiffs' primary duty. Rather than support its argument, Defendant's position actually affirms that there are a number of disputed issues of fact regarding whether and to what extent Plaintiffs performed these duties. Specifically, Defendant asserts that Plaintiffs performed (i) research and advisory activities, (ii) promotional and marketing activities, and (iii) compliance functions that were allegedly vital to both GLG's strategies and/or its clients' interests.[1]

#### 1. Defendant <u>Cannot</u> Establish That Plaintiffs' Primary Duty Involved The Performance of Advisory Responsibilities That Were Vital To Both GLG's Strategy And Its Clients' Research

In this branch of its motion, Defendant hangs its hat on a single word in the DOL Regulations' definition of duties which will generally be found to be directly related to

---

[1] As outlined below (and as predicted in Plaintiffs' Opening Brief), Defendant has not presented any admissible evidence which would establish that Plaintiffs' performed work directly related to the management or general business operations of GLG's clients. While Defendant attempts to argue that Plaintiffs primary duties included advisory responsibilities that were "vital" to GLG's clients' research, Defendant has presented no evidence which would establish that there was any relationship, let alone a direct relationship, between the work performed by Plaintiffs and the management or general business operations of GLG's clients.

management or general business operations: <u>research</u>.  *See* 29 C.F.R. § 541.201(b).  First, there is no dispute that the research function performed by Plaintiffs related solely to GLG's clients, rather than GLG.  (*See* Plaintiffs' Local Rule 56.1 Counter-Statement of Material Facts In Opposition to Defendant's Cross-Motion For Summary Judgment ("Pl.'s Counter-Statement") ¶¶ 61-63, 67, 69, 72, 75, 81, 83, 84, 89).  That is, Plaintiffs did not serve in an advisory function with respect to Defendant and did not provide any research advice regarding Defendant's business strategy, management or general business operations.  Thus, for Defendant to establish that Plaintiffs' alleged advisory function qualifies as exempt under the administrative exemption, it must establish that the research advisory function allegedly performed by Plaintiffs was directly related to the management or general business operations of Defendant's clients.

Defendant cannot do this for two reasons.  First, it is undisputed that it was "GLG's more than 200,000 Council Members – not its handful of Research Associates – who the produced the research services for which GLG was paid." (*See* Defendant's Memorandum of Law In Opposition to Plaintiffs' Motion for Summary Judgment on Liability and In Support Of Defendant's Cross-Motion For Summary Judgment ("Def. Br."), at 13.)  Second, and more fundamentally, Defendant has not presented any admissible evidence which would establish whether and to what extent Plaintiffs' performance of this alleged research advisory function related to the management or general business operations of Defendant's clients.  While Defendant asserts that Plaintiffs served as "research partners," "thought partners" and/or "trusted advisors" to Defendant's clients, Defendant has not presented evidence or testimony from anyone with first-hand knowledge of the relationship between any services performed by Plaintiffs and the management or general business operations of Defendant's clients.  (*See* Pl.'s Counter Statement ¶¶ 93, 101, 117, 118, 122, 124).

As Plaintiffs noted in their opening brief, Plaintiff Cohen attempted to obtain deposition testimony from a number of clients that Plaintiff Cohen worked with during the course of his employment as a Research Associate in order to obtain discovery regarding the nature and extent of his work with them, but Defendant opposed such attempts, arguing that such information was immaterial to any inquiry into Plaintiff Cohen's primary duty as a Research Associate. Ultimately, the Court agreed with Defendant and quashed Plaintiff Cohen's subpoenas. *See* Order, dated Nov. 24, 2009, Dkt. No. 63.  Because Plaintiff Cohen was precluded from conducting discovery concerning whether the work performed by him directly related to the management or general business operations of GLG's clients (and would have been similarly precluded from obtaining discovery concerning Plaintiffs Ronen and Baldwin), there is no admissible evidence in the record which would support Defendant's position.  Thus, Defendant has not presented any evidence (let alone shown that there is no disputed issue of fact) and thus cannot obtain summary judgment based on its argument that Plaintiffs performed work related to the management or general business operations of GLG's clients.

The cases cited by Defendant on this point are of little use with respect to the instant motions.  First, Plaintiffs are unlike the Neighborhood Office Agents found to be exempt in *Hogan v. Allstate Ins. Co.*, 361 F.3d 621 (11th Cir. 2004), who were "responsible for selecting, maintaining, and supervising their own offices" and whose chief duties "were to promote and to sell Allstate's insurance products, to advise and to service customers and potential customers, and to oversee the operation of their staff."  361 F.3d at 624.  Similarly, the work performed by Plaintiffs stands in stark contrast to the plaintiff in *Hein v. PNC Financial Servs. Group, Inc.*, 511 F. Supp. 2d 563 (E.D. Pa. 2007), who "managed 200 client accounts worth an aggregate of approximately $25,000,000 and $30,000,000" and "sold myriad financial instruments, including

securities, stocks, bonds, mutual funds, variable annuities, fixed annuities, life insurance and long-term care insurance."  511 F. Supp. 2d at 566.  Thus, Defendant simply cannot establish that Plaintiffs' primary duty involved the performance of duties directly related to the management and general business operations of Defendant's clients.

> **2.     Defendant Cannot Establish That Plaintiffs' Primary Duty Involved Promoting And Marketing GLG's Services To Clients, Which Was Critical To GLG's Strategy**

Defendant next argues that Plaintiffs' primary duties involved promoting and marketing GLG's services to clients and that Plaintiffs' execution on GLG's clients' research requests somehow constitutes promotion of sales.  While Plaintiffs do not dispute that, at times, Plaintiffs assisted GLG's separate sales department (*see* Pl.'s Counter-Statement ¶¶ 142, 144, 151, 152, 153, 157, 159, 163,175), it is undisputed that Plaintiffs' primary duty was not assist sales, but to execute projects requested by Defendant's clients.  (*See* Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment With Respect to Liability ("Pl.'s 56.1 Stmt.") ¶¶ 12, 17, 22, 24, 34, 36; Pl.'s Counter-Statement ¶¶ 141, 142, 159, 163, 168).  Further, Defendant's job description for the Research Associate position provides that Plaintiffs were "responsible for managing and executing primary research deliverables to add value to Gerson Lehrman Group clients."  (See Pl.'s 56.1 Stmt ¶ 5).  Noticeably absent from this job description is any reference to these "promotion" or "marketing" responsibilities which Defendant now claims constitute one of (or all of) Plaintiffs' primary duties.[2]

---

[2]     While Plaintiffs are cognizant of the fact that a job title or job description is insufficient to establish the exempt or non-exempt status of an employee (*see* 29 C.F.R. § 541.2), this job description is certainly relevant to the analysis of whether Plaintiffs' primary duties involved the exercise of exempt work.  The fact that Defendant's job description does not even mention marketing is telling evidence which reveals Defendant's attempts to shoe-horn Plaintiffs' job duties into the definition of "promotion" or "marketing" as nothing more than a *post hac* legal strategy meant to avoid liability in this case.

Similarly, Defendant's reliance on the DOL Regulations related to the financial services industry is unavailing.  While 29 C.F.R. § 541.203(b) provides that "employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products," Defendant has failed to establish that the work performed by Plaintiffs meets this definition.  As the Second Circuit noted in *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009), the purpose of this new regulation was "to clarify the distinction between employees performing substantial and independent financial work and employees who merely sold financial products."  587 F. 3d at 534.

At present, Defendant has failed to establish that Plaintiffs' primary duty was the marketing, servicing or promoting the employer's financial products.  The work performed by Plaintiffs was vastly different from the duties outlined in 29 C.F.R. § 541.203(b).  Indeed, none of Plaintiffs' primary duties involved collecting and analyzing information regarding the customer's income, assets, investments or debts.  Similarly, Plaintiffs were not involved in any determination of which financial products best met the customer's needs and financial circumstances and did not advise Defendant's customers regarding the advantages and disadvantages of different financial products.  Instead, Plaintiffs' primary duty involved executing GLG's clients' research requests as established by Plaintiffs' performance reviews which placed an emphasis on the total number of projects performed by Plaintiffs.  (*See* Pl.'s 56.1 Stmt. ¶¶ 12, 17, 22, 24, 34, 36, 49, 50, 56).  Thus, Plaintiffs do not qualify as administrative employees pursuant to 29 C.F.R. § 541.203(b).

While Defendant relies heavily on the First Circuit's decision in *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997), the facts of this case are plainly distinguishable from the work that was being performed by Plaintiffs.  The First Circuit found that the employees at issue in *John Alden* – marketing representatives – were exempt administrative employees whose primary duty was "to cultivate [the employer's] independent agent sales force and, thereby, ultimately increase sales of [the employer's] products." *Id.* at 3.  To this end, the marketing representatives at issue in *John Alden* "attend[ed] weekly sales meetings with a District Manager, where they learn[ed] about new products and exchange[d] information about sales techniques they have found to be effective" and "also pass[ed] along any information they might have received from agents – for instance, information concerning a competitor's new products or prices, or about which products are selling well – that might be helpful to the company in designing new products." *Id.* at 4.  Thus, it is plainly evident that the marketing representatives referenced in *John Alden* are markedly dissimilar from the Plaintiffs whose primary duty was to "execute projects" "get[] projects out the door," and "crank[] out a greater volume of projects." (*See* Pl.'s 56.1 Statement ¶ 17, 24, 36).

Defendants' reliance on *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008) is similarly unavailing as the employee in that case served as Director of Sales and played "a significant role in conducting both specific sales and shaping [the employer's] more general market strategy." 515 F.3d at 339.  Similarly, the decision in *Savage v. UNITE HERE*, No. 05 Civ. 10812 (LTS) (DCF), 2008 WL 1790402 (S.D.N.Y. April 17, 2008) is distinguishable because the plaintiff in that case served as a "representative of UNITE who promoted her employer and increased UNITE's membership base [whose] duties related to the running and servicing of UNITE's business." 2008 WL 1790402 at *8.

Accordingly, Defendant cannot establish that Plaintiffs' primary duty involved the performance of sales support, marketing or promotional work that would qualify as exempt under the FLSA.

### 3. Defendant <u>Cannot</u> Establish That Plaintiffs' Primary Duty Included Compliance Functions That Were Vital To GLG's Business And Its Clients' Interests

Defendant next argues that the limited compliance work performed by Plaintiffs qualifies Plaintiffs' duties as exempt work. While it is generally not disputed that Plaintiffs performed some compliance work as part of their job duties as a Research Associate, Defendant cannot establish that these duties were Plaintiffs' primary duties. (*See* Pl.'s Counter-Statement ¶¶ 198-200, 207, 218-220, 225). Further, Defendant cannot establish that these duties were "vital" to its clients' interests. (*See* Pl.'s Counter-Statement ¶ 191). Thus, Defendant has failed to establish that Plaintiffs' primary duty was the performance of exempt compliance work.

While Defendant understandably plays up the compliance elements, there are a number of disputed issues of fact which preclude summary judgment on this issue, such as whether and to what extent Plaintiffs performed these compliance duties. (*See* Pl.'s Counter-Statement ¶¶ 197-200, 203, 207, 220-221, 225, 230). As with Defendant's assertion that Plaintiffs performed a research advisory function that was vital to GLG's clients' research, Defendant has failed to present any admissible evidence which would establish that Plaintiffs' limited compliance role was "vital" to GLG's clients' interests. While Defendant tries to achieve this through a declaration from Sam Jacobs (*see* Pl.'s Counter Statement ¶¶ 191, 192, 218, 219), the cited portions of Mr. Jacobs' declaration are plainly inadmissible hearsay and cannot be considered in the context of Defendant's cross-motion for summary judgment. (*See* Affidavit of Sam Jacobs at ¶ 4 ( "I also spoke with hundreds of clients about the services offered by GLG, how those

services met the clients' needs, and what the clients valued about GLG.") and ¶ 12 ("Through hundreds of discussions with clients, it was my clear understanding that clients deeply valued GLG's compliance function and saw it as a fundamental part of GLG's value proposition.")). Thus, Defendant cannot establish that Plaintiffs' compliance duties were directly related to the management and business operations of Defendant's clients.

    **4.**    **Defendant Has Failed To Establish That There Are No Genuine Issues Of Fact Regarding The Application Of The Administrative Exemption**

As the above makes clear, even assuming that Defendant could show that Plaintiffs engaged in the advisory, marketing/promotion and compliance duties and that such duties were properly exempt under the administrative exemption, there are genuine issues of fact as to what extent Plaintiffs performed these duties. Similarly, the finder of fact must also determine whether these duties, when aggregated, are sufficient to show that Plaintiffs' primary duties involved non-exempt work. *See Downes*, 2007 WL 1468218 at *12 ("In assessing an employee's classification under the FLSA . . . a factfinder must parse the employee's different functions, and decide which among them is her 'primary duty.'"). Thus, even accepting Defendant's argument as true (which is the opposite of what is required when considering Defendant's cross-motion), there are genuine issues of fact which preclude summary judgment.

    **B.**    **WHETHER PLAINTIFFS' PRIMARY DUTY INCLUDED THE EXERCISE OF INDEPENDENT JUDGMENT AND DISCRETION WITH RESPECT TO MATTERS OF SIGNIFICANCE**

In order to succeed in its cross-motion, Defendant must also show that (i) Plaintiffs' primary duty included "the exercise of discretion and independent judgment" and (ii) that such discretion and independent judgment related to "matters of significance." 29 C.F.R. §

541.202(a).  As outlined below, there are disputed issues of fact which preclude summary judgment on the first element while Defendant simply cannot establish the second element.

> 1. **There Are Disputed Issues Of Fact Regarding Whether Plaintiffs' Primary Duty Involved The Exercise Of Independent Judgment And Discretion**

In order to establish that Plaintiffs' primary duty involved the exercise of discretion and independent judgment, Defendant must show that Plaintiffs have the "authority to make an independent choice, free from immediate direction or supervision."  29 C.F.R. § 541.202(c). Further, the DOL Regulations also provide that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  29 C.F.R. § 541.202(e).

While Defendant asserts that Plaintiffs exercised discretion and independent judgment in the exercise of their duties, there are genuine issues of fact which preclude summary judgment on this issue as Defendant has grossly overstated Plaintiffs' job duties in their attempt to show that Plaintiffs' job duties involve the exercise of discretion and independent judgment.  (*See* Pl.'s Counter Statement ¶¶ 240, 246, 251-253, 261, 262, 265, 267, 270, 276, 281, 284, 285, 286, 288, 290, 291, 293, 295-297).  For example, while Defendant asserts that Plaintiff Cohen "*independently managed* GLG's relationship with and services for a large number of clients," there is no support for this conclusion in the purported statements of undisputed facts cited by Defendant.  (*See* Def. Br. at 17) (emphasis added).  Further, as Mr. Cohen testified he "just executed [these clients'] project work." (*See* Pl.'s Counter-Statement ¶¶ 285, 288).  Similarly, Plaintiffs did not, as Defendant asserts, "advise[] on rates with Council Members." (*See* Pl.'s Counter-Statement ¶¶ 291, 297, 303).  Additionally, Defendant also asserts that Plaintiffs "regularly approved payments to Council Members that committed GLG to pay for thousands of

dollars of services," however, this "approval" was nothing more than the cursory review to ensure that a particular project had actually occurred (though Plaintiffs often had no way of knowing whether an interaction had actually occurred and would only deny payment if the client contacted them and told them that the interaction had not in fact occurred).  (*See* Pl.'s Counter-Statement ¶¶ 291, 297, 302, 303).

Instead, Plaintiffs' primary duty involved the execution of basic research projects (i.e. putting Defendants' clients in touch with relevant Council Members) which did not require anything more than the application of well-established techniques to a particular request. Specifically, it is clear that Plaintiffs' primary duty involved the execution of primary research requests (which primarily consisted of phone consultations) and was extremely repetitive given that many of Defendant's clients requested the same things such that Plaintiffs simply copied prior projects requested by other clients.  (*See* Pl.'s 56.1 Statement ¶¶ 13, 22, 23, 38, 39, 42).

As the foregoing establishes, there are, at the very least, disputed issues of fact regarding whether and to what extent Plaintiffs' primary duties involved the exercise of discretion and independent judgment.

      **2.**     **There Is No Dispute That Plaintiffs' Primary Duty Did Not Involve The Exercise Of Discretion And Independent Judgment With Respect To Matters Of Significance To GLG Or Its Clients**

While Defendant asserts that "Plaintiffs' advisory duties with respect to clients' research projects were fundamental to the business of both GLG and its clients and, therefore, pertained to 'matters of significance'" (*see* Def. Br. at 19-20), Defendant is unable to establish that there are no disputed issues of fact related to this assertion.  Thus, Defendant's cross-motion for summary judgment should be denied.  Further, as outlined more fully in Plaintiffs' Opening Brief, there is

no disputed issue of fact which would preclude summary judgment in favor of Plaintiffs on this issue.

As an initial matter, (and as noted above with respect to the management and general business operations element of the administrative exemption), Defendant cannot establish that Plaintiffs' primary duty involved the exercise of discretion and independent judgment with respect to matters of significance for Defendants' clients.  While Defendant summarily asserts that "Plaintiffs' advisory duties . . . were fundamental to the business of both GLG and its clients" and that "GLG's clients recognized the significance of [Plaintiffs'] compliance role" (Def. Br. at 19-20), Defendant has not presented any admissible evidence which would establish the significance of these duties as they related to the management and general business operations of Defendant's clients.  Instead, Defendant supports its argument with pure conjecture.  (*See* Pl.'s Counter Statement ¶¶ 93, 117, 118, 122, 124).

With respect to the issue of whether Plaintiffs' primary duty involved the exercise of discretion and independent judgment with respect to matters of significance to GLG, Defendant cannot establish that this is the case.  Defendant argues that Plaintiffs satisfy this requirement in three ways: (i) through their advisory duties with respect to clients' research projects, (ii) through their compliance duties, and (iii) by "contributing to the formulation and implementation of management policies and operating practices," (*see* Def. Br. at 19-20), yet as the below demonstrates there are disputed issues of fact which preclude summary judgment on behalf of Defendant.

### a.   Plaintiffs' Research Advisory Duties Do Not Relate To Matters Of Significance To GLG

Because it is undisputed that Plaintiffs did not serve in an advisory function with respect to Defendant and did not provide any research advice regarding Defendant's business strategy,

Defendant attempts to argue that the advisory duties that Plaintiffs performed for Defendant's clients were fundamental to GLG's business.  This argument fails, however, because – as explained more fully in Plaintiffs' Opening Brief – this function was directly related to GLG's day-to-day business operations and not administrative duties related to the running of the business.  *Davis*, 587 F.3d at 535 ("administrative functions . . . are functions that must be performed no matter what the business produces").  Further, this function does not fall under (and is considerably different than) the considerations enumerated in the DOL Regulations.  *See* 29 C.F.R. § 541.202(b).

Cognizant of this, Defendant does not even attempt to argue that this function meets the DOL Regulations' definition and cites to two cases that fail to support Defendant's position.  For example, Defendant's reliance on *Lutz v. Ameritech*, 208 F.3d 214, 215 (6th Cir. 2000), is misplaced as the portion of *Lutz* that Defendant relies upon relates not to the "matters of significance element," but to the prong of the administrative exemption which relates to office or non-manual work.  208 F.3d at 215 (after describing duties related to clients, states "[b]ased on this description and other evidence from the record, we find plaintiff's position is non-manual in nature").  Similarly, the portion of the *John Alden* decision which relates to the "discretion and independent judgment" makes no mention of any client-related activities as supporting the finding that such activities related to matters of significance.  Indeed, while Defendant includes the following parenthetical, "employees who advise customers regarding which products fit their needs exercise discretion and judgment on matters of significance to the employer's business," the decision does not stand for this proposition.  Instead, it is clear from a plain reading of *John Alden* that the court was referring to those employees' dealings with the company's licensed independent insurance agents.  *See John Alden*, 126 F.3d at 13-14.

16

**b.    Plaintiffs' Compliance Duties And Formulation And Implementation of Management And Operating Policies Are Not Plaintiffs' Primary Duties**

Defendant next attempts to qualify Plaintiffs' employment within the contours of the administrative exemption by arguing that Plaintiffs' duties related to compliance or implementation of management by relying on certain compliance related duties performed by Plaintiffs and Plaintiffs' activities which had an effect on Defendant's operating policies. Regardless of whether these duties qualify as related to matters of significance for GLG, it is undisputed that these duties encompass only a small fraction of Plaintiffs' job duties.  Thus, these duties cannot establish that Plaintiffs' primary duty involved the performance of exempt work.

With respect to Plaintiffs' compliance duties, there are disputed issues of fact regarding whether Plaintiffs' exercised discretion and independent judgment.  First, as the DOL Regulation provides, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  29 C.F.R. § 541.202(e).  It is undisputed that Defendant provided Plaintiffs with a comprehensive set of guidelines to follow with respect to compliance.  (See Pl.'s Counter Statement ¶¶ 233).  While Defendant asserts that these guidelines could not address the multitude of specific compliance issues, these "guidelines" certainly tried as these 89-page and 82-page documents provide a comprehensive outline of potential issues including templates and examples as to how to respond.  (*See* Pl.'s Counter Statement ¶ 233).  Thus, Plaintiffs do not exercise discretion and independent judgment with respect to their performance of compliance related functions which are ancillary to their project execution work.  *See In re Novartis*, 611

17

F.3d at 157 (finding that the employees skills "are exercises within severe limits imposed by Novartis").

Second, Defendant cannot establish that these compliance functions constituted Plaintiffs' primary duties.  Indeed, while it is undisputed that Plaintiffs performed a compliance function, Defendant overstates the extent of their compliance function.  (*See* Pl.'s Counter Statement ¶ 199 ("keep[ing] an eye out for potentially troubling compliance issues"),  ¶ 207 ("everything was so consistent and similar that he would immediately be aware if something was not right"), ¶ 225 ("for the most part,  . . . I don't remember that many [compliance issues] occurring").  Instead, it is clear that this function was ancillary to Defendant's primary duty of executing projects and research requests from Defendant's clients.

With respect to Plaintiffs' alleged contributions "to the formulation and implementation of management policies and operating practices and participat[ion] in planning of long- and short- term business objectives, and perform[ance of] work that affected business operations to a substantial degree[3] (*see* Def. Br. at 20), it is undisputed that these tasks did not take up a significant amount of Plaintiffs' time.  (*See* Pl.'s Counter Statement ¶¶ 318, 320, 322, 325-328). Because these duties were minimal in the context of Plaintiffs' overall duties, they do not support Defendant's claim that Plaintiffs' primary duty involved the performance of non-exempt work.

### C.   DEFENDANT'S RECLASSIFICATION OF THE RESEARCH ASSOCIATE POSITION CONSTITUTES AN ADMISSION THAT PLAINTIFFS WERE NOT PERFORMING EXEMPT WORK

Notwithstanding the above-outlined reasons why Defendant has failed to establish that the work performed by Plaintiffs qualifies as exempt, Defendant's reclassification of the Research Associate position is also evidence which establishes that the work performed by

---

[3]      It is undisputed that Plaintiff Baldwin did not perform any of these functions as Defendant fails to cite to any example pertaining to Plaintiff Baldwin.  Thus, for purposes of Ms. Baldwin's FLSA claims, this portion of Defendant's motion is inapplicable.

Plaintiffs was not exempt work.  (*See* Pl.'s 56.1 Stmt. ¶ 76-77).  While Defendant asserts that this evidence is not admissible to the parties' current motion, Defendant is simply wrong as this evidence does not qualify as a subsequent remedial measure pursuant to Fed. R. Evid. 407. Further, contrary to Defendant's argument, while we agree that this decision is not dispositive on the issues presented in the instant motions, it is evidence that the Court can consider for purposes of this motion.

While Defendant continues to pursue their nonsensical argument that Plaintiffs were not reclassified, there is no dispute that on the same day that they were promoted to the Research Manager position, Defendant reclassified the Research Associate position and began paying them overtime compensation (at one and one-half times their regular rate) for any hours that they worked in excess of 40 in a given week.  Thus, regardless of the fact that Plaintiffs were promoted, Defendant's reclassification of the Research Associate is relevant to the issue of whether Plaintiffs were misclassified as non-exempt during the period of time that they were employed by Defendant as Research Associates.

Similarly, Defendant's argument that Fed. R. Evid. 407 bars this decision as a subsequent remedial measure also fails.  First, Defendant has repeatedly argued throughout the course of these proceedings that the decision to reclassify the Research Associate position had nothing to do with any concern about the position being misclassified.  (*See* Pl.'s Counter Statement ¶ 334). Thus, Defendant cannot now argue that this decision qualifies as a subsequent remedial measure when Defendant refuses to admit that it was meant to be remedial.  Similarly, even if Defendant had reclassified the position out of a concern that the position was misclassified, Defendant's decision to reclassify the position going forward (as opposed to paying any back pay to those

employees in the position prior to the reclassification) was not a remedial measure as it failed to provide any retroactive remedy.

Accordingly, courts regularly consider evidence of an employer's reclassification at summary judgment and/or trial.  *See*, *e.g.*, *Wallace v. Countrywide Home Loans, Inc.*, No. 08-CV-1463, 2009 U.S. Dist. LEXIS 110140, *15-17 (C.D. Ca. Nov. 23, 2009) (denying summary judgment upon finding that "genuine issue of fact remains as to whether reclassification was an admission that wages were 'concededly due' or were instead a resolution to a 'bona fide' dispute'"); *Rubery v. Buth-Na-Bodhaige, Inc.*, 470 F. Supp. 2d 273, 280 n.6 (W.D.N.Y. 2007) (in denying summary judgment, court noted that "[t]here also appears to be a factual dispute regarding the defendant's decision to change [plaintiff's] status to non-exempt"); *Sav-on Drug Stores, Inc. v. Super. Ct. of L.A. Cty.*, 96 P.3d 194, 202 n.4 (Cal. 2004) (noting that the trial court "could rationally have regarded the reclassification as common evidence respecting both defendant's classification policies and the [employee's] actual status during the relevant period").  Thus, this Court can (and should) consider this evidence in the context of the instant motions.

Notwithstanding the foregoing, even if the Court finds that the reclassification decision itself is a remedial measure, the same does not apply to statements made by Defendant following the reorganization.  Specifically, in a memorandum prepared for Defendant's managers related to the reclassification of the Research Associate position, Defendant stated: (i) "As part of our annual compensation review and periodic evaluations of positions, we have determined that certain positions are appropriately classified as non-exempt under the FLSA effective January 1, 2009;" and (ii) "We reviewed the actual duties being performed currently, and determined based on those duties that certain positions are appropriate classified as non-exempt effective January

1, 2009." (*See* Pl.'s Counter-Statement ¶ 340).  Thus, regardless of whether the decision itself was a remedial measure, these statements are admissible evidence which the Court can consider, and, when viewed in the light most favorable to Plaintiffs as the non-moving party (at lease with respect to Defendant's cross-motion), constitute compelling evidence which precludes summary judgment on Defendant's cross claim.

## III.    DEFENDANT IS NOT ENTITLED TO DISMISSAL OF PLAINTIFF COHEN'S CLAIM

Defendant's request to dismiss Plaintiff Cohen's claims based on his alleged spoliation of evidence is inconsistent with Second Circuit law and unwarranted in light of the facts and circumstances of the instant matter.  As the primary case cited by Defendant recognizes, "dismissal with prejudice is a harsh remedy to be used only in extreme situations."  *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990) (reversing district court's dismissal of plaintiff's claims as a sanction for violation of discovery order).  As an initial matter (and as noted in Plaintiff Cohen's memoranda in support of his motion for summary judgment on Defendant's Counterclaims), Defendant has failed to establish that Plaintiff actually deleted any potential evidence in this matter.  Similarly, and in direct contrast to Defendant's request for dismissal of this claim, Plaintiff Cohen was actually required to delete "old and extraneous data files."  Defendant's motion also fails because Defendant has failed to identify any evidence that was allegedly destroyed and that such evidence would have been helpful in proving Defendant's claims or defenses.  *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010) (A party seeking dismissal on spoliation grounds "must also show that the evidence would have been helpful in proving its claims or defenses-*i.e.,* that the innocent party is prejudiced without that evidence.").  Further, as Defendant repeatedly noted in correspondence between the parties and with the Court, it has produced nearly 4,000

pages of documents and more than 175,000 emails that Plaintiff sent or received during the period that he was employed as a Research Associate.  Thus, Defendant cannot establish that dismissal is appropriate in this instance.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Summary Judgment With Respect to Liability and deny Defendant's Cross-Motion for Summary Judgment so that the parties may proceed with discovery concerning the certification of Plaintiffs' class claims under the New York Labor Law and then proceed to trial on damages.

Dated:  April 8, 2011
      New York, New York             Respectfully submitted,

                                **THOMPSON WIGDOR & GILLY LLP**

                                By:  /s/  Gregory N. Filosa
                                     Douglas H. Wigdor
                                     Gregory N. Filosa

                                85 Fifth Avenue
                                New York, NY 10003
                                Telephone:  (212) 257-6800
                                Facsimile:   (212) 257-6845

                                *Counsel for Plaintiffs*