# Exhibit A

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
Fax: 212.309.6001
www.morganlewis.com



Morgan Lewis
COUNSELORS AT LAW

**Andrew J. Schaffran**
212.309.6380
aschaffran@morganlewis.com

December 11, 2009

<u>VIA HAND DELIVERY</u>

The Honorable P. Kevin Castel
Southern District of New York
500 Pearl Street
New York, NY  10007

Re:     *Cohen, et al. v. Gerson Lehrman Group, Inc.*, 09-CV-04352 (PKC)

Dear Judge Castel:

We are counsel for Defendant Gerson Lehrman Group, Inc. ("GLG") in the above-referenced matter.  Plaintiff Jeffrey Cohen ("Cohen") worked for GLG as a Research Associate, which involved (1) research and advisory responsibilities vital to both GLG and its clients; (2) promoting and marketing GLG's expert advisory services; (3) legal and regulatory compliance functions that mitigated risk for GLG and its clients; and (4) the regular exercise of independent judgment and discretion with respect to matters of significance.  Yet, he now claims (for the first time, after resigning to attend business school) that he was entitled to overtime wages in that position.  Cohen also purports to bring a class and collective action on behalf of allegedly similarly-situated Research Associates, but the Court need not address those claims (or the pending motions to strike and for conditional certification relating to those claims) because Cohen's individual claims fail as a matter of law.  Contrary to the attempt to downplay Cohen's job duties in the Complaint, his deposition testimony and his own description of his work duties in numerous documents written by him confirm that there is no genuine issue of material fact regarding the exempt nature of Cohen's duties as a Research Associate.[1]  In addition, based on Cohen's undisputed spoliation of evidence relevant to his claims, an independent basis exists to

---

[1]     Cohen has relied heavily on his contention that GLG decided to pay overtime to a handful of remaining Research Associates for a short period of time in 2009 because the Company realized that it had previously misclassified Research Associates as exempt.  Yet, Cohen admitted at this deposition that he has no personal knowledge as to why GLG made that decision, and that he was not personally affected by that decision.  Cohen Dep. at 62:4-66:13.  Moreover, GLG's Federal Rule 30(b)(6) witness has testified, and it is now undisputed, that this decision to temporarily pay overtime to a handful of employees (other than Cohen) was a small part of a world-wide organizational restructuring and had nothing to do with any concern regarding the exempt status of the Research Associate position.  Mehlhorn Dep. at 197:24-198:9, 256:2-258:20, 260:6-261:3, 261:11-263:4.

**Morgan Lewis**
COUNSELORS AT LAW

Honorable Kevin P. Castel
December 11, 2009
Page 2

dismiss Cohen's claims. Accordingly, GLG respectfully requests permission to file a motion for summary judgment after the close of discovery on December 14.

I.  **GLG IS ENTITLED TO SUMMARY JUDGMENT BECAUSE COHEN'S COMPENSATION AND DUTIES SATISFIED THE "ADMINISTRATIVE" EXEMPTION TO FEDERAL AND STATE OVERTIME REQUIREMENTS.**

The Fair Labor Standards Act ("FLSA") requires overtime compensation for an employee's hours of work in excess of forty hours in a week, but it excludes from that requirement employees who work in an "administrative" capacity, among others. 29 U.S.C. § 213(a)(1). Cohen qualifies for the administrative exemption if he: (1) was paid on a salary basis at a rate of at least $455 per week (or $1,972 per month), which was not subject to improper deductions; (2) had a primary duty to perform office or non-manual work directly related to the management or general business operations of GLG or GLG's clients; and (3) that duty included the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).[2] Cohen's own description of his duties in testimony and in many documents written by him (e.g., his resumes, self-evaluations, and business school and employment applications), establish that Cohen's duties as a Research Associate fell squarely within the administrative exemption. For instance, Cohen admits that "[t]he role of a Research Associate [was] one of the most integral responsibilities over the course of a relationship with each client at [GLG]," that the position "provide[d] [the] freedom to push [him]self creatively and analytically by being involved in new and valuable approaches to research, value chain analysis, and investment decisions, and that his primary responsibility was extracting and facilitating projects, in a strategic manner, from some of the most difficult professionals on Wall Street."[3]

A.  **Cohen Was Paid A Guaranteed Base Salary Of $5,000 Per Month.**

As a Research Associate, Cohen was paid a salary of $5,000/month – well above the requirement for the administrative exemption – which did not vary based on the quantity or quality of his work or the number of hours worked. Cohen Dep. at 22:6-12, 23:3-7, 29:13-21.

B.  **Cohen Had A Primary Duty To Perform Work Directly Related To The Management Or General Business Operations Of GLG And Its Clients.**

  1.  **Cohen's Primary Duty Included Research And Advisory Responsibilities That Were Vital To Both GLG And Its Clients.**

---

[2]  Cohen's New York Labor Law ("NYLL") claim is governed by the same substantive standards as his FLSA claim, as the New York regulation that purports to require the payment of overtime explicitly incorporates the FLSA's administrative exemption. See 12 N.Y.C.R.R. 142-2.2; see also Topo v. Dhir, 01-cv-10881, 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004). The higher salary basis requirement under the NYLL is irrelevant here because Cohen's salary surpassed that threshold too.

[3]  Points of Emphasis memo (sent by Cohen to Brad Spiegel for his use in drafting business school recommendation letters for Cohen) (bates-labeled GLG 2052-59, at 2052); Essays for Admission to USC, Marshall School of Business (bates-labeled COHEN 0084-90, at 85).

**Morgan Lewis**
COUNSELORS AT LAW

Honorable Kevin P. Castel
December 11, 2009
Page 3

The U.S. Department of Labor ("DOL") Regulations specifically identify "research" as an exempt administrative duty. 29 C.F.R. § 541.201(b); In re Novartis Wage & Hour Litig., 593 F. Supp.2d 637, 645 (S.D.N.Y. 2009). Moreover, the Regulations provide that exempt duties may be performed for either one's employer or for the employer's customers (i.e., GLG's clients). 29 C.F.R. 541.200. The Regulations also recognize that employees in the financial services industry who perform advisory functions for their employer's clients are generally engaged in exempt work.[4] 29 C.F.R. 541.203(b). It is undisputed that Cohen's primary duty included exempt research and advisory activities, including: (1) "work[ing] with clients to develop primary research resources that help investment analysts make more informed decisions" and "researching the value chain and find[ing] the best way to uncover key data;"[5] (2) analyzing client needs and advising clients as to which experts would best suit their research needs (Cohen Dep. at 165:2-167:1, 174:9-19); and (3) developing and maintaining expertise with respect to the research needs of the particular industry that he serviced. Cohen Dep. at 175:9-176:7. Throughout each day that he worked as a Research Associate, the majority of Cohen's time was spent performing research and advisory functions, including developing and/or refining research plans for services to be provided by GLG's subject matter experts ("Council Members") to GLG's clients. Cohen Dep. at 164:22-165:1, 174:5-22; GLG 2052.

### 2. Cohen's Primary Duty Included Promoting and Marketing GLG's Expert Advisory Services to Existing and Prospective Clients.

The DOL's Regulations specifically identify "marketing" as an administrative activity directly related to management or general business operations (29 C.F.R. § 541.201(b)), and the Second Circuit uses "promoting" interchangeably with "marketing." Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 475-77 (S.D.N.Y. 2008). See also Savage, 2008 WL 1790402, at *8 (dismissing plaintiff's overtime claims because her duties included, among others, "represent[ing] and promot[ing] her employer."). It is undisputed that Cohen was responsible for promoting GLG's Council Members' advisory services. Cohen Dep. at 177:4-12, 178:7-17,

---

[4]   Cohen's advisory and other duties were entirely unlike those of the plaintiff in Whalen v. J.P. Morgan Chase & Co., 08-4092, at *11 (2d Cir. Nov. 20, 2009), whose "primary duty was to sell loan products under the detailed directions of the Credit Guide." One critical question is whether Cohen "performed day-to-day sales activities or more substantial advisory duties." Id. The simple and undisputed facts are that (1) Cohen did not sell anything since he admits that GLG employed separate salespeople who were the ones responsible for selling subscriptions and services to GLG's clients (Cohen Dep. at 248:24-249:20, 250:10-17); and (2) Cohen was never a "producer" like the plaintiff in Whalen because it was GLG's more than 200,000 subject matter experts ("Council Members") – not its few dozen Research Associates – who produced the research services for which GLG was paid. As Cohen twice acknowledged in his sworn Affidavit (Docket No. 13 at ¶¶ 4-5), he did not provide any substantive responses to clients' research inquiries. Moreover, this Court has recognized that "the administrative/ production dichotomy [addressed in Whalen] is merely illustrative – unless the work falls squarely on the production side – and may be of limited assistance outside the manufacturing context." Savage v. UNITE HERE, 05-cv-10812, 2008 WL 1790402, at * 7 (S.D.N.Y. Apr. 17, 2008).

[5]   Essay Three for Georgetown MBA Program (bates-labeled COHEN 0124-26, at 124).

Honorable Kevin P. Castel
December 11, 2009
Page 4

193:11-195:1; GLG 2011-13, at 2011.[6] Cohen admitted that he performed the very same duties that courts (including this Court) have found to be exempt promotion and marketing duties: (1) developing and deepening relationships with existing and prospective clients to increase their use of GLG's services (Cohen Dep. at 174:23-175:4-9); (2) educating clients with respect to GLG's services and proposing ideas for new projects (Cohen Dep. at 176:8-13, 177:1-12); and (3) promoting GLG's services by anticipating clients' research needs and constantly studying their individual businesses and relevant market trends. Compare Cohen Dep. at 175:2-23, 334:23-335:9[7] with Reich v. John Alden Life Ins. Co., 126 F.3d 1, 11-12 (1st Cir. 1997); Amendola, 558 F. Supp.2d at 476; Savage, 2008 WL 1790402, at *3, 8.

### 3. Cohen's Primary Duty Included Legal and Regulatory Compliance Work.

The DOL Regulations also specifically provide that "legal and regulatory compliance" activities represent exempt work directly related to management or general business operations. 29 C.F.R. § 541.201(b); Savage, 2008 WL 1790402, at *6; In re Novartis, 593 F.Supp.2d at 645. It is undisputed that Cohen regularly monitored client research projects and interactions with Council Members for potential compliance issues that could create a regulatory risk for a client or GLG, including advising the Compliance Department of compliance issues that he identified, working with the Compliance Department in handling compliance issues, and advising GLG clients about compliance issues. Cohen Dep. at 221:22-222:6, 223:18-224:7, 225:10-13.

### C. Cohen's Primary Duty Included The Exercise Of Independent Judgment And Discretion With Respect To Matters Of Significance.

Turning to the third and final prong of the administrative exemption analysis, the DOL's Regulations provide that the exercise of independent judgment and discretion with respect to matters of significance "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202 (a). In addition, the Regulations explain that "the term . . . implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Id. at § 541.207(a).

The undisputed factual record demonstrates that Cohen exercised substantial discretion and independent judgment on a daily basis. Cohen independently managed GLG's relationship with and services for a large number of clients, ascertained their research needs, and facilitated the completion of research projects for them by Council Members on a regular basis. Cohen Dep. at 166:16-167:5. According to Cohen, these constant tasks "did not require communication with [his] manager." Cohen Dep. at 168:12-169:7. Moreover, Cohen testified that he regularly evaluated multiple options for research projects and then, again with little to no input from a supervisor, used his independent judgment to formulate the best course of action to recommend to the client. Cohen Dep. at 167:10-21, 168:12-169:20. In fact, Cohen testified that a majority

---

[6] Recommendation Letter for Babson MBA Program (bates-labeled GLG 2011-13, at 2011).

[7] See also Essay One for Georgetown MBA Program (bates-labeled COHEN 0118-19).

**Morgan Lewis**
COUNSELORS AT LAW

Honorable Kevin P. Castel
December 11, 2009
Page 5

of research projects he received came from clients directly, not through his manager or any other intermediary, and that he alone decided how best to communicate with each client regarding their research requests without his manager's approval. Cohen Dep. at 180:20-181:1, 210:3-11, 234:14-20, 236:9-16, 245:9-22. Further, Cohen used independent judgment and discretion to decide which of GLG's thousands of Council Members to recommend for each project for each client and, on a regular basis, was able to identify on his own (without a manager's guidance) one or more Council Members that would have the experience and information sought by the client. Cohen Dep. at 165:24-169:20, 234:14-20, 236:9-16; 245:9-22. Accordingly, the undisputed evidence demonstrates that Cohen's primary duty included the exercise of independent judgment and discretion in advising GLG clients as to subject matter experts.

## II.   COHEN'S CLAIMS ALSO MAY BE DISMISSED AS A SANCTION FOR HIS SPOLIATION OF EVIDENCE.

A second, independent basis exists to dismiss Cohen's claims based on his spoliation of evidence. In the Second Circuit, the duty to preserve evidence arises when a party reasonably should know that the evidence may be relevant to anticipated litigation, including prior to the litigation itself, and courts have broad discretion to fashion appropriate sanctions (including dismissing claims) for the spoliation of such evidence. See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990); Beers v. General Motors Corp., 97-cv-482, 1999 WL 325378, at * 4 (N.D.N.Y. May 17, 1999). See also Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (observing that "outright dismissal of a lawsuit . . . is within the court's discretion" for spoliation of evidence); Moore's Fed. Practice 3d § 34.16[4] (noting district court's inherent power to impose sanctions for pre-lawsuit destruction of evidence). As is detailed in GLG's Counterclaims, Cohen admits that on the eve of resigning from GLG and while planning to file this action, he intentionally performed a "mass deletion" of all the files on both a network drive and the hard drive of the computer he used at GLG, with the specific objective of preventing GLG from having access to those files, many of which related to his job duties at GLG. Cohen Dep. at 87:14-117:8. Because it is undisputed that Cohen not only failed to comply with his obligations under Second Circuit law to preserve evidence relevant to this case, but also deliberately destroyed evidence with the specific purpose of preventing GLG from having access to that evidence, the dismissal of Cohen's claims would be an appropriate sanction.

For the foregoing reasons, GLG respectfully requests permission to file its motion for summary judgment as to Cohen's individual claims after the conclusion of discovery on December 14. Thank you for your consideration and continued attention to this matter.

Respectfully submitted,

Andrew J. Schaffran

c:   Douglas H. Wigdor, Esq. (counsel for Plaintiff) (via e-mail)
     Gregory Filosa, Esq. (counsel for Plaintiff) (via e-mail)