**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY COHEN, on behalf of himself and on behalf of all similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>GERSON LEHRMAN GROUP, INC.,<br><br>Defendant. | Civil Action No.<br>09-CV-04352 (PKC) |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Andrew J. Schaffran
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma
Blair J. Robinson (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963-5001 (fax)

Counsel for Defendant
Gerson Lehrman Group, Inc.

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................................................................... 1

II. ARGUMENT ....................................................................................... 1

A. The Salary Basis Test For The Administrative Exemption Is Satisfied. .................... 1

B. Plaintiffs Had A Primary Duty To Perform Work Directly Related To The Management Or General Business Operations Of GLG And/Or Its Clients ............. 1

1. Plaintiffs' Research Advisory, Promotional, And Compliance Duties Were Their "Principal, Main, Major Or Most Important" Duties.__ ............. 2

2. Plaintiffs' Primary Duties Included Advisory Responsibilities That Were Important And Directly Related To Assisting With The Running Or Servicing Of The Businesses Of GLG And It Clients ................ 2

3. Plaintiffs' Primary Duties Included Promoting And Marketing GLG's Services To Clients, Which Were Important And Directly Related To Assisting With The Running Or Servicing Of GLG's Business. .................... 4

4. Plaintiffs' Primary Duties Included Compliance Functions That Were Important And Directly Related To Assisting With The Running Or Servicing Of The Businesses Of GLG And Its Clients. ................................. 6

C. Plaintiffs' Primary Duties Included The Exercise Of Independent Judgment And Discretion With Respect To Matters Of Significance. ....................................... 6

D. GLG's "Reclassification" Of Certain Employees Other Than Plaintiffs Does Not Alter The Outcome Of The Parties' Cross-Motions. .......................................... 8

III. COHEN'S CLAIMS ALSO SHOULD BE DISMISSED AS A SANCTION FOR HIS SPOLIATION OF EVIDENCE ....................................................................... 9

IV. CONCLUSION ..................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

## CASES

Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459 (S.D.N.Y. 2008) ........ 5, 7

Guinup v. Petr-All Petroleum Corp., No. 07-1120, 2010 U.S. Dist. LEXIS 86280 (N.D.N.Y. Aug. 23, 2010) ........ 8

Hein v. PNC Finance Services Grp., Inc., 511 F. Supp. 2d 563 (E.D. Pa. 2007) ........ 4

Hogan v. Allstate Insurance Co., 361 F.3d 621 (11th Cir. 2004) ........ 4

Piscione v. Ernst & Young, L.L.P., 171 F.3d 527 (7th Cir. 1999) ........ 4

Residential Funding Corp. v. DeGeorge Finance Corp., 306 F.3d 99 (2d Cir. 2002) ........ 9

Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997) ........ 5

Roe-Midgett v. CC Services, Inc., 512 F.3d 865 (7th Cir. 2008) ........ 7

Savage v. UNITE HERE, No. 05-cv-10812, 2008 WL 1790402 (S.D.N.Y. Apr. 17, 2008) ........ 5

Schwind v. FW & Associates, 357 F. Supp. 2d 691 (S.D.N.Y. 2005) ........ 5

## STATUTES

29 C.F.R. § 541.202(a) ........ 5

29 C.F.R. § 541.203(b) ........ 6

29 C.F.R. § 541.207(a) ........ 7

29 C.F.R. § 541.700 ........ 8

29 C.F.R. § 541.700(b) ........ 8

## I. PRELIMINARY STATEMENT

GLG submits this Reply Memorandum of Law in further support of its Cross-Motion for Summary Judgment on Plaintiffs' individual FLSA and NYLL claims.[1] After three rounds of briefing, it is clear that Plaintiffs do not dispute GLG's position that: (1) Plaintiffs performed research advisory, promotional, and compliance duties, and (2) such duties can qualify as administratively exempt work. Rather, in a transparent effort to create an issue of fact where no genuine issue exists, Plaintiffs try to downplay the importance of these duties relative to their other duties and to recast their duties as "the execution of basic research projects" for clients. Thus, Plaintiffs contend that the administrative exemption does not apply to them because their primary duty involved "the execution of basic research projects" for clients, and not their research advisory, promotional, and compliance duties or the exercise of discretion and independent judgment with respect to matters of significance. However, for the reasons set forth below and in GLG's opening brief and 56.1 Statement, GLG respectfully submits that Plaintiffs' primary duty involved both their research advisory, promotional, and compliance duties and the exercise of discretion and independent judgment with respect to matters of significance. Accordingly, Plaintiffs satisfied the requirements for the administrative exemption, and GLG's Cross-Motion should be granted.

## II. ARGUMENT

### A. The Salary Basis Test For The Administrative Exemption Is Satisfied.

Plaintiffs do not dispute that they were paid a salary of more than $455 per week that did not vary based on the quantity or quality of their work, or the number of hours worked. Plaintiffs' Opposition Memorandum of Law (Dkt. #146) ("Pls' Opp.") at 3-21; Plaintiffs' Opposition to GLG's 56.1 Statement (Dkt. #145) ("Pls' 56.1 Opp.") ¶¶ 27-48. Therefore, Plaintiffs satisfied the salary basis requirement of the administrative exemption.

### B. Plaintiffs Had A Primary Duty To Perform Work Directly Related To The Management Or General Business Operations Of GLG And/Or Its Clients.

Plaintiffs admit that they performed the research advisory, promotional and compliance duties that were the focus of GLG's opening brief. GLG Mem. at 7-12; Pls' 56.1 ¶ 7 ("Research

[1] All capitalized terms and abbreviations used herein have the same meanings ascribed to them in GLG's opening Memorandum of Law in support of its Cross-Motion for Summary Judgment (Dkt. #133) ("GLG Mem.").

Associates, which were part of the larger Research Management Department, served in the following capacities: (i) 'as thought partners to client,' (ii) 'as the front line bulwark for the compliance framework,' and (iii) 'as ambassadors of the GLG brand.'"). Nonetheless, in an effort to save their claims, Plaintiffs try to downplay the importance of these duties and to recast their research advisory duties variously as "the execution of basic research projects," "the execution of primary research requests," and "executing projects and research requests" for clients. Pls' Opp. at 14, 18. However, mere labels have no bearing on the application of the administrative exemption. GLG Mem. at 23-24. To the contrary, what matters is whether Plaintiffs' actual job duties demonstrate that their primary duty "directly related to assisting with the running or servicing of the business" of either GLG or its clients. GLG Mem. at 7 (quoting 29 C.F.R. § 541.201(a)). As explained below, Plaintiffs' actual job duties confirm that they were properly classified as exempt.[2]

**1. Plaintiffs' Research Advisory, Promotional, And Compliance Duties Were Their "Principal, Main, Major Or Most Important" Duties.**

Plaintiffs do not dispute that DOL Regulations define an employee's "primary duty" as "the principal, main, major or most important duty that the employee performs." Pl's Opp. at 4. As shown in GLG's opening brief and below, there is no genuine dispute concerning the fact that Plaintiffs' research advisory, promotional and compliance duties were the "principal, main, major or most important duty" that they performed.

**2. Plaintiffs' Primary Duties Included Advisory Responsibilities That Were Important And Directly Related To Assisting With The Running Or Servicing Of The Businesses Of GLG And It Clients.**

Plaintiffs do not dispute that DOL Regulations identify as administratively exempt work both research-related responsibilities and advisory functions for financial services industry clients. GLG Mem. at 10-11; Pls' Opp. at 9. Plaintiffs contend, however, that their research advisory duties were not exempt because GLG cannot establish that these duties related to the management or general business operations of GLG's clients. Pls' Opp. at 6. Plaintiffs are incorrect.

---

[2] Plaintiffs do not dispute that they did not work on a manufacturing production line or engage in sales (Pls' 56.1 Opp. ¶¶ 141, 156, 168), and their opposition fails to directly address GLG's arguments in its opening brief as to Plaintiffs' misguided attempt to label themselves as "producers." GLG Mem. at 12-15; GLG 56.1 ¶¶ 5-13.

The undisputed facts confirm the importance of Plaintiffs' research advisory duties to GLG's value proposition and ultimate success and, therefore, "the running or servicing" of GLG's business, by ensuring that clients were partnered with appropriate Council Members with the requisite experience and expertise to meet clients' specific needs. GLG 56.1 ¶¶ 66, 115, 119, 166-67, 187, 189-91, 219-20, 327-28.[3] Plaintiffs' opposition ignores this important aspect of how they assisted with the running or servicing of GLG's business.[4]

Plaintiffs also assisted in the "running or servicing" of the investment businesses of GLG's clients, which is a second and independent basis for finding that their research advisory duties were exempt work. GLG Mem. at 7-8. Plaintiffs do not dispute this fact, but contend that the Court cannot consider it because it is not supported by testimony from the clients themselves.[5] Pls' Opp. at 6-7. Yet, Plaintiffs' admissions, which their lawyers now seek to downplay as mere puffing or inaccurate, demonstrate the importance of Plaintiffs' research advisory services to the running or servicing of the businesses of GLG's clients, who relied on those services in making investment decisions. Plaintiffs' own 56.1 Statement confirms that they served as "thought partners" with and "trusted advisors" to their clients, and that their work was "crucial" to GLG's clients. Pls' 56.1 ¶ 7; GLG 56.1 ¶ 117. Plaintiffs viewed themselves as part of a "strategic" effort to help clients "further develop their investment thesis" and "test investment hypotheses." Pls' 56.1 Opp. ¶¶ 62, 64, 118. See also GLG 56.1 ¶¶ 92, 93, 96, 98, 99, 117, 118. Plaintiffs worked with clients to "address challenging capital market questions at all stages of the investment cycle." Pls' 56.1 Opp. ¶ 124.

---

[3] Based on a review of Plaintiffs' 56.1 Opp., GLG has identified a small number of errors in the GLG 56.1, which Plaintiffs have mistakenly described as an attempt to mislead or an inaccurate assertion as to the record evidence: GLG 56.1 ¶ 270 (should refer to Schaeffer Decl. ¶ 5, not ¶ 3), ¶ 324 (refers to Exh. 81, which attached the wrong document but has been corrected in GLG's re-filing of the Puma Decl.), ¶ 120 (pin cite should be to 969, not 971), ¶ 145 (cite should be 25:24-27:9; 174:2-176:20 not 150:13-151:5, 158:8-13, 160:8-161:5), ¶ 148 (cite should be 334:22-335:21 not 334:16-21), ¶ 161 (should refer to Exh. 57, not Exh. 250), ¶ 278 (should refer to Schaeffer Decl. ¶ 8, not ¶ 9), ¶ 291 (cite should be to 88:2-25, not 82:22-24).

[4] Accepting Plaintiffs' misguided view, a relationship partner at a law firm who assesses a client's specific needs on each project and the experience and expertise of the attorneys in his firm on similar projects and then directs the client to attorneys with the requisite experience and expertise to handle each project is not performing work important to the firm's value proposition and ultimate success and, therefore, the running or servicing of the firm's business.

[5] Plaintiffs do not explain or cite supporting authority for their novel contention that testimony by GLG executives as to their understanding of how GLG clients value the services provided by GLG employees is inadmissible. Pls' Opp. at 6-7.

Ronen described himself as essentially an "outsourced qualitative analyst" who provided "solutions" for GLG's clients to "make better, more effective investment decisions." Pls' 56.1 Opp. ¶¶ 70, 73, 126. In sum, Plaintiffs cannot genuinely dispute that their duties were important to GLG's clients, who relied on GLG's research products in making investment decisions and, therefore, Plaintiffs' duties directly related to assisting with the "running or servicing" of GLG's clients' investment businesses.

Plaintiffs fail to meaningfully distinguish the caselaw cited by GLG as to Plaintiffs' research advisory duties. Pls' Opp. at 7-8. Plaintiffs do not address Piscione (GLG Mem. at 9), and they concede that the plaintiffs in Hogan were found to be exempt in part because they "advise[d] and service[d] customers and potential customers." Pls' Opp. at 7. The same is true here. GLG Mem. at 8-10; Pls' 56.1 Opp. ¶¶ 65, 75, 237; GLG 56.1 ¶¶ 60-140. As to Hein, Plaintiffs do not dispute that the plaintiff in that case was found to be exempt in part because, like Plaintiffs here, he spent most of his time on the phone working with clients to ascertain their needs and recommend solutions. 511 F. Supp. at 568. The difference noted by Plaintiffs – that Hein assessed and recommended investment products while Plaintiffs assessed and recommended research products designed to assist in clients in making investment decisions – is meaningless.

### 3. Plaintiffs' Primary Duties Included Promoting And Marketing GLG's Services To Clients, Which Were Important And Directly Related To Assisting With The Running Or Servicing Of GLG's Business.

Plaintiffs do not dispute that marketing or promotional work satisfies the administrative exemption. GLG Mem. at 10-11; Pls' Opp. at 8-11. Nor do Plaintiffs dispute that they served as "ambassadors of the GLG brand" to GLG's clients (Pls' 56.1 ¶ 7), or that their duties included maintaining and expanding client relationships and promoting GLG services (e.g., Pls' 56.1 Opp. ¶¶ 144, 159). For instance, Plaintiffs concede that (1) their duties included assisting the separate Sales Department (Pls' Opp. at 8), bolstering GLG's efforts to sell upgrades to clients (Pls' 56.1 Opp. ¶¶ 151-52), and educating clients about GLG's offerings and encouraging use of its products (Pls' 56.1 Opp. ¶¶ 170-71); and (2) these duties (a) were intended to increase client usage and "maintain . . . or grow the [client] relationship" (Pls' 56.1 Opp. ¶¶ 175, 178, 183), and (b) "had the effect of

promoting GLG's research services to clients" (Pls' 56.1 Opp. ¶ 159). See also GLG 56.1 ¶¶ 145-47, 152, 154, 159, 160, 161, 163-65, 172-75, 181, 183, 186, 188.

Instead, Plaintiffs challenge: (1) whether these promotional duties were part of their "primary" duty (e.g., Pls' 56.1 Opp. ¶ 151), and (2) whether promotional efforts directed to existing, rather than prospective clients qualifies as exempt work. However, Plaintiffs do not explain how their promotional work was not part of their "primary" duty, other than to continue their reliance on labeling those duties as "execution" (e.g., Pls' 56.1 Opp. ¶ 142).[6] As to promotional work directed to existing clients, Plaintiffs concede that they performed this work (Pls' 56.1 Opp. ¶¶ 143-47), and they cite no authority to support their novel contention that promotional work is only exempt if it is directed to prospective as opposed to existing clients.[7]

Plaintiffs fail to meaningfully distinguish the authority cited by GLG concerning the exempt nature of promotional activities similar to those engaged in by Plaintiffs. As to 29 C.F.R. 541.203(b), which confirms the exempt nature of promotional work by employees in the financial services industry, Plaintiffs conveniently omitted from their quotation the most relevant language, which followed immediately after the language they quoted: "and marketing, servicing or promoting the employer's financial products." GLG Mem. at 10. In addition, the distinction focused on by Plaintiffs – that their collection of information, analysis of varying product options, and recommendations to clients related to research products designed to assist clients in making investment decisions rather than investment products – is meaningless. As to the caselaw cited by GLG, Plaintiffs ignore the Amendola and Schwind decisions (GLG Mem. at 11), and their attempts to distinguish the other decisions are unavailing. In particular, Plaintiffs' discussion of Savage confirms that promoting one's employer relates to "running or servicing" of the business (Pls' Opp.

---

6 Plaintiffs' statement that GLG is arguing that "Plaintiffs' execution on GLG's clients' research requests somehow constitutes promotion of sales" (Pls' Opp. at 8) misstates GLG's position.

7 While the word "promotion" does not appear in the Research Associate job description (Pls' Opp. at 8), this document was not approved or used by anyone in the Research Department, and is immaterial to the application of the administrative exemption. GLG Mem. at 16; Deposition of Dmitri Mehlhorn, ("Mehlhorn Dep.") (Exh. G to Filosa Decl. dated 4/8/11) at 131:9-137:22, 142:10-143:6 (stating that the job description was a "summary document" used as a marketing tool for external audiences). Plaintiffs assert that it is an individual's actual duties, not an employer's expectations, that are material to the exemption. Pls' 56.1 Opp. ¶¶ 158, 164, 166-67, 185-86.

at 10), and Plaintiffs concede that the plaintiffs in John Alden were expected to "ultimately increase sales" through their promotional work (Pls' Opp. at 10), which is the case here. Faced with these facts, Plaintiffs again fall back on their unsupported and meaningless characterization of their primary duty as "executing projects." Pls' Opp. at 10.

**4. Plaintiffs' Primary Duties Included Compliance Functions That Were Important And Directly Related To Assisting With The Running Or Servicing Of The Businesses Of GLG And Its Clients.**

Plaintiffs do not dispute that the DOL Regulations specifically identify compliance duties as administratively exempt work (GLG Mem. at 11), and they admit that the compliance function "was a fundamental part of GLG's business strategy and value proposition." Pls' 56.1 Opp. ¶¶ 189-92, 197, 206, 212-14. Nor do Plaintiffs distinguish or criticize the reasoning of any authority cited by GLG as to the exempt nature of Plaintiffs' compliance duties. GLG Mem. at 11-12. Plaintiffs also concede that they performed compliance work. Pls' Opp. at 11; Pls' 56.1 Opp. ¶¶ 198 (Cohen), 207 & 210 (Ronen), 215-16 (Baldwin).

Nonetheless, in an effort to manufacture an issue of fact, Plaintiffs question the value of their compliance duties to GLG's clients. Pls' Opp. at 11-12. However, Plaintiffs concede that compliance was important to GLG's clients, as "[c]ompliance failures could have legal consequences for . . . clients," including "SEC action" and/or a client potentially "having to freeze all action on a proposed investment." (Pls' 56.1 Opp. ¶¶ 192, 212-14). Moreover, exempt administrative work may relate to the business of one's employer or its clients. Thus, it is sufficient that Plaintiffs' compliance duties were "a fundamental part of GLG's business strategy and value proposition" and, therefore, the "running or servicing" of GLG's own business.

**C. Plaintiffs' Primary Duties Included The Exercise Of Independent Judgment And Discretion With Respect To Matters Of Significance.**

In arguing that Plaintiffs did not exercise sufficient discretion and independent judgment, Plaintiffs suggest that an administratively exempt employee must constantly exercise discretion and independent judgment. In fact, the Regulations require only that their primary duties "include" the exercise of discretion and independent judgment (GLG Mem. at 6), which Plaintiffs concede is the case here. See, e.g., Pls' 56.1 Opp. ¶¶ 237-39 ("worked with clients independently" and "made

independent judgments"), 247-48 ("little to no instruction" and "used his independent judgment and discretion"), 250 ("without a manager's guidance"), 258 ("worked independently to respond to client inquiries and advise clients"), 265-66 ("used her judgment to identify Council Members that were best suited to provide advice" and encouraged "to be independent"), 272-76 ("supervisor relied heavily on her" and "relied heavily on her input").

Moreover, the standard for discretion/judgment requires only "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202 (a); see also id. § 541.207(a). This is precisely what Plaintiffs did on a daily basis, as they considered possible options and then recommended to clients specific products (e.g., phone consultations, surveys, seminars) and/or specific Council Members based on their assessment of client needs. GLG Mem. at 18-21; GLG 56.1 ¶¶ 237-39, 242-43, 245, 248, 258-59, 261, 267, 269, 270, 272. As one example, Plaintiffs concede that "[o]n a regular basis, Cohen evaluated multiple options for research projects and then (with little to no input from supervisors) used his independent judgment and discretion to formulate the best of course of action to recommend to the client." Pls' 56.1 Opp. ¶ 248.

As to Baldwin, who claims to have worked more closely with her supervisor, the judgment/discretion requirement "does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." Id. § 541.202(c). Plaintiffs do not criticize or distinguish any of the caselaw cited by GLG on this issue (GLG Mem. at 15-16), and they cannot genuinely dispute that Baldwin's supervisor deferred to and relied upon her judgments (GLG 56.1 ¶¶ 267, 269, 270-72, 276-78; Schaefer Decl. (Dkt. #138) ¶¶ 3-9).

Plaintiffs contend that GLG's compliance guidelines limited their discretion (Pls' Opp. at 17), but the existence of guidelines does not preclude application of the administrative exemption. Roe-Midgett v. CC Servs., Inc., 512 F.3d 865, 875 (7th Cir. 2008) ("[I]ndependent judgment is not foreclosed by the fact that an employee's work is performed in accordance with strict guideline."); Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 476 (S.D.N.Y. 2008) ("[C]ourts have frequently concluded that the administrative exemption applies even in those situations in which the

employee's discretion in the performance of her duties is circumscribed by an employer's detailed instructions or industry regulations.") Moreover, GLG's compliance guidelines certainly could not address all possible compliance issues (Pls' 56.1 Opp. ¶ 234), and they specifically directed Plaintiffs to exercise discretion. Dkt. #147, Exh. 60, at 7 ("This Guide is intended to help [you] perform the compliance aspects of [your] job. . . . [I]t will mean exercising judgment based upon the principles and approach laid out in this Guide. . . . [T]his Guide aims to train [you] how to think about compliance issues and to empower [you] to identify and resolve compliance issues on [your] own (often looping in GLG Compliance just for record-keeping purposes.")).

Although Plaintiffs do not dispute that their various contributions to developing GLG's operating policies and practices are relevant to whether they exercised discretion and independent judgment (GLG's Mem. at 16-17; GLG 56.1 ¶¶ 304-332), they incorrectly suggest that such duties must "take up a significant amount of Plaintiffs' time" in order to support the administrative exemption. Pls' Opp. at 18. However, while the total amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee (Pls' Opp. at 4), there is no requirement that exempt work exceed 50 percent of an exempt employee's time, and the analysis focuses on whether the total amount of time spent performing all exempt work is significant, not whether the amount (or percentage) of time performing any specific exempt work is in and of itself significant.[8] GLG Mem. at 16.

Finally, the significance of Plaintiffs' exercise of discretion and independent judgment to GLG and its clients is addressed above. <u>See</u> <u>supra</u> at 2-6.

### D. GLG's "Reclassification" Of Certain Employees Other Than Plaintiffs Does Not Alter The Outcome Of The Parties' Cross-Motions.

Plaintiffs have failed to establish that the reclassification of certain other Research

---

8 Although Plaintiffs cite 29 C.F.R. § 541.700 in suggesting that employees must spend more than 50 percent of their time performing exempt work to satisfy the primary duty test, they conveniently omit the following language, also included in the regulations: "Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b). <u>See</u> <u>also</u> <u>Guinup v. Petr-All Petroleum Corp.</u>, No. 07-1120, 2010 U.S. Dist. LEXIS 86280, at *20 (N.D.N.Y. Aug. 23, 2010) ("[T]here is no requirement that exempt employees spend more than 50 percent of their time performing exempt work.")

Associates is admissible or material to the cross-motions. Plaintiffs do not dispute that they were not personally reclassified (Pls' 56.1 Opp. ¶¶ 335-38), and the pending motions pertain only to their individual claims. In addition, Plaintiffs do not distinguish or criticize the reasoning of any of the authorities cited by GLG, including this Court's decision in Clarke, as supporting its position that evidence of the reclassification is both inadmissible to establish liability and immaterial to the cross-motions. GLG Mem. at 21-24. Instead, Plaintiffs assert that F.R.E. 407 cannot apply because GLG "failed to provide any retroactive remedy" (Pls' Opp. at 20), but not surprisingly they cite no authority to support that incorrect position. Finally, the authority cited by Plaintiffs is inapposite, as those decisions do not even address F.R.E. 407 or consider whether evidence of a reclassification may be used to establish liability, as Plaintiffs seek to do here.

## III. COHEN'S CLAIMS ALSO SHOULD BE DISMISSED AS A SANCTION FOR HIS SPOLIATION OF EVIDENCE

Cohen's claims also should be dismissed based on his spoliation of evidence. GLG Mem. at 24-25; GLG 56.1 ¶¶ 341-61. Plaintiffs do not dispute that Cohen engaged in what he calls a "mass deletion". Pls' 56.1 Opp. ¶ 352. Plaintiffs' reliance on GLG's policies to justify Cohen's conduct is unavailing and borderline frivolous. See GLG's Opposition to Plaintiffs' 56.1 Statement as to Counterclaims (Dkt. #130) ¶¶ 21-26. It is undisputed that Cohen's "mass deletion" was performed at or around the time that he was planning to initiate litigation against GLG (Pls' 56.1 Opp. ¶¶ 349-50 & 358) and, therefore, had a duty to preserve evidence (GLG Mem. at 24). Although Plaintiffs cite Bobal to contend that dismissal is too harsh a sanction, the Second Circuit affirmed dismissal in that case based on a plaintiff – who notably was *pro se* – merely failing to appear for a deposition. Finally, contrary to Plaintiffs' assertion (Pls' Opp. at 21-22), GLG need not establish the relevance of the files deleted by Cohen where, as here, there is evidence of bad faith conduct. Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 109 (2d Cir. 2002). Accepting Plaintiffs' position, one could engage in deliberate destruction of evidence and avoid consequences merely by rendering the documents unrecoverable such that they cannot be proven to be relevant.

## IV. CONCLUSION

For the reasons set forth above and in GLG's opening brief and other submissions, the Court

should deny Plaintiffs' Motion for Summary Judgment, grant GLG's Cross-Motion for Summary Judgment, and dismiss Plaintiffs' claims, with prejudice, in their entirety.

Dated: April 22, 2011
New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Michael J. Puma
Andrew J. Schaffran (AS-1236)
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Michael J. Puma (MP-5573)
Blair J. Robinson (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
(215) 963-5001 (fax)
Counsel for Defendant
Gerson Lehrman Group, Inc.