UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JEFFREY COHEN, on behalf of himself
individually and on behalf of all similarly
situated employees,
                        Plaintiff,

                                                                                                  09 Civ. 4352 (PKC)

        -against-

                                                             MEMORANDUM AND ORDER ON
                                                                   SUMMARY JUDGMENT
GERSON LEHRMAN GROUP, INC.,

                      Defendant.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Jeffrey Cohen alleges that defendant Gerson Lehrman Group, Inc. ("Gerson Lehrman") violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), and New York Labor Law § 663 by failing to pay overtime for work performed by Gerson Lehrman's research associates. Separately, Gerson Lehrman has asserted counterclaims against Cohen for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), and for the common law torts of conversion and trespass to chattels. The Court previously granted plaintiff's motion for preliminary certification as a collective action under the FLSA, and denied motions to dismiss his wage-and-hour claims and the defendant's counterclaims. See Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317 (S.D.N.Y. 2010). After the Court granted Cohen's motion for preliminary certification, plaintiffs Matthew Ronen and Ashleigh Baldwin joined the action as plaintiffs. Like Cohen, Ronen and Baldwin were employed by Gerson Lehrman as research associates. (Def. 56.1 ¶¶ 19, 24-25; Pl. 56.1 Resp. ¶¶ 19, 24-25.)

        Discovery in this action is now closed, and three motions for summary judgment are currently pending. The plaintiffs contend that the defendant is liable as a matter of law for

failing to comply with the wage-and-hour provisions of the FLSA and New York Labor Law. (Docket # 123.) Cohen also argues that, as a matter of law, he is not liable for the defendant's counterclaims. (Docket # 126.) The defendant separately moves for summary judgment in its favor as to liability under the FLSA and the New York Labor Law, contending that plaintiffs worked in an administrative capacity and therefore were exempt from overtime requirements. (Docket # 134.)

For the reasons explained, the record submitted by the parties on plaintiffs' wage-and-hour claims does not support summary judgment in favor of either party. The parties' summary judgment motions on the FLSA and New York Labor Law claims are denied. Cohen's motion for summary judgment dismissing the defendant's counterclaims also is denied.

BACKGROUND ON PLAINTIFFS' WAGE-AND-HOUR CLAIMS

Defendant Gerson Lehrman describes itself as a "global marketplace for expertise" that helps clients find and "engage" experts in various industries and disciplines.[1] (Pl. 56.1 ¶ 1; Def. 56.1 Resp. ¶ 1; Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2.) It maintains a database of approximately 200,000 experts. (Pl. 56.1 ¶ 2; Def. 56.1 Resp. ¶ 2; Def. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3.) Clients pay Gerson Lehrman for the services provided by its experts. (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7.)

Gerson Lehrman previously employed individuals in the position of research associate. (Def. 56.1 ¶ 333; Pl. 56.1 Resp. ¶ 333.) According to the company job description, research associates were "responsible for managing and executing primary research deliverables to add value to Gerson Lehrman Group's client." (Pl. 56.1 ¶ 3; Def. 56.1 Resp. ¶ 3.) Research associates interviewed clients and matched them with appropriate experts, and

---

[1] The defendant calls its experts "GLG Council Members," (Def. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3) but in the interest of clarity and economy, I refer to them as experts.

performed research tasks delegated by more senior employees. (Pl. 56.1 ¶¶ 4-5; Def. 56.1 Resp. ¶¶ 4-5.) Gerson Lehrman also has described research associates as "thought partners to client" and "the front line bulwark for the compliance framework." (Pl. 56.1 ¶ 7; Def. 56.1 Resp. ¶ 7.) In 2008, Gerson Lehrman eliminated the research associate position. (Pl. 56.1 ¶ 8; Def. 56.1 Resp. ¶ 8; Def. 56.1 ¶ 334; Pl. 56.1 Resp. ¶ 334.)

According to the plaintiffs, Gerson Lehrman unlawfully categorized research associates as exempt from the FLSA's wage-and-hour requirements. They contend that they were entitled to time-and-a-half compensation for overtime hours worked during their employment at Gerson Lehrman. Gerson Lehrman, by contrast, argues that the plaintiffs fall within the FLSA's administrative exemption, and that summary judgment should be granted in its favor. See 29 U.S.C. § 213(a)(1) (setting forth administrative exemption). On the FLSA claims, the defendant argues that the administrative exemption applies as a matter of law, and the plaintiffs argue that, as a matter of law, it does not.

SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, sufficient to demonstrate that he or she is entitled to relief as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of

Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party. Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–88 (1986). In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c)(3). In the absence of any disputed material fact, summary judgment is appropriate. Rule 56(a).

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (internal citation omitted); see also Anderson, 477 U.S. at 249–50 (summary judgment may be granted if the opposing evidence is "merely colorable" or "not significantly probative") (citations omitted). An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n. 14 (2d Cir. 1981) (quotation marks omitted).

Local Civil Rule 56.1 of this District requires a summary judgment movant to submit a statement with numbered paragraphs setting forth "the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule 56.1(a). "Each

numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civil Rule 56.1(d). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Rule 56(c)(2), Fed. R. Civ. P. "'Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'" Presbyterian Church Of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)).

AUTHORITY GOVERNING THE FLSA'S ADMINISTRATIVE EXEMPTION.

The FLSA requires that an employee who works more than forty hours per week is entitled to overtime compensation "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Retail and manufacturing firms are the "archetypal businesses envisaged by the FLSA." Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 106 (2d Cir. 2010).

The statute's time-and-a-half overtime requirement includes an exemption for "any employee employed in a bona fide . . . administrative . . . capacity . . . ." 29 U.S.C. § 213(a)(1). The administrative exemption distinguishes employees with managerial and "general business" responsibilities from those of FLSA-covered employees who are engaged in "production," which is not limited to the production of tangible goods. Davis v. J.P. Morgan Chase & Co., 587 F.3d 529, 532 (2d Cir. 2009). Any exemption to the FLSA, including the

administrative exemption, is to be "'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'"  In re Novartis Wage & Hour Lit., 611 F.3d 141, 150 (2d Cir. 2010) (quoting Bilyou v. Dutchess Beer Distribs., Inc., 300 F.2d 217, 222 (2d Cir. 2002)).  "The burden of proving the employees fall within such an exemption is on the employer."  Id.  New York Labor Law also mandates overtime pay, and applies the same exemptions as the FLSA.  See Reiseck, 591 F.3d at 105 (citing N.Y. Comp. Codes R. & Regs., tit. 12, § 142-3.2 (incorporating FLSA exemptions)); In re Novartis, 300 F.3d at 157 (applying FLSA exemptions to New York Labor Law).

The Secretary of Labor has promulgated interpreting regulations that set forth the types of responsibilities that qualify as employment "in a bona fide administrative capacity."  29 C.F.R. § 541.200.  To qualify for the administrative exemption, an employee must (1) earn at least $455 a week, (2) have the "primary duty . . . of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) "exercise . . . discretion and independent judgment with respect to matters of significance" when carrying out that "primary duty."  Id. § 541.200(a).  There is no dispute that the plaintiffs earned more than $455 a week, and that the exemption's application turns on the second and third prongs of section 541.200(a).

As to the second requirement, "[t]he phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee.  To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).  Such work:

6

>includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

Id. § 541.201(b). The exemption may apply if an employee's primary duty is "directly related to the management or general business operations of the employer's customers," including work as "advisers or consultants to the employer's clients or customers (as tax experts or financial consultants, for example) . . . ." Id. § 541.201(c). "Under the interpretive regulations, an employee's 'primary duty' is the duty that consumers a 'major part, or over [fifty] percent, of the employee's time.'" Reiseck, 591 F.3d at 107 (modification in original; quoting 29 C.F.R. § 541.103).

As to the exemption's third prong, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). Determining an exercise of "discretion and independent judgment" is based on multiple factors, which "include, but are not limited to:"

>whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee

7

>is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Id. § 541.202(b). An employee need not have "unlimited" independence and discretion, however: "The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. For example, the policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies." Id. § 541.202(c). "The fact that many employees perform identical work or work of the same relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance." Id. § 541.202(d). "The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a 'statistician.'" Id. § 541.202(e).

The Second Circuit has, in recent years, ruled on the limits of applying the administrative exemption. See In re Novartis, 611 F.3d at 156-57 (setting forth fact-intensive analysis as to scope of managerial responsibilities and employee discretion before concluding that a pharmaceutical company's sales representatives did not qualify for the administrative exemption); Reiseck, 591 F.3d at 107-08 (employees who work in sales, as opposed to those who oversee marketing and promotion strategies, do not fall within the administrative exemption); Davis, 587 F.3d at 534-37 (distinguishing employees who work in administration from those who work in the non-tangible "production" of a service company's business).

HUNDREDS OF DISPUTED FACTS PRECLUDE SUMMARY JUDGMENT AS TO THE WAGE-AND-HOUR CLAIMS.

The parties have submitted a record on summary judgment that is laden with factual disputes. Certain are immaterial on their face, and are directed toward matters of weight and characterization. At times, the disputes amount to little more than disagreements about seemingly irrelevant jargon used by Gerson Lehrman and its employees. Elsewhere, however, the disputes are integral toward determining the application of the administrative exemption. As will be explained more fully, the parties' submissions either reflect an ignorance of summary judgment standards or were designed to frustrate adjudication of the motions.

First, as previously noted, Local Rule 56.1(a) requires a summary judgment movant to submit "a separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." In support of its own motion, the defendant has filed a Local Rule 56.1 statement consisting of 361 paragraphs, each of which purports to state a material fact essential to granting the motion. By definition, an assertion made by a movant in Rule 56.1 Statement is a concession that a fact is "material." Yet defendant's statement contains numerous assertions that are redundant, cumulative and seemingly immaterial. (Compare, e.g., Def. 56.1 ¶¶ 78-79 (asserting that plaintiff Baldwin searched for experts on behalf of clients using defendant's computer system) with Def. 56.1 ¶ 84 (asserting that plaintiff Baldwin searched for experts on behalf of clients).) Similarly, in response to the plaintiff's Local Rule 56.1 statement, the defendant consistently states immaterial disputes going toward weight, relevance and characterization, rather than a "separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b). Most unhelpfully, the defendant often opposes the plaintiffs' statement with a generalized averment to a 273-

paragraph passage of its own Local Rule 56.1 statement, as well other lengthy, unexplained cross-citations to dozens or hundreds of paragraphs in its own Local Rule 56.1 statement. (Def. 56.1 Resp. ¶¶ 2-7, 12, 14, 17-19, 22-24, 30-42, 57.)

The plaintiffs' opposition to the defendant's Local Rule 56.1 statement is also rife with apparently irrelevant disputes as to matters of characterization. For instance, the parties dispute whether plaintiff Cohen viewed himself as a "thought partner" to clients and whether Cohen was "the face of the Company" for clients. (Def. 56.1 ¶ 101, 285; Pl. 56.1 Resp. ¶ 101, 285.) By way of another example of the parties' fact disputes on seemingly immaterial points, while plaintiff Ronen described himself as a "thought partner" at least once, he maintains that he did so only to adopt company jargon and to present himself as a "good employee." (Def. 56.1 ¶ 122; Pl. 56.1 Resp. ¶ 122.) They even dispute whether, during client calls, "Baldwin introduced herself to clients, inquired into their research needs, and followed up on requests to ensure the client's needs were met," and the extent to which "Baldwin took clients out to lunch or for drinks." (Def. 56.1 ¶¶ 180, 184; Pl. 56.1 Resp. ¶ 180, 184.)

At other times, however, the parties' disputes are material. The parties offer different factual recitations as to how plaintiffs' time and responsibilities were allocated (see, e.g., Def. 56.1 ¶¶ 63, 101, 151; Pl. 56.1 Resp. ¶¶ 63, 101, 151), thereby muddying the record as to what constituted their primary duties. Reiseck, 591 F.3d at 107 (discussing FLSA's treatment of "primary duty"). Because the record does not permit the Court to reach a conclusion as to the plaintiffs' primary duties, it cannot conclude whether, as a matter of law, the administrative exemption applies.

On matters of marketing and compliance, both of which are identified as administrative functions under 29 C.F.R. § 541.201(a), the parties dispute virtually every fact. Despite the voluminous submissions, many of the purportedly factual assertions consist of

10

quarreling over summary labels and conclusions.  In any event, the parties offer competing facts as to whether plaintiffs merely "facilitate[d]" communications between experts and clients, or whether they took a more active advisory role on behalf of clients and had authority to bind the defendant to client arrangements.  (See, e.g., Def. 56.1 ¶¶ 99-114, 148-49, 240-41, 249, 251-53, 291, 302; Pl. 56.1 Resp. ¶¶ 99-114, 148-49, 240-41, 249, 251-53, 291, 302.)  They dispute the degree to which Cohen, Ronen and Baldwin "promote[d]" the Gerson Lehrman brand, and the time and authority allotted to the purported promotional activities.  (Def. 56.1 ¶¶ 132, 142-43, 146, 154, 159, 163; Pl. 56.1 Resp. ¶¶ 132, 142-43, 146, 154, 159, 163.)  They dispute whether Gerson Lehrman provided associates "fixed" guidelines on compliance matters.  (Def. 56.1 ¶ 193; Pl. 56.1 Resp. ¶ 193.)  They dispute the amount of time research associates spent on compliance matters and the scope of plaintiffs' discretion on compliance. (Def. 56.1 ¶¶ 194-95, 200, 221-22, 225, 232; Pl. 56.1 Resp. ¶¶ 194-95, 200, 221-22, 225, 232.) They dispute the extent to which Gerson Lehrman's communications to its research associates, known as "The Greenies," provided guidance to employees.  (Def. 56.1 ¶¶ 235-36, 282; Pl. 56.1 Resp. ¶¶ 235-36, 282.)

As to the plaintiffs' record in support of summary judgment, the defendant admits that Cohen spent between 70 and 80 percent of his time "facilitating" phone conversations between Gerson Lehrman's clients and experts.  (Pl. 56.1 ¶¶ 13-14; Def. 56.1 Resp. ¶¶ 13-14.)  According to the plaintiffs, Cohen's "facilitating" work consisted of limited responsibilities that merely linked clients to experts.  (Pl. 56.1 ¶¶ 14-15, 17.)  In carrying out other tasks, plaintiffs contend, Cohen merely enacted Gerson Lehrman's policies.  (Pl. 56.1 ¶¶ 16, 18.)  In opposition, the defendant directs the Court to more than 100 representations set forth in its own Local Rule 56.1 statement, which seek to prove that research associates functioned in a managerial capacity and exercised discretion.  (Def. 56.1 Opp. ¶¶ 12-18.)  A

11

similar pattern is repeated as to the parties' disputes over the responsibilities of Ronen and Baldwin. (Pl. 56.1 ¶¶ 22-24, 30-38; Def. 56.1 Resp. ¶¶ 22-24, 30-38.) The parties also dispute the extent to which research associates were subject to performance reviews based on quantifiable metrics, as opposed to more subjective criteria. (Pl. 56.1 ¶¶ 43-57; Def. 56.1 Resp. ¶¶ 43-57.) All of these disputes are material to determining whether the plaintiffs acted in an administrative capacity and therefore were exempt from the FLSA, or whether their primary duties were, under Davis, 587 F.3d at 534-37, limited to the "production" of research provided to Gerson Lehrman clients.

Moreover, at the summary judgment stage, the Court is in no position to weigh whether a party's characterizations are "grossly overstated," (Pl. 56.1 Resp. ¶ 149) find facts as to "[t]he ultimate goal of the call plan," (Def. 56.1 ¶ 183; Pl. 56.1 Resp. ¶ 183) discern what plaintiff's counsel means when describing Baldwin's tasks as "pretty straightforward" and "very repetitive" (Pl. 56.1 ¶¶ 38-39, 42), or interpret a witness's subjective understanding of the word "often." (Def. 56.1 ¶ 188; Pl. 56.1 Resp. ¶ 188.)

Because the defendant has failed to establish as a matter of law that the administrative exemption applies, and because the plaintiffs have failed to establish that they do not fall within the administrative exemption, the parties' motions for summary judgment as to plaintiffs' FLSA and New York Labor Law claims are denied.

## COHEN'S MOTION FOR SUMMARY JUDGMENT DISMISSING GERSON LEHRMAN'S COUNTERCLAIMS IS DENIED.

Gerson Lehrman asserts that plaintiff Cohen unlawfully violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), and is separately liable for the common-law torts of conversion and trespass to chattels. (Countercl. ¶¶ 40-56.) According to the defendant, prior to departing the company, Cohen engaged in unauthorized access to his workplace computer and unlawfully deleted or modified the defendant's files. In moving for

summary judgment, Cohen argues that the defendant cannot satisfy the CFAA's damages threshold, and that the record does not show that he engaged in unauthorized access to his computer. Cohen further argues that without a viable CFAA claim, the Court should decline to exercise supplemental jurisdiction over the two remaining state-law counterclaims, and that, in any event, the record does not permit a reasonable jury to find liability for the state-law counterclaims.

Congress enacted the CFAA in 1984 as a criminal statute intended to facilitate prosecution of computer-related crimes. See, e.g., United States v. Morris, 928 F.2d 504, 507-09 (2d Cir. 1991) (reviewing statutory history). The statute includes a private right of action to bring a civil claim, provided that the plaintiff can satisfy one of five threshold requirements set forth at 18 U.S.C. § 1030(c)(4)(A)(i). 18 U.S.C. § 1030(g). In this case, a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value" is the only possible basis for applying the CFAA as to Cohen. 18 U.S.C. § 1030(c)(4)(A)(i)(I). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data program, system or information to its condition prior to the offense, and any revenue loss, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

According to Cohen, the $7,207.13 in losses claimed by Gerson Lehrman are not recoverable under the CFAA because they were solely directed toward finding evidence to support its positions in this litigation, and did not arise from efforts to assess or restore computer damage or to re-secure the network. The CFAA permits recovery only for certain categories of loss. Judge Holwell has, for example, distinguished "prophylactic" costs to prevent a future security breach from expenses incurred "to identify and address damage caused by the security breach that had already taken place." University Sports Publ'g Co. v.

13

Playmakers Media Co., 725 F. Supp. 2d 378, 388 (S.D.N.Y. 2010).  The CFAA covers only the latter category of losses.  Id.  Similarly, Judge Kaplan concluded that the CFAA does not apply to a competitive injury arising from misappropriated information, but only for damage to a computing system.  Orbit One Commc'ns, Inc. v. Numerex Corp., 692 F. Supp. 2d 373, 386 (S.D.N.Y. 2010).  See also Civic Center Motors, Ltd. v. Mason St. Import Cars, Ltd., 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) ("costs not related to computer impairment or computer damages are not compensable under the CFAA."); In re DoubleClick Inc. Privacy Litig., 154 F. Supp. 2d 497, 524 (S.D.N.Y. 2001) ("economic losses plaintiffs bore in securing or remedying their systems" fell within CFAA damages threshold).

It is undisputed that prior to his last day of employment, Cohen deleted numerous Microsoft Word and .pdf files contained on his Gerson Lehrman computer.  (Pl. Countercl. 56.1 ¶¶ 14-15; Def. Countercl. Resp. 56.1 ¶¶ 14-15.)  At deposition, a former Gerson Lehrman employee who oversaw network security testified that he unsuccessfully attempted to restore Cohen's lost data.  (Pl. Countercl. 56.1 ¶¶ 27-30; Def. Countercl. Resp. 56.1 ¶¶ 27-30.)  This same employee later retained outside assistance from FiOS and retrieved company back-up tapes in an effort to restore the hard drive.  (Pl. Countercl. 56.1 ¶¶ 31-32, 37; Def. Countercl. Resp. 56.1 ¶¶ 31-32, 37.)  Ultimately, some, but not all, deleted files were recovered.  (Pl. Countercl. 56.1 ¶ 43; Def. Countercl. Resp. 56.1 ¶ 43.)

While the record in support of this claim is thin, it is undisputed that Gerson Lehrman incurred $7,207.13 in expenses for its attempt to recover the deleted files.  This sum exceeds the CFAA threshold of $5,000.  18 U.S.C. § 1030(c)(4)(A)(i)(I).  The text of the CFAA defines loss to include "conducting a damage assessment, and restoring the . . . information to its condition prior to the offense . . . ." 18 U.S.C. § 1030(e)(11).  The district courts in this Circuit have concluded that an employee's deletion of information from a

workplace computer may violate the CFAA.  See, e.g., Monson v. Whitby School, Inc., 2010 WL 3023873, at *3 (D. Conn. Aug. 2, 2010) (denying motion to dismiss claim that deletion of e-mails from workplace computer violated the CFAA); Dedalus Foundation v. Banach, 2009 WL 3398595, at *3-4 (S.D.N.Y. Oct. 16, 2009) (Preska, J.) (denying motion to dismiss CFAA claim alleging $30,000 in investigation costs as a result of a deleted hard drive).  The Court cannot decide at the summary judgment stage whether Gerson's Lehrman's investigation costs were "reasonable" pursuant to the CFAA's definition of "loss," 18 U.S.C. § 1030(e)(11).

    The remainder of Cohen's summary judgment motion turns on Cohen's subjective understanding of his scope of authorization to delete files from his workplace computer.  This understanding is relevant not only to the CFAA counterclaim but also to defendant's counterclaims asserting trespass to chattels and conversion.  For example, Gerson Lehrman's employee computing policies encouraged "regularly deleting old or extraneous data files," but the parties dispute whether Cohen's deletions included recent and relevant files.  (Pl. Countercl. 56.1 ¶ 25; Def. Countercl. Resp. 56.1 ¶ 25.)  Gerson Lehrman cites to testimony in which Cohen stated that he had not considered the company's computing policies at the time of the deletions.  (Def. Countercl. Resp. 56.1 ¶ 25.)  The guidelines also included a provision whereby Gerson Lehrman's IT department was to review a departing employee's private data prior to departure and delete the information as appropriate.  (Pl. Countercl. 56.1 ¶ 24; Def. Countercl. Resp. 56.1 ¶ 24.)  Gerson Lehrman points out that Cohen's deletions precluded such a review.  (Def. Countercl. Resp. 56.1 ¶ 24.)  The parties further dispute whether the deletions were purely personal in nature or whether they were the property of Gerson Lehrman.  (Pl. Countercl. 56.1 ¶¶ 17, 21; Def. Countercl. Resp. 56.1 ¶¶ 17, 21.)  They also dispute whether Cohen deleted the files using a special "wiping" software program.  (Pl. Countercl. 56.1 ¶ 19; Def. Countercl. Resp. 56.1 ¶ 19.)

Based on this record, the Court cannot conclude at the summary judgment stage whether, pursuant to internal guidelines, Cohen acted "without authorization" in deleting files and therefore violated the CFAA. See 18 U.S.C. §§ 1030(a)(5)(A), 1030(a)(5)(B), 1030(a)(5)(C). Similarly, as to the trespass to chattels claim, the Court cannot decide as a matter of law whether Cohen "acted for the purpose of interfering with the chattel, or . . . acted with knowledge that such [interference] would be the result of [his] conduct." Level 3 Commc'ns, LLC v. Petrillo Contracting, Inc., 73 A.D.3d 865, 868 (2d Dep't 2010).

Lastly, "[c]onversion is the intentional and unauthorized exercise of control over personal property owned by another that interferes with the owner's right of possession." Richman v. Harleysville Worcester Ins. Co., 85 A.D.3d 651, 652 (1st Dep't 2011). Based on this record, the Court cannot conclude, whether, as a matter of law, Cohen's actions were unauthorized, and the extent to which the deleted files were "owned" by Gerson Lehrman. Cohen's motion for summary judgment as to the conversion counterclaim is therefore denied.

CONCLUSION

The parties' motions for summary judgment are DENIED. The Clerk is directed to terminate the motions. (Docket # 123, 126, 134.)

All final pretrial submissions, consisting of a joint pretrial order, voir dire requests, requests to charge, verdict form and fully briefed in limine motions, are due October 14, 2011. The final pretrial conference will take place on October 28, 2011 at 3 p.m.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       September 15, 2011

16